James L. Day, (*pro hac vice* applicant)
Thomas A. Buford, AK Bar No. 1805046
Lesley Bohleber, (*pro hac vice* applicant)
Bush Kornfeld LLP
601 Union Street, Suite 5000
Seattle, WA 98101-2373
Telephone: (206)292-2110
Fax: (206) 292-2014
Email: jday@bskd.com;
tbuford@bskd.com; lbohleber@bskd.com
*Proposed Attorneys for Debtors*

HONORABLE GARY SPRAKER

UNITED STATES BANKRUPTCY COURT
DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| In re<br><br>WHITTIER SEAFOOD, LLC, [1]<br><br>Debtors. | Chapter 11<br><br>Lead Case No. 24-00139<br>Jointly Administered<br><br>DECLARATION OF TERI STRATTON |

I, Teri Stratton, declare as follows:

1.      I am over the age of 18 and competent to testify to the matters herein.  I give this declaration based on my own personal knowledge of the matters stated herein, unless indicated otherwise.

2.      I am a Senior Managing Director of Hilco Corporate Finance ("Hilco"), proposed investment banker for the Debtors.  I have personal knowledge of the facts set forth herein.  I make this declaration in support of the Debtors' *Application to Employ Hilco as Investment Banker* (the

---

[1] The Debtors are Marine Fishing International, Inc. ("MFI Inc."), Case No. 24-00140; Marine Fishing International, LLC ("MFI LLC"), Case No. 24-00141; Modys, LLC ("Modys"), Case No. 24-00142; Salacia, LLC ("Salacia"), Case No. 24-00143; Silver Wave, LLC ("Silver Wave"), Case No. 24-00144; and Whittier Seafood, LLC ("Whittier") (collectively, the "Whittier Group").

DECLARATION OF TERI STRATTON– Page 1

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 hi25gm01gr

1  "Application"). Capitalized terms not defined herein shall have their meanings as ascribed in the

2  Application.

3        3.     A true and correct copy of the Engagement Agreement is attached hereto as **Exhibit A**.

4        4.     Hilco has agreed to provide investment banking services for the Debtors in furtherance

5  of the sale or refinance of the Debtors' real and personal property. I anticipate Hilco's work will

6  primarily focus on the sale of Whittier's seafood plant and the refinance of Salacia's processing plant

7  in Marysville, WA, and to the extent necessary, a capital raise for one or more Debtors.

8        5.     Hilco will be compensated by a combination of Monthly Fees in the amount of $25,000

9  and by a percentage of total transaction value as detailed in paragraph 2 of the Engagement

10 Agreement. The Debtors will also reimburse Hilco for expenses incurred in connection with the

11 Engagement Agreement.

12       6.     Hilco Valuation Services ("HVS") is an affiliate of Hilco Corporate Finance. As of the

13 date of this declaration, I have not received a complete conflicts analysis from HVS concerning

14 potential conflicts between the Debtors and any creditors of the Debtors to whom HVS provided

15 valuation services. To the extent that a potential or actual conflict exists, I will supplement this

16 declaration.

17       7.     Except as disclosed herein, neither I, Hilco, nor any partner thereof, insofar as I have

18 been able to ascertain, are creditors of the estates of any Debtors, represent any other entity in

19 connection with Debtors' cases or any interest adverse to that of the estates or of any Debtors. Hilco

20 has not been promised or received compensation for services to be rendered in the case.

21       8.     Based on the foregoing, I believe Hilco is not a creditor of any of the Debtors' estates

22 and is a "disinterested person" within the meaning of Sections 101(14) and 327 of the Bankruptcy

23 Code.

DECLARATION OF TERI STRATTON– Page 2

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 hi25gm01gr

9. Hilco nor any partner thereof, insofar as I have been able to ascertain, is not a relative of the bankruptcy judge assigned to this case.

10. Hilco is not a creditor as defined by Section 101(10).

11. Hilco is not indebted to any Debtor or to their bankruptcy estates.

12. Hilco is not and has not been an equity security holder as defined in Section 101(17).

13. Hilco has not and does not represent an equity security holder as defined by Section 101(17).

14. Hilco is not and has not been an insider as defined by Section 101(31).

15. Hilco has not and does not presently represent any insider of the Debtors as defined by Section 101(31).

16. I have advised the Debtors of Hilco's willingness to serve as investment banker.

17. Hilco does not hold or represent an interest materially adverse to the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors or any investment banker for any security of the Debtors, or for any other reason.

18. Hilco was not, within two (2) years before the Petition Dates, a director, officer, or employee of the Debtors.

19. No personnel of Hilco that are providing services under the Engagement Agreement are related to any judge of the United States Bankruptcy Court for the District of Alaska, the United States Trustee, or to any person employed by the Office of the United States Trustee.

20. Within 90 days prior to the Petition Date, Hilco has not had or participated in any transaction with any Debtor.

DECLARATION OF TERI STRATTON– Page 3

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 hi25gm01gr

21. Notwithstanding the engagement agreements, Hilco has not yet received any retainer in connection with this engagement, and it was not paid any other amount prior to the Petition Date.

22. If any new material facts or relationships are discovered or arise, Hilco will provide the court with a supplemental declaration.

23. I declare under the penalty of perjury the foregoing is true and correct.

DATED this 18th day of October, 2024.

_____
Teri Stratton

DECLARATION OF TERI STRATTON– Page 4

Bush Kornfeld LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 hi25gm01gr

# EXHIBIT A



401 N. Michigan, Suite 1630 | Chicago, IL 60611

October 17, 2024

Whittier Seafood, LLC
3 Lake Bellevue Drive, Suite 201
Bellevue, Washington 98005
Attention: Aleksey Koslov, Chief Executive Officer
Re: <u>Agreement to Provide Investment Banking Services</u>

Dear Mr. Koslov:

This engagement agreement (the "Agreement") describes the agreement between Whittier Seafood, LLC ("Whittier") as the lead debtor, and certain of its affiliates Marine Fishing International, Inc. ("MFI Inc."); Salacia, LLC ("Salacia"); and Silver Wave, LLC ("Silver Wave") (each, a "Debtor" and collectively, the "Debtors") effective as of the date above (the "Effective Date"), regarding certain investment banking services that HCF will provide to the Debtors as described below. Specifically, we have agreed as follows:

1. **Scope of Services**

On August 19, 2024, the Debtors commenced cases under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") that is currently pending before the United States Bankruptcy Court for the District of Alaska (the "Bankruptcy Court"), jointly administered as Case No. 24-00139 (the "Chapter 11 Case"). The Debtors are retaining HCF, subject to Bankruptcy Court approval, as its exclusive investment banker for the possible sale, reorganization, financial restructuring, or recapitalization of the Debtors, its business or assets, or any portion thereof in a single or multiple transactions (collectively or individually referred to herein as a "Transaction") including, without limitation, a sale of assets ("Sale Transaction") or a capital raise ("Capital Raise Transaction") as part of a Plan of Reorganization (a "Plan") or under Section 363 of the Bankruptcy Code, on the terms and subject to the conditions set forth herein. We anticipate that our services (the "Services") pursuant to this Agreement will include the following:

   a) Familiarizing ourselves to the extent that we deem appropriate with the commercial, financial, operational, and legal circumstances of the Debtors.

   b) Identifying and recommending to the Debtors' potential buyers and capital sources in connection with a Transaction.

   c) With the Debtors' assistance, creating written materials (e.g., a "teaser," confidential information memorandum, management presentation, form of Non-Disclosure Agreement) to be used in presenting the Transaction opportunity to prospective buyers and capital sources. Prior to distribution of these materials, the Debtors shall review, comment on, and provide written approval for their use in connection with a Transaction.

   d) Soliciting and reviewing proposals and making recommendations and advising the Debtors in negotiating proposals concerning a Transaction.

   e) Assisting the Debtors in responding to the due diligence review of interested parties with respect to a Transaction, including by managing a Virtual Data Room (VDR), and assisting the Debtors in organizing, populating, and maintaining the VDR.

Whittier Seafood, LLC
October 17, 2024
Page 2

- f) Assisting the Debtors in soliciting, evaluating, and negotiating Transaction proposals.

- g) Assisting the Debtors and its other professional advisors in negotiating definitive documentation concerning a Transaction and otherwise assisting in the process of closing a Transaction.

- h) We understand that certain of our Services will be provided in the Chapter 11 Case. As necessary, our services also will include:

    i. Assisting with the preparation of Bankruptcy Court motions related to a Transaction.

    ii. Consulting with other retained parties, lenders, creditors' committee, and other parties-in-interest.

    iii. Participating in Bankruptcy Court hearings and providing testimony in connection with a Transaction.

    iv. Performing such other tasks as appropriate and as may reasonably be requested by the Debtors' management or counsel.

As used herein, the term "Capital Raise Transaction" shall mean and include any transaction or series of related transactions that constitute the raising, refinancing, restructuring of any debt and/or equity capital from one or more third-parties including without limitation any person, group of persons, partnerships, corporation, limited liability corporation, or other entities, and also including, among others, any of the existing owners, shareholders, members, employees, or creditors of any entity comprising the Debtors and/or the affiliates of each.

As used herein, the term "Sale Transaction" shall mean and include any transaction or series of related transactions that constitute the sale or disposition to one or more third-parties (including without limitation any person, group of persons, partnerships, corporation, limited liability corporation, or other entities, and also including, among others, any of the existing owners, shareholders, members, employees, or creditors of any entity comprising the Debtors and/or the affiliates of each) of: (a) all or a material portion of the equity securities or membership interests of any entity comprising the Debtors or any interest held by any entity comprising the Debtors, (b) any significant portion of the assets (including the assignment of any material contracts) or operations of any entity comprising the Debtors or any joint venture or partnerships or other entity formed by the Debtors, in either case including without limitation through: (i) a sale or exchange of capital stock, options, or assets with or without a purchase option, (ii) a merger, consolidation, or other business combination, (iii) an exchange or tender offer, (iv) a recapitalization, (v) the formation of a joint venture, partnership, or similar entity, and/or (vi) any similar transaction, and/or (c) a sale of all or a portion of the Debtors' senior secured loans from the existing holders of the loans to one or more third parties. A Sale Transaction may be effectuated through a credit bid, a cash payment, the assumption of liabilities, or any combination thereof.

2. **Fees and Expenses**

As compensation for our Services, the Debtors shall pay HCF the following:

- a) Upon the Effective Date, and on each monthly anniversary thereafter, the Debtors shall pay HCF a monthly fee (the "Monthly Fee") of $25,000 for the services provided in connection with this

Whittier Seafood, LLC
October 17, 2024
Page 3

      Agreement, which shall be fully earned upon payment and non-refundable. The Monthly Fee shall be compensation for the services that HCF provides to the Debtors in the subsequent month.

b) The Debtors shall pay HCF a fee (a "Sale Transaction Fee") upon and as a condition to the first closing of a Sale Transaction, which Sale Transaction Fee shall be paid directly out of the gross proceeds of the Sale Transaction in an amount equal to the greater of the (i) $500,000 or (ii) 3.0% of the Transaction Value.

c) The Debtors shall pay HCF a fee (a "Capital Raise Transaction Fee"), at and as a condition to the first closing of a Capital Raise Transaction, in an amount equal to the sum of: (i) 1.50% of the gross proceeds of any indebtedness raised or committed that is senior to other indebtedness of the Debtors, secured by a first priority lien and unsubordinated, with respect to both lien priority and payment, to any other obligations of the Debtors, plus (ii) 3.00% of the gross proceeds of any indebtedness raised or committed that is secured by a lien (other than a first lien), is unsecured and/or is subordinated, plus (iii) 5.00% of the gross proceeds of any preferred equity, equity or equity-linked securities (including, without limitation, convertible securities) placed or committed whether or not such capital is funded or provided at the first closing.

Fifty percent (50.0%) of the Monthly Fees paid to and received by HCF shall be credited (without duplication) to a Transaction Fee.

If a Sale Transaction is consummated in a Chapter 11 Case by a credit bid from the Debtors' secured lender, and the cash component of any such bid does not include sufficient cash to pay the Sale Transaction Fee, HCF shall be deemed to have (and the Debtors shall not object to) an administrative claim in the Chapter 11 Case for the amount of the Sale Transaction Fee.

Additionally, the Debtors shall reimburse HCF for all our reasonable expenses incurred in connection with this Agreement, including those related to travel, meals, lodging, and attorneys' fees as well as ancillary costs such as research, printing, duplicating, postage and shipping, database access charges, and other miscellaneous expenses incurred prior to termination or expiration of this Agreement. HCF shall bill the Debtors for its reimbursable expenses each month. Invoices are due and payable on the date of issue and the Debtors hereby agrees to pay any such invoices within thirty (30) days of the invoice date.

For the purpose of calculating a Sale Transaction Fee, "Transaction Value" shall mean and include without limitation and without duplication: (a) all cash (including escrowed amounts, and other withheld amounts) paid or payable to the Debtors or its securityholders, including holders of the Debtors' or any of its subsidiaries' common stock, preferred stock, options and warrants (collectively, the "Sellers"), by the investor or purchaser in the Sale Transaction (the "Buyer"), (b) the fair market value of all notes, securities, and other property issued or delivered or to be issued or delivered to the Sellers by Buyer, (c) all Seller liabilities, including all debt and guarantees, directly or indirectly assumed, refinanced, cancelled, extinguished, credit bid, or consolidated by the Buyer, (d) the amount of all installment payments to be made by the Buyer to the Sellers, (e) the net present value of any contingent payments (whether or not related to future earnings or operations) to be paid by the Buyer to the Sellers, and (f) the amount of any extraordinary dividends or distributions paid by the Buyer to the Sellers in connection with or contemplated by the Sale Transaction. For purposes of computing "Transaction Value" hereunder, non-cash consideration shall be valued as follows: (a) publicly traded securities shall be valued at the average of their closing prices (as reported in The Wall Street Journal or other reputable source reasonably

Whittier Seafood, LLC
October 17, 2024
Page 4

designated by HCF if The Wall Street Journal does not publish such closing prices) for the five trading days prior to the closing of the Sale Transaction, (b) options shall be valued using the treasury stock method without giving effect to tax implications, and (c) any other non-cash consideration shall be valued at the fair market value thereof as determined in good faith by HCF and the Debtors.

3. **Term of Agreement**

This Agreement shall commence as of the Effective Date and shall continue until the earlier to occur (the "Term") of (a) 12 months from the date hereof, unless extended by mutual agreement of the parties or (b) the date on which either party provides written notice which may be in the form of an email to the other of a termination of the Agreement. Upon any expiration or termination of this Agreement, (i) the provisions of Paragraph 2 and this Paragraph 3 shall survive to the extent such provisions relate to the payment of fees and expenses due or accrued on or before the effective date of expiration or termination and (ii) the provisions of Annex 1 (General Business Terms) and Annex 2 (Indemnification) shall also survive the expiration or termination of this Agreement and shall remain in effect.

Notwithstanding any other provisions of this Agreement, if a Transaction with an investor represented by HCF is concluded within 6 months from the date of termination of this Agreement by the Debtors' initiative, the Debtors shall be obliged to pay HCF the fees described in paragraph 2 above.

In the event that HCF terminates this Agreement on its own initiative, HCF shall notify the Debtors of its decision 30 days in advance, and the Debtors shall bear no liability in such event.

4. **General Business Terms**

At and as a condition to the effectiveness of this Agreement, the Debtors shall agree to the General Business Terms set forth in Annex 1 hereto, which are an integral part hereof and are hereby incorporated by reference.

5. **Indemnification**

At and as a condition to the effectiveness of this Agreement, the Debtors shall agree to the indemnification provisions set forth in Annex 2 hereto, which are an integral part hereof and is hereby incorporated by reference.

6. **Bankruptcy Matters**

The Debtors agree to seek prompt approval of the Bankruptcy Court to retain HCF, *nunc pro tunc* to the filing date on terms that are materially consistent with those set forth herein. Under such circumstances, the terms of HCF's engagement shall remain subject to entry of an order of the Bankruptcy Court (the "Retention Order"), in form and substance acceptable to HCF in its sole discretion, approving such engagement, which Retention Order shall provide that: (i) the payment of all fees and reimbursement of expenses hereunder to HCF is approved under section 328(a) of the Bankruptcy Code and shall be free and clear of all liens, claims, and encumbrances, and (ii) all such payments of fees and reimbursement of expenses shall be made without further order of the Bankruptcy Court and in accordance with this Agreement.

Whittier Seafood, LLC
October 17, 2024
Page 5

If the foregoing correctly sets forth our understanding, please sign and return to us an executed copy of this letter, whereupon this letter shall constitute a binding agreement as of the date first above written. Electronic signatures that comply with applicable law shall be deemed original signatures.

Sincerely,

**HILCO CORPORATE FINANCE, LLC**

By: _____

Teri Stratton
Senior Managing Director
Date: __10/18/24_____

AGREED TO AND ACCEPTED BY:

**WHITTIER SEAFOOD, LLC**
By: _____

Aleksey Koslov
Authorized Signer
Date: __10/17/2024_____

Whittier Seafood, LLC
October 17, 2024
Page 6

## ANNEX I: GENERAL BUSINESS TERMS

1. **Conditions to Our Services**. HCF makes no representations or warranties concerning the Debtors' ability to complete a transaction, including a Capital Raise Transaction or a Sale Transaction. Our services will be provided solely on a reasonable efforts basis, with no guarantee as to the results. Moreover, the Debtors retain the exclusive right to decide whether and on what terms to complete a transaction. Except as specifically contemplated herein, HCF shall not have any obligation or responsibility to provide accounting, audit, tax, or business consulting services for the Debtors and shall have no responsibility to provide any valuation opinion, solvency opinions, or fairness opinions. The Debtors confirm that it will rely on its own counsel, accountants, and similar expert advisors for legal, accounting, tax, and other similar advice.

2. **Cooperation**. The Debtors acknowledge and confirm that, in rendering the Services, HCF will be using and relying on, and assuming the accuracy of, without any independent verification, data, material, and other information (collectively, the "Information") furnished to HCF by or on behalf of the Debtors or other third parties (including their agents, counsel, employees, and representatives). The Debtors represent and warrant that it shall not provide any Information to HCF in violation of any confidentiality obligations it may have. The Debtors understand that HCF will not be responsible for independently verifying the accuracy of the Information and shall not be liable for inaccuracies in any such Information. The Debtors will cooperate with HCF in all phases of HCF's performance of the Services. Unless required by law (including pursuant to a subpoena or other legal process after providing the Debtors with reasonable notice and an opportunity to engage on such legal process, to the extent legally permissible), HCF will not disclose to any third party (other than HCF's counsel) any confidential and proprietary Information provided by the Debtors, except (i) with the Debtors' consent or (ii) in furtherance of HCF's performance of the Services hereunder.

3. **Entire Agreement. Counterparts. Validity and Enforceability.** This Agreement constitutes the entire Agreement between the parties and supersedes and cancels all prior or contemporaneous arrangements, understandings, and agreements, written or oral, between them relating to the subject matter hereof. This Agreement may be executed in any number of counterparts and by different parties on separate counterparts. Each of such counterparts shall be deemed to be an original, and all such counterparts, taken together, shall constitute but one and the same Agreement. Delivery of an executed counterpart of this Agreement by telefacsimile or electronic mail shall be equally effective as delivery of a manually executed counterpart. This Agreement may not be amended or modified, nor may any provision be waived, except in writing signed by both parties. Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining portions hereof or thereof or affecting the validity or enforceability of such provision in any other jurisdiction.

4. **Affiliation.** The Debtors acknowledge that HCF has been retained only for the limited purposes specified herein and that the Debtors' engagement of HCF is not deemed to be on behalf of and is not intended to and does not confer rights upon any party other than the Debtors. No one other than the Debtors are authorized to rely upon the engagement of HCF hereunder or any statements, advice, opinions, or conduct of HCF. The Debtors further understands and acknowledges the following: (a) HCF is the investment banking affiliate of Hilco Trading, LLC (together with its other affiliates and subsidiaries, including HCF, "Hilco"); (c) From time to time, Hilco (and/or its officers, directors, and equity holders/members) may represent, partner with, perform services for, provide capital to, or otherwise pursue opportunities or transactions with businesses that are business competitors with the Debtors or participants in the industries in which the Debtors do

Whittier Seafood, LLC
October 17, 2024
Page 7

business. To the fullest extent permitted by law, the Debtors hereby waives any conflict of interest that now exists or may hereafter arise as a result of such persons' or entities' other business activities; provided, however, that HCF shall not represent a party that is adverse to the interests of the Debtors in matters related to this engagement without the Debtors' prior consent, nor shall HCF use or disclose the Debtors' confidential information except as provided for herein; and (c) Nothing in this Agreement is intended to prohibit or limit any of Hilco's (and/or its officers, directors, and equity holders/members) business activities now or in the future.

5. **Advertisements.** Upon the consummation of a transaction, HCF may describe its Services to third parties, including in written marketing materials, consistent with any confidentiality obligations concerning such Services.

6. **Governing Law and Arbitration.** This Agreement will be governed by, and construed in accordance with, the laws of the State of Illinois applicable to agreements made and to be performed entirely in such State, without giving effect to the choice of law provisions thereof. The Debtors agree to submit any claim or dispute arising out of or related to this Agreement to private and confidential arbitration by a single arbitrator selected in accordance with the rules of the American Arbitration Association. The arbitration proceedings shall be governed by the Commercial Rules of Arbitration of the American Arbitration Association and shall take place in Chicago, Illinois. The arbitrator shall have the power to order discovery and the authority to award any remedy or relief that a court of the State of Illinois could order or grant, including, without limitation, specific performance. The decision of the arbitrator shall be final and binding on each of the parties and judgment thereon may be entered in any court having jurisdiction. This arbitration procedure is intended to be the exclusive method of resolving any claim arising out of or related to this Agreement, including any claim as to the validity of this Agreement. Each party agrees to the personal and subject matter jurisdiction of the arbitrator for the resolution of any such claim, including any issue relating to this arbitration position. In the event of any arbitration arising out of or in connection with this Agreement, the prevailing party shall be entitled to an award of actual attorneys' fees and costs incurred in connection with the arbitration.
THE PARTIES WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY ACTION, CLAIM, SUIT, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATING TO OR ARISING OUT OF THE ENGAGEMENT OF HCF PURSUANT TO, OR THE PERFORMANCE BY HCF OF THE SERVICES CONTEMPLATED BY, THIS AGREEMENT.

7. **Power and Authority.** The Debtors have all requisite corporate power and authority to enter into this Agreement. This Agreement has been duly authorized by all necessary corporate action on the part of the Debtors and has been duly executed and delivered by the Debtors and constitutes a legal, valid, and binding agreement of the Debtors, enforceable in accordance with its terms.

8. **No Third-Party Claims.** No (a) direct or indirect holder of any equity interests or securities of HCF whether such holder is a limited or general partner, member, stockholder, or otherwise, (b) affiliate of HCF, or (c) director, officer, employee, representative, or agent of HCF, or of an affiliate of HCF or of any such direct or indirect holder of any equity interests or securities of HCF (collectively, the "HCF Party Affiliates") shall have any liability or obligation of any nature whatsoever to any party, including the Debtors, in connection with or under this Agreement or the transactions or Services contemplated hereby, and the Debtors waives and releases all claims against such HCF Party Affiliates related to any such liability or obligation.

9. **Successors and Assigns.** The benefits of this Agreement, including without limitation Annex 2 hereto, shall inure to the respective successors and permitted assigns of the parties hereto and any Indemnified Person, and their respective successors, permitted assigns, and representatives, and the obligations and liabilities assumed in this Agreement by the parties hereto shall be binding upon their respective successors and assigns. This Agreement, including Annex 2 hereto, may not be assigned without the prior written consent of the non-assigning party (or parties).

10. **Force Majeure.** HCF shall not be liable for delays

Whittier Seafood, LLC
October 17, 2024
Page 8

in the performance of the Services due to causes beyond the reasonable control of HCF or its personnel or subcontractors including, but not limited to, fire, flood, earthquake, tempest, labor dispute, war, pandemic, act of God, embargo, civil commotion, governmental regulation, or terrorist attack; provided that HCF will use commercially reasonable efforts to work around any such cause and to resume performance of the Services as quickly as reasonably possible in the circumstances.

11. **Non-Solicitation.** During the term of this Agreement and for a period of one (1) year after the expiration or termination of this Agreement for any reason whatsoever, neither party shall, directly or indirectly: (a) solicit, hire or otherwise engage or retain as an employee or independent contractor, any individual who was an employee of or an independent contractor to the other party at any time during the term of this Agreement; or (b) induce any individual who is an employee of or an independent contractor to the other party to terminate his/her employment or independent contractor relationship with that party.

12. **Notices.** All notices required or permitted to be delivered under this Agreement shall be sent, as follows: (a) to HCF, c/o Hilco Trading, LLC, 5 Revere Drive, Suite 206, Northbrook, Illinois 60062, Email: cfredericks@hilcoglobal.com, Attn: Christine Fredericks, and (b) to the Debtors, to the address set forth above to your attention, or to such other name or address as may be given in writing to the other party. All notices under this Agreement shall be deemed sufficient if delivered by electronic mail or overnight mail to the notice parties mentioned above. Any notice shall be deemed to be given only upon actual receipt.

13. **Construction.** The parties have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Agreement. The word "including" shall mean including without limitation.

Whittier Seafood, LLC
October 17, 2024
Page 9

## ANNEX 2 INDEMNIFICATION

This Annex 2 is a part of and is incorporated into that certain letter agreement (the "Agreement"), dated October 17, 2024, by and between the Debtors and HCF. Capitalized terms not defined herein shall have the same meaning given to them in the Agreement.

A. Indemnification. To the fullest extent lawful, the Debtors will promptly, upon demand, indemnify and hold harmless HCF its affiliates, and each of their directors, officers, employees, agents, members and controlling persons (any or all of the foregoing hereinafter referred to as an "Indemnified Person"), from and against all losses, claims, damages, expenses (including reasonable fees and disbursements of counsel and accountants), costs (including, without limitation, expenses, fees and disbursement and time charges related to giving testimony or furnishing documents in response to a subpoena or otherwise) and liabilities (joint or several), (collectively, "Losses"), resulting directly or indirectly from any threatened or pending investigation, action, claim, proceeding or dispute, including securityholder actions (whether or not HCF, its affiliates, or any other Indemnified Person is a potential or actual named party or witness) (collectively, a "Claim"), which (1) are related to or arise out of any willful or grossly negligent acts or omissions of the Debtors; (2) are related to or arise out of the breach by the Debtors of any provision of this Agreement; (3) are related to or arise out of any untrue statement or alleged untrue statement of a material fact contained in any oral or written information provided to HCF, its affiliates, or any other person by the Debtors or used by the Debtors in connection with the transaction contemplated by this Agreement or any omission or alleged omission by the Debtors to state therein a material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading, or (4) are otherwise related to or arise out of HCF's engagement, role, activities or the performance or non-performance of the Services on the Debtors' behalf. The Debtors will not be responsible, however, for any Losses pursuant to clause (2) of the preceding sentence which are judicially determined to have resulted from the willful misconduct or gross negligence of any Indemnified Person seeking indemnification hereunder. The Debtors also agree that neither HCF, its affiliates, nor any Indemnified Person shall have any liability to the Debtors, its owners, parents, creditors or securityholders for or in connection with its engagement, except such liability for Losses incurred by the Debtors which are judicially determined to have resulted from HCF's willful misconduct or gross negligence. For purposes of the foregoing, "judicially determined" shall mean determined by a court of competent jurisdiction in a final non- appealable judgment on the merits.

B. Proceedings. HCF will notify the Debtors if it learns that any investigation, lawsuit, administrative proceeding, or self-regulatory organization proceeding has been instituted based, directly or indirectly, on the transactions which were the subject of HCF's engagement under the Agreement, although failure to do so will not relieve the Debtors from any obligation or liability it has hereunder or otherwise, except to the extent such failure causes the Debtors to forfeit substantial rights and defenses. Should any lawsuit, administrative proceeding or self-regulatory organization proceeding (collectively, a "Proceeding") be formally instituted against HCF or any Indemnified Person based, directly or indirectly, on HCF's engagement under the Agreement, the Debtors will be entitled to

participate therein and, to the extent that it may wish, to assume the defense of the Proceeding, with counsel reasonably satisfactory to HCF, so long as the Debtors continue to pay all costs and expenses of the defense and preparation for such Proceeding. Even if the Debtors assumes the defense of a Proceeding, each Indemnified Person will have the right to participate in such Proceeding and to retain its own counsel at such Indemnified Person's own expense. Furthermore, each Indemnified Person shall have the right to employ its own counsel in any Proceeding and to require the Debtors to pay all reasonable fees and expenses of such counsel as they are incurred if (1) such Indemnified Person has been advised by such counsel that there may be legal defenses available to it which are different from or additional to defenses available to the Debtors (in which case the Debtors shall not have the right to assume the defense of the Proceeding on behalf of such Indemnified Person), (2) the Debtors shall not have assumed the defense of the Proceeding and employed counsel reasonably satisfactory to such Indemnified Person in a timely manner or (3) the Debtors shall have authorized the employment of such counsel in connection with the defense of the Proceeding.

C. Contribution. If any indemnification sought by an Indemnified Person pursuant to the terms hereof is held by a court of competent jurisdiction to be unavailable for any reason (other than as a result of the gross negligence or willful misconduct of any such Indemnified Person) or insufficient to hold such Indemnified Person harmless, then the Debtors and HCF will contribute to the Losses for which such indemnification is held unavailable or insufficient (1) in such proportion as is appropriate to reflect the relative benefits received (or anticipated) from the proposed transaction by the Debtors on the one hand and the Indemnified Person on the other, in connection with HCF's engagement referred to above (whether or not the transaction contemplated by the engagement is consummated) or (2) if (but only if) the allocation provided in clause (1) is for any reason unenforceable, in such proportion as is appropriate to reflect not only the relative benefits received (or anticipated) from the proposed transaction by the Debtors on the one hand and the Indemnified Person on the other, but also the relative fault of the Debtors and the Indemnified Person, as well as any other relevant equitable considerations, in each case subject to the limitation that the contribution by HCF will not exceed the amount of fees actually received by HCF pursuant to HCF's engagement. IN NO EVENT SHALL HCF OR ANY OTHER INDEMNIFIED PERSON BE OBLIGATED OR LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES. No person found liable for fraudulent misrepresentation shall be entitled to contribution from any person who is not also found liable for such fraudulent misrepresentation.

D. Settlement of Claims. The Debtors will not, without the prior written consent of HCF, which consent will not be unreasonably withheld, settle or compromise or consent to the entry of any judgment in any pending or threatened Claim or Proceeding in respect of which indemnification could be sought hereunder (whether or not HCF or any Indemnified Person is an actual party to such Claim or Proceeding) unless such settlement, compromise or consent includes provisions holding harmless and unconditionally releasing HCF and each other Indemnified Person hereunder from all liability related to or arising out of such Claim or Proceeding, including claims for contribution. The Debtors shall not be liable for any settlement of any Claim effected by HCF without its written consent (which consent shall not be unreasonably withheld).

Whittier Seafood, LLC
October 17, 2024
Page 11

    E.    <u>Miscellaneous</u>. The obligations of each of HCF and the Debtors are solely corporate obligations. No director, officer, employee, agent, shareholder or controlling person of HCF or the Debtors shall be subjected to any liability to any person, nor will any such claim be asserted by or on behalf of any other party to this Agreement. The Debtors' indemnity, reimbursement and contribution obligations provided for herein are solely corporate obligations and shall: (1) be in addition to any liability that the Debtors otherwise may have to HCF and any rights that HCF or any Indemnified Person may have at common law or otherwise; (2) survive the completion or termination of professional services rendered by HCF under the Agreement; (3) apply to any activities prior to this date and any amendment, modification or future addition to HCF's engagement; and (4) inure to the benefit of the heirs, personal representatives, successors, and assigns of HCF and each other Indemnified Person.

    Further, if an Indemnified Person (as defined in this Annex 2) is requested or required to appear as a witness in any Action (as defined in this Annex 2) that is brought by or on behalf of or against the Debtors, or that otherwise relates to this Agreement or the Services, the Debtors shall reimburse HCF and the Indemnified Person for all reasonable out-of-pocket expenses incurred by them in connection with such Indemnified Person appearing or preparing to appear as such a witness, including without limitation, the reasonable fees and disbursements of outside legal counsel. All the indemnification obligations set forth herein and in Annex 2 shall survive, without limitations, a termination or expiration of this Agreement.

If any term, provision, covenant, or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants, and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

The Debtors hereby consent to personal jurisdiction and service and venue in any court in which any Claim and Proceeding which is subject to the terms provided for herein is brought against HCF or any other Indemnified Person. THE PARTIES WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR PROCEEDING RELATED TO OR ARISING OUT OF HCF'S ENGAGEMENT, ANY TRANSACTION OR CONDUCT IN CONNECTION THEREWITH OR THIS AGREEMENT.