1   James L. Day, (admitted *pro hac vice*)                HONORABLE GARY SPRAKER
    Thomas A. Buford, AK Bar No. 1805046
2   Lesley Bohleber, (admitted *pro hac vice*)
    Bush Kornfeld LLP
3   601 Union Street, Suite 5000
    Seattle, WA 98101-2373
4   Telephone: (206)292-2110
    Fax: (206) 292-2014
5   Email: jday@bskd.com;
    tbuford@bskd.com; lbohleber@bskd.com
6   *Attorneys for Debtors*

7

8

9

10              UNITED STATES BANKRUPTCY COURT
                DISTRICT OF ALASKA AT ANCHORAGE
11

12  In re                              │  Chapter 11

13  WHITTIER SEAFOOD, LLC,             │  Lead Case No. 24-00139
                                       │  Jointly Administered
                    Debtors.          │
14                                     │  DEBTORS' FOURTH AMENDED JOINT
                                       │  PLAN OF REORGANIZATION
15

16          Debtors Whittier Seafood, LLC, Case No. 24-00139; Marine Fishing International, Inc., Case
    No. 24-00140; Marine Fishing International, LLC, Case No. 24-00141; Modys, LLC, Case No. 24-
17  00142; Salacia, LLC, Case No. 24-00143; and Silver Wave, LLC, Case No. 24-00144 (collectively,
    the "Debtors"), each a jointly-administered debtor-in-possession in the above-captioned bankruptcy
18  case, jointly propose this Debtors' Fourth Amended Joint Plan of Reorganization (the "Plan")
    pursuant to Subchapter II of Chapter 11 of the Bankruptcy Code:

19                              ARTICLE I.
                            DISCLOSURE STATEMENT
20

21          A.      The Debtors have filed their *Second Amended Joint Disclosure Statement for Debtors'*
    *Second Amended Joint Plan of Reorganization* [ECF No. 319] (the "Disclosure Statement") pursuant
22  to 11 U.S.C. § 1125 and Bankruptcy Rule 3016(c).  The Bankruptcy Court has approved the
    Disclosure Statement prior to this Plan being submitted to Creditors as satisfying the requirements of
23  Bankruptcy Code § 1125(a) and (b).  The Disclosure Statement provides useful information to aid and

DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION– Page 1

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

assist Creditors in voting on the Plan. YOU ARE URGED TO READ THE DISCLOSURE STATEMENT WITH CARE IN EVALUATING THE IMPACT OF THE PLAN UPON YOUR CLAIMS.

## ARTICLE II.
## DEFINITION OF TERMS

**A.    Definitions**

A term used in this Plan that is not defined below and that is defined in the Bankruptcy Code shall have the meaning ascribed in the Bankruptcy Code. When used in this Plan, the following terms shall have the meanings specified below, unless the context otherwise requires:

1.    <u>Administrative Expense Claim</u>: An Allowed Claim entitled to priority under § 507(a)(2) of the Bankruptcy Code, including (a) claims incurred by the Debtors since the Petition Date and allowed by the Court of a type described in § 503(b) of the Code; (b) all Allowed Claims of Professional Persons pursuant to §§ 330 and 331 of the Code and Bankruptcy Rule 2016; and (c) all fees and charges assessed against the Estate under 28 U.S.C. § 1930.

2.    <u>Allowed Claim</u>: Any Claim in the amount and of the priority classification set forth in the proof of such Claim that has been filed timely in the Bankruptcy Case, or in the absence of such proof, as set forth in a Debtor's Schedules filed in the Bankruptcy Case, unless:

(i) such Claim has been listed in such Schedules as disputed, contingent, or unliquidated, in which case such Claim shall be allowed only in such amount and such classification as is authorized by Final Order of the Bankruptcy Court;

(ii) such Claim has been objected to or is objected to after Confirmation, in which case such claim is authorized by Final Order of the Bankruptcy Court; or,

(iii) such Claim has been paid in full, withdrawn, or otherwise deemed satisfied in full.

3.    <u>Asset</u>: All of the right, title, and interest of each of the Debtors in and to property of whatever type or nature (including, without limitation, real, personal, mixed, intellectual, tangible, and intangible property).

4.    <u>Assumed Leases</u>: The meaning assigned to that term in **Article VI** hereof.

5.    <u>Avoidance Actions</u>: Any Claim or cause of action of the Estate arising out of or maintainable pursuant to Chapter V of the Bankruptcy Code or under any other similar applicable law.

6.    <u>Ballot</u>: The form for acceptance or rejection of the Plan distributed to those Creditors entitled to vote on the Plan.

7.    <u>Bankruptcy Code or Code</u>: The Bankruptcy Code enacted November 6, 1978, as set forth in Title 11 of the United States Code, and as amended thereafter.

DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION– Page 2

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

8.      Bankruptcy Court or Court:  The United States Bankruptcy Court for the District of Alaska, before which the Chapter 11 Cases are pending, or if that Court ceases to exercise jurisdiction over the Chapter 11 Cases, the Court that does exercise jurisdiction.

9.      Bankruptcy Rules:  The Federal Rules of Bankruptcy Procedure.

10.     Business Day:  Any day except Saturday, Sunday or a "legal holiday" as defined in Bankruptcy Rule 9006(a)(6).

11.     Cash:  Cash or cash equivalents including, but not limited to, bank deposits, wire transfers, checks, and other similar items.

12.     Cash Collateral:  The meaning assigned to that term in the Cash Collateral Orders.

13.     Cash Collateral Claims:  Any Claims of Cathay Bank against any Debtor arising out of any Debtor's use of cash collateral in accordance with the Cash Collateral Orders that are actually due and owing.

14.     Cash Collateral Orders:  The orders of the Bankruptcy Court authorizing Debtors to use Cash Collateral, at Docket Nos. 42, 77, 96, 139, 167, and 221.

15.     Cathay Bank: Cathay Bank, the lender in connection with the Cathay Bank Loan and the Holder of the Class 1 Claim.

16.     Cathay Bank Collateral: All Assets in which Cathay Bank has a perfected and enforceable security interest.

17.     Cathay Holdings:  Cathay Holdings, LLC, the Holder of the Class 7 Claim after its acquisition from Pacific Premier Bank.

18.     Cathay Holdings Loan Documents: All documents evidencing the loan from Opus Bank to Modys on or about March 18, 2015, in the original principal amount of $912,000, as to which Cathay Holdings is now the beneficial owner.

19.     Cathay Bank Loan: That certain loan as evidenced by the Cathay Bank Loan Documents and under which MFI, Inc. is borrower, Cathay Bank is the lender and each Guarantor is a guarantor, comprising a Tranche A Loan, a Tranche B Loan and a Tranche C Loan in an aggregate original principal amount of up to $53,000,000.  On December 19, 2024, Cathay Bank filed a Proof of Claim stating a Claim as of the Petition Date in the amount of $20,489,919.07, inclusive of interest, costs fees and expenses.

20.     Cathay Bank Loan Documents: All documents evidencing the terms of the Cathay Bank Loan.

DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION– Page 3

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

21.   Cathay-Salacia Deed of Trust:  That certain Deed of Trust, Assignment of Rents, Fixture Filing and Security Agreement, executed by Salacia on or about February 22, 2023, and recorded on February 27, 2023, under Snohomish County Auditor's No. 202302270274, encumbering the Salacia Plant.

22.   Cathay-Whittier Adequate Protection Lien:  The adequate protection Lien in the amount of $1,600,000 granted Cathay Bank pursuant to the terms of the *Order (1) Authorizing Final Use of Cash Collateral; and (2) Granting Adequate Protection* [ECF No. 167], entered by the Bankruptcy Court on October 21, 2024, that encumbers the Whittier Property.

23.   Cathay-Whittier Equipment Collateral:  The equipment and other personal property Assets owned by Whittier that comprise a portion of the Cathay Collateral.

24.   Cathay-Whittier Proceeds:  The Net Proceeds from the Whittier Sale that are attributable to the sale of Cathay Collateral.

25.   Causes of Action: The meaning assigned to that term in Article VII.D hereof.

26.   Chapter 11 Case(s): As the context requires, the Debtors' above-captioned jointly-administered chapter 11 case, or the individual chapter 11 cases each of the Debtors filed on the Petition Date and that remain pending before the Bankruptcy Court

27.   Claim: A claim as defined in § 101(5) of the Bankruptcy Code.

28.   Claims Bar Date: December 24, 2024, the deadline for filing Proofs of Claim in the Chapter 11 Cases by all Persons other than Governmental Units; and the date that is 180 days following the Petition Date for filing Proofs of Claim by Governmental Units.

29.   Class:  A class of Claims or Interests as defined in Article III of this Plan.

30.   Class 1 Allowed Claim:  Has the meaning set forth in Section IV.B.1 of the Plan.

31.   Class 1 Claim:  Has the meaning set forth in Section IV.B.1 of the Plan.

32.   Class 2 Allowed Claim:  Has the meaning set forth in Section IV.B.2 of the Plan.

33.   Class 2 Claim:  Has the meaning set forth in Section IV.B.2 of the Plan.

34.   Class 3 Allowed Claim:  Has the meaning set forth in Section IV.B.3 of the Plan.

35.   Class 3 Claim:  Has the meaning set forth in Section IV.B.3 of the Plan.

36.   Class 4 Allowed Claim:  Has the meaning set forth in Section IV.B.4 of the Plan.

37.   Class 4 Claim:  Has the meaning set forth in Section IV.B.4 of the Plan.

DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION– Page 4

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

38.   Class 5 Allowed Claim:  Has the meaning set forth in Section IV.B.5 of the Plan.

39.   Class 5 Claim:  Has the meaning set forth in Section IV.B.5 of the Plan.

40.   Class 6 Allowed Claim:  Has the meaning set forth in Section IV.B.6 of the Plan.

41.   Class 6 Claim:  Has the meaning set forth in Section IV.B.6 of the Plan.

42.   Class 7 Allowed Claim:  Has the meaning set forth in Section IV.B.7 of the Plan.

43.   Class 7 Claim:  Has the meaning set forth in Section IV.B.7 of the Plan.

44.   Class 8 Allowed Claim:  Has the meaning set forth in Section IV.B.8 of the Plan.

45.   Class 8 Claim:  Has the meaning set forth in Section IV.B.8 of the Plan.

46.   Class 9 Allowed Claim:  Has the meaning set forth in Section IV.B.9 of the Plan.

47.   Class 9 Claim:  Has the meaning set forth in Section IV.B.9 of the Plan.

48.   Class 10 Allowed Claim:  Has the meaning set forth in Section IV.B.10 of the Plan.

49.   Class 10 Claim:  Has the meaning set forth in Section IV.B.10 of the Plan.

50.   Class 11 Allowed Claim:  Has the meaning set forth in Section IV.B.11 of the Plan.

51.   Class 11 Claim:  Has the meaning set forth in Section IV.B.11 of the Plan.

52.   Class 12 Allowed Claim:  Has the meaning set forth in Section IV.B.12 of the Plan.

53.   Class 12 Claim:  Has the meaning set forth in Section IV.B.12 of the Plan.

54.   Class 13 Allowed Claim:  Has the meaning set forth in Section IV.B.13 of the Plan.

55.   Class 13 Claim:  Has the meaning set forth in Section IV.B.13 of the Plan.

56.   Class 14 Allowed Claim:  Has the meaning set forth in Section IV.B.14 of the Plan.

57.   Class 14 Claim:  Has the meaning set forth in Section IV.B.14 of the Plan.

58.   Class 15 Allowed Claim:  Has the meaning set forth in Section IV.B.15 of the Plan.

59.   Class 15 Claim:  Has the meaning set forth in Section IV.B.15 of the Plan.

DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION– Page 5

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

60.     Classified Claims: All Claims against any Debtor that may be classified pursuant to Section 1123(a)(1) of the Bankruptcy Code as set forth in Article III of this Plan.

61.     (The) Committee: the Official Committee of Unsecured Creditors of the Whittier Estate.

62.     Confirmation: The entry of the Confirmation Order by the Bankruptcy Court.

63.     Confirmation Order: The order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

64.     Creditor:  A "creditor" within the meaning of § 101(10) of the Bankruptcy Code.

65.     Debtors:  Whittier; MFI Inc.; MFI LLC; Modys; Salacia; and Silver Wave, the debtors in possession in this Chapter 11 Case.

66.     Disclosure Statement: The *Second Amended Joint Disclosure Statement for Debtors' Second Amended Joint Plan of Reorganization*, filed in the Bankruptcy Court on March 31, 2025, under Docket No. 319.

67.     Disputed Claim:  A Claim (i) listed in the Schedules as "disputed," and which the Court has not allowed by entry of a Final Order, or (ii) based upon a Proof of Claim filed not later than the Claims Bar Date as to which a party-in-interest has filed an objection.

68.     Docket No.:  The identifying number of the relevant document as reflected on the docket for the Bankruptcy Case that is maintained by the Bankruptcy Court.

69.     Effective Date:  May 31, 2025.

70.     Equity Interest:  An equity interest in a Debtor.

71.     Estate:  The Estate created for each of the Debtors pursuant to § 541 of the Bankruptcy Code.

72.     Exculpated Party(ies):  The Debtors, and each of their members, attorneys, consultants, financial advisors, accountants, and other advisors and agents (acting in such capacity).

73.     Federal Judgment Rate: The rate of interest in effect as of the Effective Date provided for under 28 U.S.C. § 1961 for post-judgment interest in federal court proceedings.

74.     Final Order:  An order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending; or (b) if an appeal, writ of

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument, or rehearing shall have expired; provided, however, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or Sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

75. <u>Financial Event</u>: The closing of a sale of either the Salacia Property or the Whittier Property, or a refinancing of the existing indebtedness as to either, following the Effective Date.

76. <u>Governmental Unit</u>: A "governmental unit" as defined in § 101(27) of the Bankruptcy Code.

77. <u>Guarantor(s)</u>: As the context requires, MFI, LLC; Whittier; Salacia; Modys; Silver Wave, and/or Aleksey Kozlov, the guarantors in connection with the Loan.

78. <u>Harris Pacific</u>: Harris Pacific Northwest, LLC, a Minnesota limited liability company, the Holder of the Class 2 Claim and a statutory Lien encumbering the Salacia Plant pursuant to RCW 60.04.

79. <u>Hilco</u>: Hilco Corporate Finance, LLC.

80. <u>Holder</u>: A holder of a Claim or Equity Interest, as the case may be.

81. <u>Intercompany Claims</u>: All Unsecured Claims as of the Petition Date owing to or by one Debtor to another Debtor as detailed in <u>Exhibit A</u> hereto.

82. <u>Lessees</u>: Collectively, the existing or future lessees under Leases.

83. <u>Lien</u>: The meaning given such term in Section 101(37) of the Bankruptcy Code.

84. <u>Mechanics' Liens</u>: Liens against the Salacia Property arising pursuant to Section 60.04 of the Revised Code of Washington, to the extent of their enforceability.

85. <u>MFI Inc.</u>: Marine Fishing International, Inc., a Nevada corporation, whether acting in its capacity as a Debtor, debtor in possession or Post-Effective Date Debtor.

86. <u>MFI LLC</u>: Marine Fishing International, LLC, a Washington limited liability company, whether acting in its capacity as a Debtor, debtor in possession or Post-Effective Date Debtor.

87. <u>Modys</u>: Modys, LLC, a Washington limited liability company, whether acting in its capacity as a Debtor, debtor in possession or Post-Effective Date Debtor.

DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION– Page 7

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

88.    <u>Modys Building</u>: Real property and improvements owned by Modys comprising an office building, commonly known as 3 Lake Bellevue Drive, Bellevue, King County, Washington.

89.    <u>Net Proceeds</u>:  Gross proceeds actually collected from the disposition of an Asset, less all costs incurred in completing such disposition, including without limitation all sales commissions, fees and expenses, and unless otherwise specified in the Plan, and all taxes arising in connection with such disposition for which a Debtor is responsible.

90.    <u>Notice and Hearing</u>:  Proceedings as contemplated under Bankruptcy Code § 102(1).

91.    <u>Official Mailing List</u>:  The meaning given to such term in Article VII.B hereof.

92.    <u>Pacific Premier</u>: Pacific Premier Bank, as successor by merger to Opus Bank and the Holder of the Class 7 Claim as of the Petition Date.

93.    <u>Person</u>:  A "person" as defined in § 101(41) of the Bankruptcy Code.

94.    <u>Petition Date</u>:  August 19, 2024, the date upon which each of the Debtors commenced their respective Chapter 11 Cases in the Bankruptcy Court.

95.    <u>Plan</u>:  This Debtors' Fourth Amended Joint Plan of Reorganization, as the same may be amended, replaced, supplemented or otherwise modified from time to time.

96.    <u>Plan Administrator</u>:  The Stapleton Group, who shall be appointed as of the Effective Date to administer the Plan as set forth in Section VII.D. hereof, and as otherwise specified in the Plan.

97.    <u>Plan Deadline</u>: The date that is the last day of the twelfth (12th) full month following the Effective Date.

98.    <u>Plan Support Agreement</u>: That certain Plan Support Agreement, dated April 2, 2025, among and between the Debtors , Cathay Bank and Cathay Holdings that governs, among other things, the treatment of the Claims of Cathay Bank and Cathay Holdings under the Plan.  A copy of the Plan Support Agreement is attached hereto as <u>Exhibit B</u> hereto.

99.    <u>Priority Tax Claims</u>:  Allowed Claims of Governmental Units for the principal amount of a tax within the meaning of § 507(a)(8) of the Code, and statutory interest accruing thereon prior to the Petition Date.

100.    <u>Pro Rata</u>:  Proportionally so that the ratio of the amount distributed on account of a particular Allowed Claim to the amount of such Allowed Claim is the same as the ratio of the amount distributed on account of all Allowed Claims in the Class of which such particular Allowed Claim is a member to the total amount of all Allowed Claims in such Class.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

101. <u>Professional Person</u>:  A person, including a trustee (if one is appointed), retained or to be compensated pursuant to §§ 326, 327, 328, 330, and/or 1103 of the Bankruptcy Court.

102. <u>Property Income</u>:  The rents, fees and other income generated from operating the Property.

103. <u>Post-Effective Date Debtor(s)</u>: The Debtors on and following the Effective Date.

104. <u>Salacia</u>: Salacia, LLC, a Washington limited liability company, whether acting in its capacity as a Debtor, debtor in possession or Post-Effective Date Debtor.

105. <u>Salacia Equipment</u>:  All equipment located at the Salacia Plant.

106. <u>Salacia Plant</u>: real property and improvements owned by Salacia located at 14101 45th Ave. N.E., Marysville, Washington 98271 comprising a multi-food processing plant and cold storage facility, the construction of which is approximately 70% completed.

107. <u>Salacia Sale</u>:  any sale of the Salacia Plant and/or the Salacia Equipment, either wholesale or piecemeal.

108. <u>Secured Claim</u>: A Claim that is a Secured Claim against a Debtor determined in accordance with § 506(a) of the Bankruptcy Code.

109. <u>Schedules</u>: The schedules of Assets, liabilities and executory contracts and the statement of financial affairs filed by each Debtor pursuant to § 521 of the Bankruptcy Code, and in accordance with the Bankruptcy Rules, as each has been, or may be, amended and supplemented from time to time.

110. <u>Silver Wave</u>: Silver Wave, LLC, a Washington limited liability company, whether acting in its capacity as a Debtor, debtor in possession or Post-Effective Date Debtor.

111. <u>SW Receivables</u>: Silver Wave's accounts receivable.

112. <u>SOFA</u>: The Statement of Financial Affairs (Official Form 207) each of the Debtors filed in their respective Chapter 11 Cases on the Petition Date.

113. <u>Tanks</u>:  The meaning given to such term in Articles IV.B.8 and VII.G.b. hereof.

114. <u>Unclassified Claim</u>: A Claim that is not designated in a Class pursuant to Section 1123(a)(1) of the Bankruptcy Code, including Administrative Expense Claims and Priority Tax Claims.

115. <u>Unsecured Claims</u>:  A Claim that is (a) based upon (i) a proof of claim executed and filed in accordance with Bankruptcy Rule 3003(c) prior to the Claims Bar Date, or (ii) the listing of

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

the Claim in a Debtor's Schedules as other than disputed, contingent or unliquidated, and (b) not a Secured Claim or an Unclassified Claim.

116.    <u>Vessels</u>:  The PORTAGE BAY, O/N 550249; ESTHER POINT, O/N 546495; and LADY ANGELA, O/N 274142, each of which is owned by Silver Wave.

117.    <u>Whittier</u>: Whittier Seafood, LLC, an Alaska limited liability company, whether acting in its capacity as a Debtor, debtor in possession or Post-Effective Date Debtor.

118.    <u>Whittier Equipment</u>: Any equipment owned by Whitter related to the Whittier Plant.

119.    <u>Whittier Ground Lease</u>: An unexpired ground lease between Whittier and Alaska Railroad Corporation related to the real property upon which a portion of the Whittier Property.

120.    <u>Whitter Lease(s)</u>: An unexpired lease of any condominium unit on the Whittier Property that may be assumed or rejected pursuant to Section 365 of the Bankruptcy Code.

121.    <u>Whittier Plant</u>: the seafood plant and improvements that sits on the land that is subject to the Whittier Ground Lease.

122.    <u>Whittier Property</u>:  Real property and improvements comprising the Whittier Plant, a ten-unit residential condominium, two executive condominium units, a 40-person bunkhouse and other improvements.

123.    <u>Whittier-Salacia Lien</u>: A Lien encumbering the Salacia Plant for the benefit of the Whittier Estate securing funds in the amount of $2,100,000 that the Whittier Estate actually advanced to the Salacia Estate following the Petition Date.  The Whittier-Salacia Lien is junior in priority to the Liens securing the Claims in Classes 1-4.

123.    <u>Whittier-Silver Wave Lien</u>: A Lien encumbering the SW Receivables for the benefit of the Whittier Estate in an amount not to exceed $2,600,000. The Whittier-Silver Wave Lien is junior in priority to the Liens securing the Class 1 Claim, and the Whittier Estate's rights thereunder shall be subordinated in all respects to the Class 1 Claim, except as otherwise set forth herein.

124.    <u>Whittier Sale</u>: The closing of a sale of the Whittier Property, either wholesale or piecemeal.

125.    <u>Unclassified Claim</u>: A Claim that is not designated in a Class pursuant to § 1123(a)(1) of the Code, including Administrative Expense Claims and Priority Tax Claims.

126.    <u>Unsecured Claim</u>: An Allowed Claim that is (a) based upon (i) a proof of claim executed and filed in accordance with Bankruptcy Rule 3003(c) prior to the Claims Bar Date, or (ii) the listing of the Claim in a Debtor's Schedules as other than disputed, contingent or unliquidated, and (b) not a Secured Claim or an Unclassified Claim.

DEBTORS' FOURTH AMENDED JOINT PLAN OF REORGANIZATION– Page 10

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

**B.     Rules of Interpretation**

The rules of construction set forth in § 102 of the Bankruptcy Code shall apply to the Plan.

**ARTICLE III.**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

All Claims against the Debtors are classified as set forth herein.  A Claim is in a particular Class only to the extent it qualifies within the definition of such Class and is in a different Class to the extent it qualifies within the definition of such different Class.

Class 1:  Secured Claim of Cathay Bank
Class 2:  Secured Claim of Harris Pacific (Salacia)
Class 3:  Secured Claim of Tesla Electric (Salacia)
Class 4: Secured Claim of Mastercraft Electric (Salacia)
Class 5:  Secured Claim of Whittier Estate (Salacia)
Class 6:  Secured Claim of Ferguson Enterprises (Whittier)
Class 7:  Secured Claim of Cathay Holdings (Modys)
Class 8: Secured Claim of Spokane Stainless Technologies, Inc. (Salacia)
Class 9: Secured Claim of the City of Whittier (Silver Wave)
Class 10:  General Unsecured Claims (Whittier)
Class 11:  General Unsecured Claims (MFI Inc.)
Class 12:  General Unsecured Claims (Salacia)
Class 13:  General Unsecured Claims (Modys)
Class 14:  General Unsecured Claims (MFI LLC)
Class 15:  General Unsecured Claims (Silver Wave)
Class 16:  Intercompany Claims Owing to MFI Inc., Modys and Whittier
Class 17:  Equity Interests of Prince William Sound Ventures (Whittier)
Class 18:  Equity Interests of Prince William Sound Ventures (MFI LLC)
Class 19:  Equity Interests of North Star Capital (Modys)
Class 20:  Equity Interests of North Star Capital (Salacia)
Class 21:  Equity Interests of North Star Capital (MFI Inc.)
Class 22:  Equity Interests of Portage Bay Ventures (Silver Wave)

**ARTICLE IV.**
**PROVISIONS FOR SATISFYING CLAIMS AND SPECIFYING**
**TREATMENT OF EACH CLASS UNDER THE PLAN**

There are sixteen Classes of Claims and six Classes of Equity Interests, and certain other Claims are Unclassified Claims pursuant to applicable provisions of the Bankruptcy Code.  If the Court confirms the Plan and the Plan becomes effective, the Class into which each Allowed Claim and Allowed Interest fits will determine the manner in which such Claim or interest will be treated.

The treatment of all Allowed Claims and Allowed Interests shall be as follows:

DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION– Page 11

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

## A.   Unclassified Claims

a.   <u>Administrative Expense Claims</u>.  As defined herein, Administrative Expense Claims are Allowed Claims for costs or expenses of the Chapter 11 Case that are allowed under sections 503(b) and 507(a)(1) of the Bankruptcy Code.  Claims incurred in the ordinary course of the Debtors' business following the Petition Date shall be paid in the ordinary course of business in accordance with the terms and conditions of the particular agreements governing such obligations and, if applicable, Cash Collateral Orders.  Unless otherwise agreed to by Professional Persons, Claims of Professional Persons shall be paid on the latest of (i) the Effective Date; (ii) the date each such Claim becomes an Allowed Claim, or (iii) three (2) Business Days after funds that are not subject to a lien or security interest become available.  Unless the Holder of such Claim agrees to alternative treatment, all Allowed Administrative Expense Claims that have been incurred by the Debtors prior to Confirmation shall be paid on or before the Effective Date of the Plan.

b.   <u>Priority Tax Claims</u>.  As defined under the Plan, Priority Tax Claims are Allowed Claims of Governmental Units that are entitled to priority in accordance with section 507(a)(8) of the Bankruptcy Code.  Priority Tax Claims include the principal portion of the applicable tax and interest accrued thereon through the Effective Date but do not include any penalties.  Consistent with section 1129(a)(9)(C) of the Bankruptcy Code, all Priority Tax Claims shall be paid in full by the Post-Effective Date Debtor in equal quarterly payments commencing in the sixth full month following the Effective Date, until the earlier of: (i) twelve (12) months, or (ii) such Priority Tax Claim is paid in full.

## B.   Classified Claims and Interests

### 1.   <u>Class 1</u>: Secured Claim of Cathay Bank (All Debtors)

Class 1 consists of the Secured Claim of Cathay Bank (the "<u>Class 1 Claim</u>"), as more fully described below.  The Class 1 Claim shall be paid according to the following terms:

a.   <u>Identification of Claim</u>.  The Class 1 Claim is based upon amounts owing on the Cathay Bank Loan pursuant to the Cathay Bank Loan Documents.

b.   <u>Allowance of Claim</u>. The Class 1 Claim shall be allowed as of the Effective Date as a Secured Claim pursuant to Bankruptcy Code sections 502(a), 506(a), and 506(b) in the amount of $20,497,257.86, plus default interest, and all attorney fees and costs actually incurred from the Petition Date through the Effective Date.  The Confirmation Order shall specify the dollar amount of the Class 1 Claim as of the Effective Date (the "Class 1 Allowed Claim").

c.   <u>Satisfaction of Class 1 Allowed Claim</u>.  The Debtors shall pay the Holder of the Class 1 Allowed Claim as set forth below:

(1) <u>Retention of Security Interests</u>.  The Holder of the Class 1 Allowed Claim shall retain each of its Liens, rights and privileges on and in all the Cathay Collateral securing the Class 1 Allowed Claim following the Effective Date, including without limitation (i) the Lien of the

DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION– Page 12

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

Cathay-Salacia Deed of Trust, (ii) the Cathay-Whittier Adequate Protection Lien, (iii) the Cathay-Whittier Equipment Lien,  (iv) its Liens encumbering the Vessels, and (v) its Liens encumbering MFI Inc. Assets and MFI LLC Assets,  until the Class 1 Allowed Claim has been paid in full.

           (2)  <u>Interest</u>.  Interest shall accrue on the unpaid principal balance of the Class 1 Allowed Claim at a fixed rate of thirteen and one-quarter percent (13.25%) per annum until paid in full.

           (3)  <u>Additional Collateral</u>: As additional collateral for the Class 1 Allowed Claim, within five Business Days following the Effective Date, Cathay Bank shall prepare and Modys shall execute and deliver to Cathay Bank a deed of trust (in form and substance acceptable to Cathay Bank) that will encumber the Modys Building in second-lien position until the Class 1 Allowed Claim is paid in full, whereupon Cathay Bank shall  reconvey such deed of trust within five Business Days of the Class 1 Allowed Claim being paid in full.

           (4)  <u>Plan Distributions</u>.  The Holder of the Class 1 Allowed Claim shall be paid in full from a combination of (i) Cathay-Whittier Proceeds; (ii) Net Proceeds from a sale of the Salacia Plant; (iii) Net Proceeds from a sale of the Salacia Equipment; (iv) Net Proceeds from the sale of the Modys Building; (v) Net Proceeds from any sale of the Vessels; and (vi) Net Proceeds from any collection or compromise of the SW Receivables, all as set forth in **Article VII.G** hereof.

        d.  <u>Impairment</u>.  Class 1 is impaired under the Plan.  Pursuant to § 1129(b) of the Bankruptcy Code, in the event Class 1 does not accept the Plan, the Debtors requests that the Court confirm the Plan without the consent of Class 1.

        **2.**    <u>**Class 2**</u>**: Secured Claim of Harris Pacific (Salacia)**

Class 2 consists of the Secured Claim of Harris Pacific against Salacia (the "<u>Class 2 Claim</u>"), as more fully described below.  The Class 2 Claim shall be paid according to the following terms:

        a.  <u>Identification of Claim</u>.  The Class 2 Claim is based upon amounts owing in connection with construction services provided by Harris Pacific on the Salacia Plant.  Harris Pacific contends that it is owed $3,008,623.29 in principal as of the Petition Date with continuing contractual interest accruing of 12% per annum on each invoice not paid within thirty days of billing, plus lien fees, and attorneys' fees and costs, and that such amount is secured by a statutory lien against the Salacia Plant based on the recording of a Claim of Lien on June 11, 2024, pursuant to RCW 60.04. As of February 28, 2025, Harris Pacific contends that its claim, consisting of principal and interest, totals more than $3.5 million. Harris Pacific also contends that it commenced work on the Salacia Plant on November 20, 2022, or prior to the recordation of the Cathay-Salacia Deed of Trust.  The Debtors believe that, to the extent of the enforceability of the associated lien rights, the Class 2 Claim is senior in priority to the Class 1 Claim.

        b.  <u>Allowance of Claim</u>. The Class 2 Claim shall be allowed as of the Effective Date as a Secured Claim pursuant to Bankruptcy Code sections 502(a) and 506(a) in the amount of $3,350,000.00 (the "<u>Class 2 Allowed Claim</u>").

DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION– Page 13

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

c.    <u>Satisfaction of Class 2 Allowed Claim</u>.  The Debtors shall pay the Holder of the Class 2 Allowed Claim as set forth below:

(1)  <u>Retention of Security Interests</u>.  The Holder of the Class 2 Allowed Claim shall retain its statutory Lien on the Salacia Plant following the Effective Date until the Class 2 Allowed Claim has been paid in full.

(2)  <u>Interest</u>.  Commencing on July 1, 2025, if the Class 2 Allowed Claim is not sooner paid, interest shall accrue on the unpaid principal balance of the Class 2 Allowed Claim at the rate of twelve percent (12%) per annum until the Class 2 Allowed Claim is paid in full.

(3)  <u>Plan Distributions</u>.  The Holder of the Class 2 Allowed Claim shall be paid in full in a single payment from the Net Proceeds from a Salacia Sale, as set forth in **Article VII.G** hereof, not later than the Plan Deadline, subject to Article VII.D. hereof.

d.    <u>Mutual Releases</u>.  Confirmation of the Plan shall have the effect of releasing all Claims that the Debtors and the Holder of the Class 2 Allowed Claim, respectively, have or may have against each other that existed or arose at any time prior to entry of the Confirmation Order, other than the rights and obligations created under and set forth in the Plan.

e.    <u>Impairment</u>.  Class 2 is impaired under the Plan.  Pursuant to § 1129(b) of the Bankruptcy Code, in the event Class 2 does not accept the Plan, the Debtors requests that the Court confirm the Plan without the consent of Class 2.

**3.    <u>Class 3</u>: Secured Claim of Tesla Electric (Salacia)**

Class 3 consists of the Secured Claim of Tesla Electric against Salacia (the "Class 3 Claim"), as more fully described below.  The Class 3 Claim shall be paid according to the following terms:

a.    <u>Identification of Claim</u>.  The Class 3 Claim is based upon amounts allegedly owing in connection with construction services on the Salacia Plant.  Tesla alleges that it was owed approximately $237,000 as of the Petition Date, and that such amount is secured by a statutory lien against the Salacia Plant based on the recording of a Claim of Lien on November 9, 2023, pursuant to RCW 60.04.  Tesla also alleges that it commenced work on the Salacia Plant on or about June 17, 2021, or prior to the recordation of the Cathay-Salacia Deed of Trust.  The Debtors believe that, to the extent of the enforceability of the associated lien rights, the Class 3 Claim is senior in priority to both the Class 1 Claim and the Class 2 Claim.  Prior to the Petition Date, Tesla commenced an action in Snohomish County Superior Court, *Tesla Electric, LLC v. Salacia LLC et al.,* Case No. 24-2-05206-31, seeking (among other requests for relief) to foreclose on its mechanic's lien, which was stayed upon the commencement of these Chapter 11 Cases.

b.    <u>Allowance of Claim</u>.  The Class 3 Claim shall be allowed in such amount as the parties agree or the Court allows following Notice and Hearing (the "<u>Class 3 Allowed Claim</u>").

c.    <u>Satisfaction of Class 3 Allowed Claim</u>.  The Debtors shall pay the Holder of the Class 3 Allowed Claim as set forth below:

DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION– Page 14

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

(1)   <u>Retention of Security Interests</u>.  The Holder of the Class 3 Allowed Claim shall retain its statutory Lien on the Salacia Plant to the extent of its enforceability following the Effective Date until the Class 3 Allowed Claim has been paid in full.

(2)   <u>Interest</u>.  Interest shall accrue on the unpaid principal balance of the Class 3 Allowed Claim at the rate of eighteen percent (18%) per annum non-default rate until the Class 3 Allowed Claim is paid in full.

(3)   <u>Plan Distributions</u>.  The Holder of the Class 3 Allowed Claim shall be paid in full in a single payment from a Salacia Sale, as set forth in **Article VII.G** hereof, not later than the Plan Deadline.

d.   <u>Impairment</u>.  Class 3 is impaired under the Plan.  Pursuant to § 1129(b) of the Bankruptcy Code, in the event Class 3 does not accept the Plan, the Debtors requests that the Court confirm the Plan without the consent of Class 3.

**4.   <u>Class 4</u>: Secured Claim of Mastercraft Electric (Salacia)**

Class 4 consists of the Secured Claim of Mastercraft Electric against Salacia (the "<u>Class 4 Claim</u>"), as more fully described below.  The Class 4 Claim shall be paid according to the following terms:

a.   <u>Identification of Claim</u>.  The Class 4 Claim is based upon amounts allegedly owing in connection with construction services on the Salacia Plant.  As set forth in its Schedules, Salacia believes Mastercraft Electric was owed approximately $714,000 as of the Petition Date and that such amount is secured by a statutory lien against the Salacia Plant based on the recording of a Claim of Lien on February 23, 2024, pursuant to RCW 60.04.  The contracts for services between Salacia and Mastercraft Electric were executed on August 24, 2023, following the recordation of the Cathay-Salacia Deed of Trust.  The Debtors believe that, to the extent of the enforceability of the associated lien rights, the Class 4 Claim is junior in priority to the Class 1 Claim, the Class 2 Claim and the Class 3 Claim.

b.   <u>Allowance of Claim</u>. The Class 4 Claim shall be allowed as of the Effective Date as a Secured Claim pursuant to Bankruptcy Code sections 502(a) and 506(a) in an amount that shall be set forth in (or otherwise determined pursuant to the provisions of) the Confirmation Order and equal to the amount then owing on the Class 4 Claim (the "<u>Class 4 Allowed Claim</u>").

c.   <u>Satisfaction of Class 4 Allowed Claim</u>.  The Debtors shall pay the Holder of the Class 4 Allowed Claim as set forth below:

(1)   <u>Retention of Security Interests</u>.  The Holder of the Class 4 Allowed Claim shall retain its statutory Lien on the Salacia Plant to the extent of its enforceability following the Effective Date until the Class 4 Allowed Claim has been paid in full.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

(2) <u>Interest</u>.  Interest shall accrue on the unpaid principal balance of the Class 4 Allowed Claim at the non-default rate, if any, set forth in the documents evidencing the Class 4 Allowed Claims until the Class 4 Allowed Claim is paid in full.

(3) <u>Plan Distributions</u>.  The Holder of the Class 4 Allowed Claim shall be paid in full in a single payment from a Salacia Sale, as set forth in **Article VII.G** hereof, not later than the Plan Deadline.

d.      <u>Impairment</u>.  Class 4 is impaired under the Plan.  Pursuant to § 1129(b) of the Bankruptcy Code, in the event Class 4 does not accept the Plan, the Debtors requests that the Court confirm the Plan without the consent of Class 4.

**5.      <u>Class 5</u>: Secured Claim of Whittier Estate (Salacia)**

Class 5 consists of the Secured Claim of the Whittier Estate against Salacia (the "<u>Class 5 Claim</u>"), as more fully described below.  The Class 5 Claim shall be paid according to the following terms:

a.      <u>Identification of Claim</u>.  The Class 5 Claim is based upon advances from the Whittier Estate to the Salacia Estate totaling $2,100,000 following the Petition Date, which are secured by the Whittier-Salacia Lien.

b.      <u>Allowance of Claim</u>. The Class 5 Claim shall be allowed as of the Effective Date as a Secured Claim pursuant to Bankruptcy Code sections 502(a) and 506(a) in the amount of $2,100,000 (the "<u>Class 5 Allowed Claim</u>").

c.      <u>Satisfaction of Class 5 Allowed Claim</u>.  The Debtors shall pay the Holder of the Class 5 Allowed Claim as set forth below:

(1) <u>Retention of Security Interests</u>.  The Holder of the Class 5 Allowed Claim shall retain its statutory Lien on the Salacia Plant to the extent of its enforceability following the Effective Date until the Class 5 Allowed Claim has been paid in full.

(2) <u>Interest</u>.  No interest shall accrue on the unpaid principal balance of the Class 5 Allowed Claim.

(3) <u>Plan Distributions</u>.  The Holder of the Class 5 Allowed Claim shall be paid in full in a single payment from a Salacia Sale, as set forth in **Article VII.G** hereof, not later than the Plan Deadline.

d.      <u>Impairment</u>.  Class 5 is impaired under the Plan.  Pursuant to § 1129(b) of the Bankruptcy Code, in the event Class 5 does not accept the Plan, the Debtors requests that the Court confirm the Plan without the consent of Class 5.

**6.      <u>Class 6</u>: Secured Claim of Ferguson Enterprises (Whittier)**

DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION– Page 16

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

Class 6 consists of the Secured Claim of the Whittier Estate against Salacia (the "Class 6 Claim"), as more fully described below.  The Class 6 Claim shall be paid according to the following terms:

      a.    Identification of Claim.  The Class 6 Claim is based upon a judgment entered against Whittier prior to the Petition Date in the amount of $5,542.44, which created a Lien encumbering the Whittier Property.

      b.    Allowance of Claim. The Class 6 Claim shall be allowed as of the Effective Date as a Secured Claim pursuant to Bankruptcy Code sections 502(a) and 506(a) in the amount of $5,542.44 (the "Class 6 Allowed Claim").

      c.    Satisfaction of Class 6 Allowed Claim.  The Debtors shall pay the Holder of the Class 6 Allowed Claim as set forth below:

      (1) Retention of Security Interests.  The Holder of the Class 6 Allowed Claim shall retain its judgment Lien encumbering the Whittier Property following the Effective Date until the Class 6 Allowed Claim has been paid in full.

      (2) Interest.  Interest shall accrue on the unpaid principal balance of the Class 6 Allowed Claim at the Federal Judgment Rate until the Class 6 Allowed Claim is paid in full.

      (3) Plan Distributions.  The Holder of the Class 6 Allowed Claim shall be paid in full in a single payment from the Whittier Sale, as set forth in **Article VII.G** hereof, not later than the Plan Deadline.

      d.    Impairment.  Class 6 is impaired under the Plan.  Pursuant to § 1129(b) of the Bankruptcy Code, in the event Class 6 does not accept the Plan, the Debtors requests that the Court confirm the Plan without the consent of Class 6.

**7.    Class 7: Secured Claim of Cathay Holdings (Modys)**

Class 7 consists of the Secured Claim of the Pacific Premier (the "Class 7 Claim"), as more fully described below.  The Class 7 Claim shall be paid according to the following terms:

      a.    Identification of Claim.  The Class 7 Claim is based upon a loan to Modys from Opus Bank in March 2015 in the original principal amount of $912,000 that is secured by a Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing that was recorded on April 1, 2015, under King County Auditor's No. 20150401001235 encumbering the Modys Building.  Pacific Premier acquired Opus Bank in 2020 and, as of the Petition Date, was the successor in interest to Opus Bank in connection with the Class 7 Claim.  On or about February 7, 2025, Cathay Holdings acquired the Class 7 Claim from Pacific Premier and, on February 10, 2025, filed a *Transfer of Claim Other Than For Security* in Modys' bankruptcy case [Docket No. 27] (the "Class 7 Claim Notice").  The Class 7 Claim Notice states an amount owing of $744,868.45.

DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION– Page 17

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

b.      Allowance of Claim. The Class 7 Claim shall be allowed as of the Effective Date as a Secured Claim pursuant to Bankruptcy Code sections 502(a) and 506(a) in an amount to be set forth in the Confirmation Order reflecting its then-outstanding balance (the "Class 7 Allowed Claim").

c.      Satisfaction of Class 7 Allowed Claim.  The Debtors shall pay the Holder of the Class 7 Allowed Claim as set forth below:

(1)  Retention of Security Interests.  The Holder of the Class 7 Allowed Claim shall retain its Lien on the Modys Building following the Effective Date until the Class 7 Allowed Claim has been paid in full.

(2)  Interest.  Interest shall accrue on the unpaid principal balance of the Class 7 Allowed Claim at the default rate set forth in the documents evidencing the Class 7 Allowed Claims until the Class 7 Allowed Claim is paid in full.

(3)  Sale of Modys Building.  Pursuant to the terms of the Plan Support Agreement, the Debtors will have listed the Modys Building for sale prior to the hearing on Confirmation.  The Debtors shall close a sale of the Modys Building not later than November 30, 2025.

(4)  Plan Distributions.  Modys shall continue to pay the Holder of the Class 7 Allowed Claim regular monthly interest payments at the default rate set forth in the Pacific Premier Loan Documents until the Class 7 Allowed Claim is paid in full ("Modys Monthly Payments"), provided however, that the Debtors' failure to make any Modys Monthly Payment shall not constitute a default or event of default under the Plan. Cathay Bank may carveout from its Reserved Sale Proceeds funds to advance to the Plan Administrator for the purpose of making any Modys Monthly Payments to the Holder of the Class 7 Allowed Claim.

d.      Impairment.  Class 7 is impaired under the Plan.  Pursuant to § 1129(b) of the Bankruptcy Code, in the event Class 7 does not accept the Plan, the Debtors requests that the Court confirm the Plan without the consent of Class 7.

**8.      Class 8: Secured Claim of Spokane Stainless Technologies, Inc. (Salacia)**

Class 8 consists of the Secured Claim of Spokane Stainless Technologies, Inc. (the "Class 8 Claim"), as more fully described below.  The Class 8 Claim shall be paid according to the following terms:

a.      Identification of Claim.  The Class 8 Claim is based upon a purchase contract for nine custom stainless steel tanks (the "Tanks") manufactured by Spokane Stainless Technologies, Inc. to be installed at the Salacia Plant and a possessory security interest in the manufactured tanks, the remaining balance of which is $192,615.40 as of the Petition date as evidenced by the secured claim the Holder of the Class 8 Claim previously filed.

DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION– Page 18

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

       b.      <u>Allowance of Claim</u>. The Class 8 Claim shall be allowed as of the Effective Date as a Secured Claim pursuant to Bankruptcy Code sections 502(a) and 506(a) in the amount of $192,615.40 (the "<u>Class 8 Allowed Claim</u>").

       c.      <u>Satisfaction of Class 8 Allowed Claim</u>.  The Debtors shall pay the Holder of the Class 8 Allowed Claim as set forth below:

       (1)  <u>Retention of Security Interests</u>.  The Holder of the Class 8 Allowed Claim shall retain its possessory Lien on the Tanks following the Effective Date until the Class 8 Allowed Claim has been paid in full.

       (2)  <u>Interest</u>.  No interest shall accrue on the unpaid principal balance of the Class 8 Allowed Claim.

       (3)  <u>Plan Distributions</u>. The Holder of the Class 8 Allowed Claim shall be paid a minimum of $96,307.00 (the "<u>Class 8 Minimum Payment</u>") from a Salacia Sale, as set forth in **Article VII.G** hereof, not later than October 15, 2025. If the Class 8 Allowed Claim is not paid the Class 8 Minimum Payment by such date, the Holder of the Class 8 Allowed Claim may liquidate the Tanks and may amend its Class 8 Claim to the amount of any remaining unpaid unsecured deficiency after the application of net proceeds from liquidation of the Tanks, not to exceed $100,000. If the Holder of the Class 8 Allowed Claim is paid the Class 8 Minimum Payment or any other greater amount that is less than the full amount of the Class 8 Allowed Claim not later than October 15, 2025, it may amend its Class 8 Claim to the amount of any remaining unpaid unsecured deficiency after payment of the Class 8 minimum payment, not to exceed $100,000.00. Any amended unsecured deficiency claim shall be treated as a Class 12 Claim and must be filed prior to the closing date of any Salacia Sale.

       d.      <u>Release of Tanks</u>. Following payment of the Class 8 Minimum Payment by October 15, 2025, Spokane Stainless Technologies, Inc. shall release the Tanks to Salacia or the purchaser of a Salacia Sale, as applicable, at the Spokane Stainless Technologies, Inc. plant located at 3808 North Sullivan Road, Building 4H, Spokane, Washington. Salacia or the purchaser under a Salacia Sale shall pay all shipping costs to ship the Tanks to a destination of Salacia's or the purchaser's designation.

       e.      <u>Impairment</u>.  Class 8 is impaired under the Plan.  Pursuant to § 1129(b) of the Bankruptcy Code, in the event Class 8 does not accept the Plan, the Debtors requests that the Court confirm the Plan without the consent of Class 8.

**9.**    **<u>Class 9</u>: Secured Claim of the City of Whittier (Silver Wave)**

Class 9 consists of the Secured Claim of the City of Whittier (the "<u>Class 9 Claim</u>"), as more fully described below.  The Class 9 Claim shall be paid according to the following terms:

       a.      <u>Identification of Claim</u>.  The Class 9 Claim is based upon a necessaries lien against the LADY ANGELA arising pursuant to 46 U.S.C. § 31342 as evidenced by the secured claim filed in the amount of $2,972.97 as of the Petition Date.

DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION– Page 19

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

b.    Allowance of Claim. The Class 9 Claim shall be allowed as of the Effective Date as a Secured Claim pursuant to Bankruptcy Code sections 502(a) and 506(a) in the amount of $2,972.97 (the "Class 9 Allowed Claim").

c.    Satisfaction of Class 9 Allowed Claim. The Debtors shall pay the Holder of the Class 9 Allowed Claim as set forth below:

(1) Retention of Security Interests. The Holder of the Class 9 Allowed Claim shall retain statutory lien on the LADY ANGELA to the extent of its enforceability following the Effective Date until the Class 9 Allowed Claim has been paid in full.

(2) Interest. No interest shall accrue on the unpaid principal balance of the Class 9 Allowed Claim.

(3) Plan Distributions. The Holder of the Class 9 Allowed Claim shall be paid in full in a single payment from the proceeds of the sale of the LADY ANGELA, prior to the payment of any sale proceeds to any other party in interest.

d.    Impairment. Class 9 is impaired under the Plan. Pursuant to § 1129(b) of the Bankruptcy Code, in the event Class 9 does not accept the Plan, the Debtors requests that the Court confirm the Plan without the consent of Class 9.

**10.    Class 10: General Unsecured Claims (Whittier)**

Class 10 consists of all Unsecured Claims against the Whittier Estate (the "Class 10 Claims"). The Class 10 Claims shall be treated as follows:

Allowance of Claims. Each Class 10 Claim shall be allowed or disallowed, as the case may be, whether prior to or following Confirmation, in such amount as to which the Debtor and the claimant may agree or the Court may approve following Notice and Hearing (the "Class 10 Allowed Claims"). The Debtors believe that the Class 10 Claims total approximately $1,949,645.37 without regard to any defenses, setoffs or counterclaims the Debtors may hold as to any such Claims.

a.    Satisfaction of Class 10 Allowed Claims. The Debtors shall pay the Holders of the Class 10 Allowed Claims as set forth below:

(1) Interest. Interest shall accrue on the unpaid principal balance of the Class 10 Allowed Claims at the Federal Judgment Rate until the Class 10 Allowed Claims are paid in full.

(2) Plan Distributions. Holders of Class 10 Allowed Claims shall be paid in full from a combination of (i) the distribution of the Net Proceeds from the Whittier Sale, (ii) the Net Proceeds from a Salacia Sale as the beneficiaries of the distribution to be made to Class 5, as set forth in **Article VII.G** hereof, and (iii) following full payment of the Class 1 Allowed Claim, the Net Proceeds from collection of the SW Receivables, as set forth in **Article VII.E** hereof.

DEBTORS' FOURTH AMENDED JOINT PLAN OF REORGANIZATION– Page 20

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

b.      Impairment.  Class 10 is impaired under the Plan.  Pursuant to § 1129(b) of the Bankruptcy Code, in the event Class 10 does not accept the Plan, the Debtors requests that the Court confirm the Plan without the consent of Class 10.

11.     Class 11:  General Unsecured Claims (MFI Inc.)

Class 11 consists of all Unsecured Claims against the MFI Inc. Estate (the "Class 11 Claims"). The Class 11 Claims shall be treated as follows:

a.      Allowance of Claims.  Each Class 11 Claim shall be allowed or disallowed, as the case may be, whether prior to or following Confirmation, in such amount as to which the Debtor and the claimant may agree or the Court may approve following Notice and Hearing (the "Class 11 Allowed Claims").  The Debtors believe that all Class 11 Claims total approximately $88,364.74 without regard to any defenses, setoffs or counterclaims the Debtors may hold as to any such Claims.

b.      Satisfaction of Class 11 Allowed Claims.  The Debtors shall pay the Holders of the Class 11 Allowed Claims as set forth below:

(1) Interest.  Interest shall accrue on the unpaid principal balance of each Class 11 Allowed Claim at the Federal Judgment Rate until each Class 11 Allowed Claim is paid in full.

(2) Plan Distributions.  The Holders of the Class 11 Allowed Claims shall be paid in full from a Salacia Sale as set forth in **Article VII.G** hereof.

c.      Impairment.  Class 11 is impaired under the Plan.  Pursuant to § 1129(b) of the Bankruptcy Code, in the event Class 11 does not accept the Plan, the Debtors requests that the Court confirm the Plan without the consent of Class 11.

12.     Class 12:  General Unsecured Claims (Salacia)

Class 10 consists of all Unsecured Claims against the Salacia Estate (the "Class 12 Claims"). The Class 12 Claims shall be treated as follows:

a.      Allowance of Claims.  Each Class 12 Claim shall be allowed or disallowed, as the case may be, whether prior to or following Confirmation, in such amount as to which the Debtor and the claimant may agree or the Court may approve following Notice and Hearing.  The Debtors believe that all Class 12 Claims total approximately $1,651,750.68, without regard to any defenses, setoffs or counterclaims the Debtors may hold as to any such Claims.

b.      Satisfaction of Class 12 Allowed Claims.  The Debtors shall pay the Holders of the Class 12 Allowed Claims as set forth below:

(1) Interest.  Interest shall accrue on the unpaid principal balance of each Class 12 Allowed Claim at the Federal Judgment Rate until the Class 12 Allowed Claim is paid in full.

DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION– Page 21

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

      (2) <u>Plan Distributions</u>.  The Holders of the Class 12 Allowed Claims shall be paid in full from a Salacia Sale as set forth in **Article VII.G** hereof.

      c.     <u>Impairment</u>.  Class 12 is impaired under the Plan.  Pursuant to § 1129(b) of the Bankruptcy Code, in the event Class 12 does not accept the Plan, the Debtors requests that the Court confirm the Plan without the consent of Class 12.

**13.**     <u>Class 13</u>:  **General Unsecured Claims (Modys)**

     Class 13 consists of all Unsecured Claims against the Modys Estate (the "<u>Class 13 Claims</u>").  The Class 13 Claims shall be treated as follows:

      a.     <u>Allowance of Claims</u>.  Each Class 13 Claim shall be allowed or disallowed, as the case may be, whether prior to or following Confirmation, in such amount as to which the Debtor and the claimant may agree or the Court may approve following Notice and Hearing.  The Schedules that Modys previously file reflect that the total of all Class 13 Claims is less than $2,300, without regard to any defenses, setoffs or counterclaims the Debtors may hold as to any such Claims.

      b.     <u>Satisfaction of Class 13 Allowed Claims</u>.  The Debtors shall pay the Holders of the Class 13 Allowed Claims as set forth below:

 <u>Interest</u>.  Interest shall accrue on the unpaid principal balance of each Class 14 Allowed Claim at the Federal Judgment Rate until Class 14 Allowed Claims are paid in full.

      (1) <u>Plan Distributions</u>.  Modys shall pay the Holders of the Class 13 Allowed Claims in full from cash on hand not more than thirty (30) days following the Effective Date.

      c.     <u>Impairment</u>.  Class 13 is impaired under the Plan.  Pursuant to § 1129(b) of the Bankruptcy Code, in the event Class 13 does not accept the Plan, the Debtors requests that the Court confirm the Plan without the consent of Class 13.

**14.**     <u>Class 14</u>:  **General Unsecured Claims (MFI LLC)**

     Class 14 consists of all Unsecured Claims against the MFI LLC Estate (the "<u>Class 14 Claims</u>").  The Class 14 Claims shall be treated as follows:

      a.     <u>Allowance of Claims</u>.  Each Class 14 Claim shall be allowed or disallowed, as the case may be, whether prior to or following Confirmation, in such amount as to which the Debtor and the claimant may agree or the Court may approve following Notice and Hearing.  The Schedules that MFI LLC previously file reflect that the total of all Class 14 Claims is less than $15,000, without regard to any defenses, setoffs or counterclaims the Debtors may hold as to any such Claims.

      b.     <u>Satisfaction of Class 14 Allowed Claims</u>.  The Debtors shall pay the Holders of the Class 14 Allowed Claims as set forth below:

DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION– Page 22

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

(1)  Interest.  Interest shall accrue on the unpaid principal balance of each Class 14 Allowed Claim at the Federal Judgment Rate until each Class 14 Allowed Claim is paid in full.

(2)  Plan Distributions.  The Holders of the Class 14 Allowed Claims shall be paid in full from a Salacia Sale as set forth in **Article VII.C** hereof, not later than the Plan Deadline.

c.    Impairment.  Class 14 is impaired under the Plan.  Pursuant to § 1129(b) of the Bankruptcy Code, in the event Class 14 does not accept the Plan, the Debtors requests that the Court confirm the Plan without the consent of Class 14.

### 15.    Class 15:  General Unsecured Claims (Silver Wave)

Class 15 consists of all Unsecured Claims against the Silver Wave (the "Class 15 Claims"). The Schedules that Silver Wave previously filed reflect no Unsecured Claims other than its unsecured liability on the Class 1 Claim as a guarantor.  The Holder of the Class 1 Claim has a Lien on the Vessels that Silver Wave owns as its sole Assets; and (ii) the SW Receivables; and will receive all Net Proceeds from the disposition of the Vessels in connection with the Whittier Sale, following the payment of the Allowed Class 9 Claim in the case of a sale of the LADY ANGELA, and from collecting or compromising the SW Receivables.  The Plan therefore provides for no distribution on account of any Class 15 Claim.  Class 15 is impaired under the Plan.  Pursuant to § 1129(b) of the Bankruptcy Code, in the event Class 15 does not accept the Plan, the Debtors requests that the Court confirm the Plan without the consent of Class 15.

The Kenai Peninsula Borough filed two proofs of claims for delinquent personal property taxes (Claims 11 and 12, filed on Whittier's Claims Register). The Debtors paid these personal property taxes post-petition, and therefore the Plan makes no provision for the payment of Kenai Peninsula Borough's claims.

### 16.    Class 16:  Intercompany Claims

Class 16 is comprised of all Intercompany Claims, which in each case represent funds actually advanced from one Debtor to another Debtor.  The Debtors believe all Intercompany Claims would be allowable as Unsecured Claims and would dilute and diminish potential distributions to other Creditors in the same Class.  Pursuant to the Plan, all Intercompany Claims shall be reserved and allowed solely for purposes of distributing funds from one Debtor to another Debtor in connection with the sale of the Salacia Plant and/or the Salacia Equipment for payment of, and only to the extent of, Allowed Claims of non-Debtor Creditors.  By way of example only, if following a sale of the Salacia Plan, all Allowed Claims in the Salacia Estate are paid in full, funds would be distributed to MFI Inc. on account of the Intercompany Claim owing from Salacia to MFI Inc., but only in an amount necessary to pay all Allowed Claims in the MFI Inc. Estate in full.

### 17.    Class 17:  Equity Interests of Prince William Sound Ventures (Whittier)

DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION– Page 23

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

Class 17 consists of Equity Interests of Prince William Sound Ventures in Whittier. The Holder of the Class 17 Equity Interests shall retain such Equity Interests following the Effective Date, but no distributions shall be made on account of such Equity Interests until all Allowed Claims against the Whittier Estate are paid in full in accordance with the Plan.

18.    **Class 18:  Equity Interests of Prince William Sound Ventures (MFI LLC)**

Class 18 consists of Equity Interests of Prince William Sound Ventures in MFI LLC. The Holder of the Class 18 Equity Interests shall retain such Equity Interests following the Effective Date, but no distributions shall be made on account of such Equity Interests until all Allowed Claims against the MFI LLC Estate are paid in full in accordance with the Plan.

19.    **Class 19:  Equity Interests of North Star Capital (Modys)**

Class 19 consists of Equity Interests of North Star Capital in Modys. The Holder of the Class 19 Equity Interests shall retain such Equity Interests following the Effective Date, but no distributions shall be made on account of such Equity Interests until all Allowed Claims against the Modys Estate are paid in full in accordance with the Plan.

20.    **Class 20:  Equity Interests of North Star Capital (Salacia)**

Class 20 consists of Equity Interests of North Star Capital in Salacia. The Holder of the Class 20 Equity Interests shall retain such Equity Interests following the Effective Date, but no distributions shall be made on account of such Equity Interests until all Allowed Claims against the Salacia Estate are paid in full in accordance with the Plan.

21.    **Class 21:  Equity Interests of North Star Capital (MFI Inc.)**

Class 21 consists of Equity Interests of North Star Capital in MFI Inc. The Holder of the Class 21 Equity Interests shall retain such Equity Interests following the Effective Date, but no distributions shall be made on account of such Equity Interests until all Allowed Claims against the MFI Inc. Estate are paid in full in accordance with the Plan.

22.    **Class 22:  Equity Interests of Portage Bay Ventures (Silver Wave)**

Class 22 consists of Equity Interests of Portage Bay Ventures in Silver Wave. The Holder of the Class 22 Equity Interests shall retain such Equity Interests following the Effective Date, but no distributions shall be made on account of such Equity Interests until all Allowed Claims against the Silver Wave Estate are paid in full in accordance with the Plan.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

## ARTICLE V.
## CLAIMS OBJECTIONS AND TREATMENT OF DISPUTED CLAIMS

**A.      Administration of Claims**

Except as otherwise provided for herein, each Claim shall be allowed or disallowed, as the case may be, in such amount as the Court shall determine, whether prior to or following Confirmation, and whether pursuant to this Plan or otherwise, upon such notice as the Bankruptcy Court or Bankruptcy Rules shall permit except that, after the Effective Date, the Post-Effective Date Debtors may settle or compromise any controversies regarding Claims without notice or further order of the Court.  The deadline to object to Claims shall be sixty (60) days after the Effective Date of the Plan.

**B.      Defenses and Counterclaims Assigned to Post-Effective Date Debtors**

On the Effective Date, the Debtor shall be deemed to have assigned to the Post-Effective Date Debtors, and the Post-Effective Date Debtors shall be deemed to have acquired and become the successor to, all defenses, counterclaims and setoffs, whether equitable or legal, of the Debtors to Claims held or asserted to be held against the Debtors.  Any objection to Claims must be filed and served in accordance with Bankruptcy Rule 3007; provided, however, that the foregoing limitations do not apply to any Claims filed subsequent to Confirmation.

**C.      No Distribution on Disputed Claims**

Notwithstanding any provision of the Plan specifying the time for payment of distributions to Holders of Claims, no payment or distribution shall be made to the Holder of a Disputed Claim until the time such Claim has been determined to be an Allowed Claim.  Notwithstanding the existence of a Disputed Claim in a Class to which a distribution under this Plan is due, such distribution to other Holders in such Class shall not be affected by any delay in the resolution of the Disputed Claim. Upon the allowance of any Disputed Claim, the Holder shall be paid the amount that such Holder would have received had its Claim been an Allowed Claim on the Effective Date.

## ARTICLE VI.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.      Assumption of Certain Contracts and Leases**

The Plan constitutes a motion to assume each of the executory contracts and unexpired leases set forth in Exhibit C pursuant to Bankruptcy Code § 365(a) and (f) (collectively, the "Assumed Leases").  The Debtor does not believe any cure will be due in connection with the assumption of the remaining Begich Tower Leases as set forth in Exhibit K to the Plan, and the Plan does not provide for any such cure.  The Alaska Railroad Corporation lease will be cured and assumed in connection with the closing of the Whittier Sale, as set forth in the Whittier sale motion (Docket No. 285). The estimated cure amount of the Shen lease is set forth in Exhibit K to the Plan. Notwithstanding the foregoing, any party to an Assumed Contract who asserts that cure shall be due upon assumption of their contract or lease must file a timely objection to Confirmation of the Plan setting forth an

DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION– Page 25

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

itemized amount such party asserts is due no later than the date fixed for objecting to Confirmation of the Plan, and serve it on (1) counsel for the Debtors; (2) the United States Trustee; and (3) any party having appeared in the Bankruptcy Case. Any counterparty that fails to timely file and/or serve an objection to the proposed assumption of their contract or lease shall be deemed to have consented to assumption without payment of any cure, and any Claim for cure shall be deemed waived and released.

## B.    Rejection of Executory Contracts and Unexpired Leases.

The Plan constitutes a motion by the Debtors to reject all executory contracts and unexpired leases of the Debtors, other than the Assumed Contracts as of the Effective Date that are subject to rejection under Bankruptcy Code § 365. Any Claim arising from the rejection of an executory contract or unexpired lease is a Class 10, Class 11, Class 12, Class 13, Class 14, or Class 15 Claim depending on the identity of the Debtor that is the counterparty to such rejected contract or lease, but only to the extent it is an Allowed Claim. Any Entity holding a Claim based upon the rejection of an executory contract or unexpired lease pursuant to this Section VI.B must file a Proof of Claim with the Bankruptcy Court within thirty (30) days after the Effective Date. The failure of any such Entity to file a Proof of Claim within the specified time period will result in the disallowance of such Claim.

## ARTICLE VII.
## MEANS FOR EXECUTION OF THE PLAN

## A.    Overview

As detailed herein, all Allowed Claims will be paid in full from a combination of the closing of the Whittier Sale (which the Debtors anticipate will occur prior to the Effective Date), and Net Proceeds from sales of the Salacia Plant, the Salacia Equipment and the Modys Building. As of the date hereof, the Whittier assets, the Salacia assets and the Modys Building are each being actively marketed for sale. The Debtors and the Post-Effective Debtors shall continue to work with their marketing professionals seeking the best return for such assets that is reasonably attainable in the time provided under the Plan.

Multiple liens encumber the Whittier Property and the Salacia Plant, and the Plan assumes that the Net Proceeds from the sale of the relevant assets will be sufficient to satisfy in full all Allowed Claims secured by such assets, regardless of the relative priority of the liens securing such Allowed Claims. However, the Plan also provides for the event that Net Proceeds are insufficient to pay all secured claims in full. Nevertheless, the Debtors anticipate that there will be sufficient Net Proceeds to pay all Unsecured Claims and Administrative Expense Claims after payment of all Secured Claims.

## B.    Continued Operations

Subject to the rights and duties of the Plan Administrator, the Post-Effective Date Debtors shall continue to own and manage their Assets and business affairs in their sole discretion and in the ordinary course of business without further notice or order of the Court, so long as it is not inconsistent with the terms of the Plan or the Confirmation Order. So long as it complies with or is

DEBTORS' FOURTH AMENDED JOINT PLAN OF REORGANIZATION– Page 26

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

not contrary to other provisions of this Plan and the Confirmation Order, the Post-Effective Date Debtors shall have full discretion to take any action in connection with all aspects of the operation and maintenance of the Property.

## C.    Plan Support Agreement

The Debtors, Cathay Bank and Cathay Holdings previously entered into the Plan Support Agreement, which governs the consensual treatment of the Allowed Claims of Cathay Bank and Cathay Holdings under the Plan.  The Court approved the Plan Support Agreement by order entered April 2, 2025 [Docket No. 326], thereby making it binding on each of the parties and eliminating the need for a contested hearing on Confirmation in connection with the treatment of the Allowed Claims of Cathay Bank and Cathay Holdings and the other terms and conditions set forth in the Plan Support Agreement.

## D.    Sales of Assets

As of the date hereof and with the assistance of Hilco, the Debtors had already commenced marketing efforts for sales of Whittier assets and the Salacia Plant and Salacia Equipment, and a sale of Whittier assets was pending.  In addition, the Debtors have listed the Modys Building for sale with the assistance of Kidder Mathews.  In general, the Post-Effective Date Debtors shall continue such marketing and sale efforts until such assets are sold in an amount necessary to pay all creditors in full. Subject to Sections VII.D.2 and D.3 below, the Post-Effective Date Debtors shall remain in control of the marketing process for Whittier assets, Salacia assets and the Modys Building seeking to achieve the best return for such assets that is reasonably attainable within the time limitations imposed by the Plan.   In the event that a Salacia Sale would result in Net Proceeds less than the amount necessary to pay each of the Allowed Claims in Class 1, Class 2, Class 3, Class 4, Class 5 and 8 in full, then the Post-Effective Date Debtors or Plan Administrator (as the case may be) shall file and serve on all Holders of Allowed Claims against Salacia a motion with the Bankruptcy Court to approve such sale, and obtain approval of the sale from the Bankruptcy Court prior to closing such sale.

## E.    Appointment of Plan Administrator

Upon the Effective Date, the appointment of the Plan Administrator shall become effective. The Plan Administrator shall be compensated at its usual and customary hourly rates and shall staff all activities and perform its duties and obligations in an efficient manner so as to minimize the fees and costs incurred thereby.  The duties of the Plan Administrator shall be as follows:

1.    Sale of Silver Wave Assets Upon Effective Date:  Upon the Effective Date, the Plan Administrator shall immediately use its best efforts to (i) collect the SW Receivables, or compromise the SW Receivables subject to Cathay Bank's approval; and (ii) if the Vessels have not been sold or are not then part of a pending sale, sell any remaining Vessels through a broker that Cathay Bank approves. Silver Wave's officers, directors, and employees shall cooperate with the Plan Administrator and provide information and documentation to the Plan Administrator as needed.  All Net Proceeds from collection of SW Receivables and (if applicable) sale of Vessels, shall be distributed first, to the Plan Administrator in payment of its fees and costs incurred thereby; second, to

DEBTORS' FOURTH AMENDED JOINT PLAN OF REORGANIZATION– Page 27

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

the extent there are sale proceeds from the sale of the LADY ANGELA, to the Holder of the Class 9 Allowed Claim; and <u>third</u>, if both a Salacia Sale and a sale of the Modys Building have not occurred, the Plan Administrator shall hold such remaining Net Sale Proceeds until both sales shall have closed, and promptly thereafter distribute the remaining Net Proceeds (x) to the Holder of the Class 1 Allowed Claim if any amount then remains owing, (y) to Holders of Class 10 Allowed Claims if any amounts then remain owing (and on a Pro Rata basis if applicable), and (z) to Class 22.

2.    <u>Sale of Whittier Assets Upon Effective Date</u>:  If the sale of Whittier assets that (as of the date hereof) are the subject of the pending sale to The Alaska Wild Seafoods LLC[1] has not closed by the Effective Date, then the Plan Administrator shall promptly liquidate such assets, with the assistance of Hilco, and any other remaining Whittier assets.

3.    <u>Sale of Salacia Assets Upon Deadline</u>:  If the Salacia Plant or Salacia Equipment has not sold by October 15, 2025, the Plan Administrator shall automatically assume sole responsibility for promptly liquidating any portion of the Salacia Plant or Salacia Equipment that has not sold by such date, with the assistance of Hilco, including exclusive discretion to accept offers and sell Salacia assets as a whole or piecemeal.

4.    <u>Sale of Salacia Assets Upon Court Order</u>:  Cathay Bank and the Committee shall each have the right to move the Court to have the Plan Administrator assume responsibility for the Salacia Plant and Salacia Equipment marketing and sale process earlier than October 15, 2025, for cause; provided, however, any such motion must provide at least 10 days for the Debtors to respond, unless the Bankruptcy Court orders that exigent circumstances warrant a shorter response period, and may only be granted after such notice and a hearing.

5.    <u>Plan Administrator Salacia Sale Strike Prices</u>. If the Salacia Plant has not sold by October 15, 2025, the Plan Administrator must accept and close (i) any cash offer at $30 million or greater; and (ii) any cash offer for Salacia's undeveloped land at $10.4 million or greater.

6.    <u>Sale of Modys Building Upon Deadline</u>:  If the Modys Building remains unsold as of November 30, 2025, and any portion of the Class 1 Claim or Class 7 Claim remains unpaid, then the Plan Administrator shall automatically assume responsibility for promptly liquidating the Modys Building with the assistance of a broker approved by Cathay Bank.

7.    <u>Sale of Remaining Assets Upon Deadline</u>:  If any portion of the Class 1 Allowed Claim remains unpaid 365 days following the Effective Date, and any of the Debtors' Assets remain unliquidated ("<u>Remaining Assets</u>"), then the Plan Administrator shall use its best efforts to (i) liquidate any Remaining Assets; (ii) collect any remaining receivables of any of the Debtors, and (iii) compromise any remaining receivables of any of the Debtors subject to Cathay Bank's approval of any compromise.

---

[1] The Alaska Wild Seafoods LLC is a successor in interest to the rights of CMCC under the Purchase and Sale Agreement for the Whittier Sale.

DEBTORS' FOURTH AMENDED JOINT PLAN OF REORGANIZATION– Page 28

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

8. <u>Protective Advances</u>: Cathay Bank may make discretionary advances to the Debtors through the Plan Administrator for the purpose of protecting, preserving, and liquidating the Whittier Plant, Whittier Equipment, Salacia Plant, Salacia Equipment, and Modys Building ("<u>Protective Advances</u>") subject to the following terms and conditions:

a. <u>Reserved Sale Proceeds</u>. From the Cathay-Whittier Proceeds, Cathay Bank may carveout such funds ("<u>Reserved Sale Proceeds</u>") and advance Reserved Sale Proceeds in Cathay's sole discretion to the Plan Administrator as are deemed necessary by the Plan Administrator for Protective Advances. Any Reserved Sale Proceeds carved out and held by Cathay Bank shall not reduce the Class 1 Allowed Claim; provided that the balance of Reserved Sale Proceeds shall not exceed $500,000.

b. <u>Protective Advances Administration</u>. Upon the Effective Date, the Plan Administrator shall have sole authority to administer the Debtors' cash and payment of expenses. The Plan Administrator may request from Cathay Bank (i) authority for the Debtors to use cash collateral on hand, or (ii) Protective Advances.

c. <u>Protective Advances Budget</u>. If the Plan Administrator requests authority for the Debtors to use cash collateral on hand or Protective Advances, then the Plan Administrator shall propose a weekly budget forecast (each a "<u>Budget</u>") to be approved by Cathay Bank in Cathay Bank's sole discretion. The Debtors' actual expenses may not exceed any line item in an approved Budget by more than 10% without the written consent of Cathay Bank, except for: (i) life threatening or other health or safety issues, or (ii) minor repairs less than $5,000. At the request of Cathay Bank, the Plan Administrator shall provide Cathay Bank with an actual-to-Budget variance report on a weekly basis.

d. <u>Interest and Advance Liens</u>. Any and all Protective Advances by Cathay Bank to the Plan Administrator (other than Reserved Sale Proceeds) shall (i) accrue interest at the rate of 15% per annum; (ii) be charged against and paid out of the Whittier and Salacia estates; (iii) be deemed protective advances secured by all of Cathay's collateral under Cathay's security instruments, Court orders, and the Plan; and (iv) be entitled to a first and paramount lien against all of Whittier's and Salacia's assets (collectively, "<u>Advance Liens</u>"). The Plan and confirmation order shall be sufficient for, and conclusive evidence of, the priority, perfection, and validity of the Advance Liens, and Cathay Bank shall not be required to file additional deeds of trust, or file or serve UCC financing statements, notices of lien or similar instruments, or take any other action in order to preserve the priority, perfection, and validity of the Advance Liens.

**F.    Sale Transparency**

The Plan requires that the Debtors market for sale the Salacia Plant, the Salacia Equipment and the Modys Building, with a sale of Whittier assets being already pending as of the date hereof. In connection with such marketing activity, the Debtors shall (i) cause Hilco or any other applicable brokers to provide Cathay Bank, Harris Pacific, the Committee, and the Plan Administrator with (x) a copy of all marketing materials within three Business Days of the commencement of marketing; and (y) and copies of all Indications of Interest, Letters of Intent, Asset Purchase Agreements, offers,

DEBTORS' FOURTH AMENDED JOINT PLAN OF REORGANIZATION– Page 29

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

proposals and any and all other written expressions of interest from potential buyers within two business days of their receipt (in each case subject to an NDA or similar agreement); (ii) conduct weekly group calls among the Debtors, Hilco, Cathay Bank, Harris Pacific, the Committee, and the Plan Administrator as to the status of the marketing and sales processes, until the Salacia Plant and Salacia Equipment is sold; and (iii) authorize Cathay Bank to communicate directly with Hilco and request information from Hilco throughout the marketing and sale process. Likewise, the Plan Administrator and any applicable brokers shall provide Cathay Bank with similar forms of transparency regarding the Vessels and SW Receivables until those assets are sold or the Class 1 Allowed Claim is paid in full.

**G.    Distributions Under the Plan**

**1.    Sources of Funds for Distribution.**

a.    <u>Whittier Sale</u>.  The Net Proceeds[2] from the Whittier Sale shall be distributed as follows:

<u>First</u>, Hilco's contractual commission and fees associated with such sale shall be paid in full, and $200,000 shall be reserved and held by the Plan Administrator for payment of state and local property and transfer taxes. For avoidance of doubt, and notwithstanding this Section VII(G)(1)(a), Hilco's contractual commission and fees resulting from any Whittier Sale, a Salacia Sale, or others sales of assets that would result in an amount owing to Hilco, shall be applied, Pro Rata, among the sum of sale proceeds generated from the proceeds of the Whittier Sale and the Salacia Plant and any other potential asset sale. To the extent that the Whittier Sale occurs prior to the sale of the Salacia Plant, such that (i) Hilco's contractual commission and fees paid from the proceeds of the Whittier Sale exceed the Pro Rata allocation as set forth herein, and (ii) all Allowed Claims in Class 10 have not been paid in full, Whittier shall receive a distribution from the Net Proceeds of the Salacia Sale of the lesser of (x) the amount necessary to such that Salacia has paid it Pro Rata share of Hilco's total commission, or (ii) the amount necessary to pay all Allowed Claims in Class 10 in full.

<u>Second</u>, the Holder of the Class 6 Allowed Claim shall be paid in full;

<u>Third</u>, the Holder of the Class 1 Allowed Claim shall receive Net Proceeds in the amount of $1,864,923.98 in full satisfaction of the Cathay–Whittier Real Property Lien;

<u>Fourth</u>, the Holder of the Class 1 Allowed Claim shall receive all Net Proceeds attributed to (i) the value of the Cathay-Whittier Equipment Collateral, and (ii) if sold in connection with the Whittier Sale, the value of the Vessels, in both cases as set forth in the purchase agreement that memorializes the terms of the Whittier Sale;

---

[2] Prior to the distribution of any proceeds from the Whittier Sale, estimated Quarterly Fees accruing from the Whittier Sale shall be escrowed and timely paid when due.

DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION– Page 30

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

Fifth, any remaining amount of Net Proceeds shall be distributed to Allowed Claims in Class 10 on the earlier of (a) the distribution of proceeds from a sale of the Salacia Plant or (b) 270 days after the Effective Date; and the Holder of the Class 1 Claim shall be included in such distribution on a pro rata basis based on the then-outstanding balance of the Class 1 Allowed Claim

b.   Salacia Sale: The Net Proceeds[3] from any Salacia Sale shall be distributed as follows:

First, Subject to the requirements of the portion of Section VII(G)(1)(a) related to distribution of proceeds of the Whittier Sale, Hilco's contractual commission and fees associated with such sale shall be paid in full;

Second, the full amount of the Protective Advances shall be paid in full;

Third, the reasonable fees and costs of the Plan Administrator shall be paid in full;

Fourth, the Holder of the Class 1 Allowed Claim shall receive all Net Proceeds attributed to the value of the Salacia Equipment;

Fifth, Notwithstanding any other provision in the Plan, all rights are reserved among all holders of liens and security interests relating to the Salacia Plant, Salacia Sale and Net Proceeds with regard to lien priority and validity.  In the event that there are sufficient Net Proceeds to do so, each of the Class 1 Allowed Claim, the Class 2 Allowed Claim, the Class 3 Allowed Claim the Class 4 Allowed Claim and the Class 5 Allowed Claim shall be paid in full.  However, because the Plan does not resolve possible disputes as to the relative priority of the Claims in such Classes, then if there are insufficient Net Proceeds to pay each such Claim in full, then all Net Proceeds (the "Lien Priority Reserve") shall be reserved pending resolution of such priority disputes, and the liens and security interests of the Holder of each such Claim shall attach to the funds in the Lien Priority Reserve in the same amount, priority and enforceability as presently exist in the Salacia Plant; and the Post-Effective Date Debtors and the Holders of Claims in Classes 1, 2, 3, 4 and 5 (the "Lien Holders") shall promptly resolve the priority disputes, and the resulting distribution of the funds in the Lien Priority Reserve, by agreement or order of the Court.  For the avoidance of doubt, payments from the Lien Priority Reserve may only be made in the order of priority to which the Post-Effective Date Debtors and each of the Lien Holders agree or the Court establishes, and (unless otherwise agreed) no payment shall be made from the Lien Priority Reserve to any Lien Holder unless all Allowed Claims of Lien Holders having a senior priority to such Lien Holder have been paid in full;

---

[3] Prior to the distribution of any proceeds from any Salacia Financial Transaction, estimated Quarterly Fees accruing from any Salacia Financial Transaction shall be escrowed and timely paid when due.

DEBTORS' FOURTH AMENDED JOINT PLAN OF REORGANIZATION– Page 31

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

Sixth, the full amount of the Class 5 Allowed Claim shall be paid in full, which funds shall be distributed on a Pro Rata basis to the Holders of Class 10 Allowed Claims, unless all Allowed Claims in Class 10 have been previously paid in full;

Seventh, the Holder of the Class 8 Allowed Claim shall be paid the Class 8 Minimum payment, or in full to the extent funds allocated to the Tanks are available;

Eighth, the Holders of Class 12 Allowed Claims shall be paid in full;

Ninth, the Holders of Allowed Claims in Class 11 and 14 shall be paid in full, provided that, if there are insufficient remaining Net Proceeds to pay each such Allowed Claim in full, then the Holders of Allowed Claims in Class 11 and 14 shall be paid on a Pro Rata basis to the extent of such remaining Net Proceeds; and

Tenth, any remaining Net Proceeds shall be distributed to Class 20.

c.    Sale of Modys Building: The Net Proceeds[4] from a sale of the Modys Building, excluding payments for taxes and other transfer taxes, shall be distributed as follows:

First, the Class 7 Allowed Claim shall be paid in full and, if a Salacia Sale has not occurred, the balance of the Net Proceeds shall be held pending the closing of a Salacia Sale;

Second, if a Salacia Sale has occurred, any remaining balance of the Class 1 Allowed Claim shall be paid in full;

Third, all Allowed Claims of Professional Persons shall be paid in full; and

Fourth, any remaining Net Proceeds shall be distributed to payments for taxes and other transfer taxes, and to Class 19.

**2.    Distributions Free and Clear**

All distributions of Net Proceeds from the Whittier Sale and any Salacia Sale, and the Modys Building shall be free and clear of any Liens, interests or encumbrances of any Person.

**3.    Disbursing Agent.**

The Plan Administrator shall act as the Disbursing Agent.

**H.    Assignment and Disposition of Causes of Action and Avoidance Claims**

---

[4] Prior to the distribution of any proceeds from the sale of the Modys Building, estimated Quarterly Fees accruing from the sale of the Modys Building shall be escrowed and timely paid when due.

DEBTORS' FOURTH AMENDED JOINT PLAN OF REORGANIZATION– Page 32

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

On the Effective Date, the Debtors shall be deemed to have assigned to the Post-Effective Date Debtors, and the Post-Effective Date Debtors shall be deemed to have acquired and become the successor to, (i) all Avoidance Actions, and (ii) all claims and causes of action of the Debtors for relief against any other party other than Avoidance Actions (collectively, the "Causes of Action").  Pursuant to Bankruptcy Code section 546(a), the deadline for the Debtors to pursue Causes of Action is two years following the Petition Date.  Because the Plan provides for full payment of all Allowed Claims without the need for any recoveries on Causes of Action, the Post-Effective Date Debtors shall take no action on any Causes of Action unless (i) the Plan Deadline has passed, and (ii) there exists an Allowed Claims that have not been paid in full.  In that event, after evaluating the risks and expense of pursuing such Causes of Action the Post-Effective Date Debtors, in the exercise of ordinary business judgment, shall investigate, pursue, prosecute and/or settle such Causes of Action.  All Net Proceeds from such Causes of Action shall be distributed to the Holders of Allowed Claims that have not been satisfied in full on a Pro Rata basis.

## I.        Maintenance of Insurance

The Plan Administrator shall continue to maintain insurance coverage for the Post- Effective Date Debtors in the same or more favorable amounts and type as the Debtors held upon Confirmation.

## J.        Cancellation of Indebtedness

On the Effective Date, except for (i) the purpose of evidencing a right to distribution under this Plan, and (ii) the preservation of the Liens and security interests as set forth in Articles IV.B. of this Plan, any notes or other instruments or documents evidencing or creating any indebtedness or obligations of, or interest in, the Debtor, except assumed executory contracts, and/or such notes or other instruments evidencing indebtedness or obligations of the Debtor that are unimpaired, reinstated, or amended and restated under this Plan, shall be cancelled and terminated and of no further force or effect.

## K.        Continued Corporate Existence and Vesting of Assets in the Post-Effective Date Debtors

On the Effective Date, each of the Debtors shall continue to exist in accordance with the laws of the jurisdiction in which it is formed and pursuant to its Amended and Restated Operating Agreement in effect prior to the Effective Date, except to the extent such Operating Agreement is amended under the Plan.  Except as otherwise provided in the Plan, on and after the Effective Date, each item of property of each Debtor, including all claims, rights and causes of action and any property acquired by the Debtor shall vest in the relevant Debtor free and clear of all Claims, Liens, charges, other encumbrances and interests except Liens, charges and other encumbrances which the Debtor is required to grant or continue pursuant to Article IV of the Plan.  On and after the Effective Date, the Post-Effective Date Debtors may operate their businesses and may use, acquire and dispose of property without supervision of or approval by the Bankruptcy Court in the exercise of ordinary business judgment.

## L.        Dissolution of the Committee.

DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION– Page 33

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

As of the Effective Date, the Committee shall be dissolved.  Not later thirty (30) days following the Effective Date, any Professional Persons that were employed by the Whittier Committee shall file a final application for approval of compensation and reimbursement of expenses and note such application for hearing.  Failure to file such an application by such deadline shall be grounds for disallowance of any amounts owed to such Professional Persons.

# ARTICLE VIII.
# MISCELLANEOUS PROVISIONS

## A.  Unnegotiated Distribution Checks

Pursuant to § 347 of the Bankruptcy Code, ninety (90) days after any distribution to any creditor by the Post-Effective Date Debtors provided for herein, the Post-Effective Date Debtors shall stop payment on any check on such distribution remaining unpaid to a Holder of an Allowed Claim and such funds (the "Unclaimed Funds") shall be returned to the Post-Effective Date Debtors.  From and after the date the Post-Effective Date Debtors stops payment on any distribution check pursuant to this paragraph, the Holder of the Allowed Claim on account of which such check was issued shall be entitled to receive no further distributions on account of his claim and such holder's Allowed Claim shall thereupon be deemed satisfied in full.  If for any reason the Post-Effective Date Debtors is no longer in existence when Unclaimed Funds become available, such funds shall be donated to Consumer Education and Training Services, a 501(c)(3) non-profit organization that empowers people to improve their financial health by developing educational and legal resources to help them prevent or overcome financial challenges.

## B.  Mailing List; Returned Distribution Checks

The official listing of Creditor identities and mailing addresses is maintained by the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the Eastern District of Washington (the "Official Mailing List").  It shall be the obligation of each Creditor and/or party in interest to assure that the Official Mailing List is current and accurate as to each such person or entity.  In the event that a distribution check, that has been properly posted to the Creditor's address as set forth in the Official Mailing List, is returned as undeliverable by the United States Postal Service, the Post-Effective Date Debtors shall be authorized, but not required, to void such check with the applicable funds becoming subject to further distribution pursuant to this Plan, and the claim of such creditor being deemed satisfied in full.

## C.  Administrative Claim Bar Date

The deadline for submission of all Claims entitled to priority pursuant to § 503(b) of the Bankruptcy Code incurred prior to Confirmation, with the exception of fees and costs of Professional Persons, shall be thirty (30) days following the Effective Date.  Failure to file a Claim by this date shall conclusively bar the claimant from asserting his Claim, which Claim shall be forever discharged.

DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION– Page 34

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

**D.   Payments Shall Be Timely**

The Post-Effective Date Debtors shall timely make all payments required under this Plan. Without limiting the generality of the foregoing, the Post-Effective Date Debtors shall be responsible for the timely payment of quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6) following Confirmation of the Plan until the case is closed.  In particular, the Post-Effective Date Debtors shall pay the appropriate fee pursuant to 28 U.S.C. § 1930(a)(6) in connection with any assets sales that close prior to the closing of the Bankruptcy Cases.  After Confirmation of the Plan, the Post-Effective Date Debtors shall file with the Court quarterly a financial report for each quarter (or portion thereof) the case remains open.  The financial report shall include a statement of all disbursements made during the course of the relevant quarter, whether or not pursuant to the Plan.

**E.   Employment of Professional Persons**

The Post-Effective Date Debtors shall be authorized to employ and compensate Professionals Persons following Confirmation upon such terms as the Post-Effective Date Debtors deems reasonable and appropriate without further notice or order of the Court.

**F.   Potential Clawbacks**

During the Bankruptcy Case and prior to Confirmation, the Debtors used funds from one Debtor to pay the expenses of other Debtors.  As a result, there are claims among the Debtors that did not exist as of the Petition Date, and the Debtors' joint representation by a single law firm may have given rise to conflicts of interest (which the Debtors do not concede).  Funds from the Whittier estate were the primary funds used to pay expenses, and the Whittier estate received an adequate protection lien against the Salacia Plant for $2,100,000 in connection with those advances.  The unsecured creditors of the Whittier estate should be fully compensated upon the sale of the Salacia Plant.

No amounts have been paid to Debtors' counsel as of the date hereof since the Petition Date. However, in the event that (i) all creditors are not paid in full following the liquidation of all assets provided for under the Plan, and (ii) any fees and costs are paid to Professional Persons, any party in interest shall have the right to bring a motion before the Court seeking appropriate relief, including the disgorgement of amounts paid to Professional Persons.

**G.   Treatment of Negotiable Instruments.**

Any negotiable instrument held by the Holder of a Claim shall be deemed exchanged, canceled or satisfied, as the case may be, on the Effective Date.

**H.   Exculpation.**

To the maximum extent permitted by applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, remedy, loss, and liability for any conduct occurring on or after the Petition Date through and including the Effective Date in connection with or

DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION– Page 35

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

arising out of the filing and administration of the Chapter 11 Cases, the postpetition marketing and sale process, the purchase, sale, or rescission of the purchase or sale of any security or Asset of the Debtors; the negotiation and pursuit of the Cash Collateral Orders, the Disclosure Statement, including the formulation, negotiation, preparation, dissemination, implementation, administration, confirmation, and consummation thereof, this Plan, or the solicitation of votes for, or confirmation of, this Plan; the funding or consummation of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; or the transactions in furtherance of any of the foregoing; except for acts or omissions of an Exculpated Party that constitute gross negligence, fraud, or willful misconduct, as determined by a Final Order.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

## I.   Event of Default; Consequence of Default

An event of default shall occur if the Post-Effective Date Debtors fails to fulfill any material term of the Plan, including any payment due under the Plan.  In such an event, the party alleging such default shall provide written notice of the alleged default to the Post-Effective Date Debtors and its attorneys (the "Default Notice"), at each of the following addresses, which shall be deemed received (i) if by Federal Express or expedited delivery service, the confirmed date of delivery; (ii) if by electronic mail, the date of the transmission of such electronic mail; and (iii) if by U.S. Mail, the third Business Day thereafter:

> Marine Fishing International, Inc.
> Attn: Aleksey Kozlov
> 3 Lake Bellevue Drive, Suite 200
> Bellevue, WA 98005
> alekseyk@marinefishingint.com

> And:
> James L. Day
> Thomas A. Buford
> Lesley D. Bohleber
> Bush Kornfeld LLP
> 601 Union Street, Suite 5000
> Seattle, WA  98101-2373
> Phone: 206-292-2110
> Fax: 206-292-2104
> Emails: jday@bskd.com and tbuford@bskd.com and lbohleber@bskd.com

If, after thirty (30) days following the Post-Effective Date Debtors' and their counsel's receipt of the Default Notice, the Post-Effective Date Debtors and such party have been unable to resolve, or the Post-Effective Date Debtors has been unable to cure, the asserted default, such party may (proceed with any remedies available to it under applicable law, provided that nothing herein shall limit or affect the Post-Effective Date Debtors' right to seek appropriate relief from any court of competent jurisdiction.

DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION– Page 36

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

**J.**     **No Tax on Sale.**

Pursuant to Bankruptcy Code section 1146(a) and WAC 458-61A-207, in the event that the Salacia Sale results in a sale of the real property and improvements comprising the Salacia Plant following Confirmation, such sale shall not be subject to any real estate excise tax or any other tax within the scope of section 1146(a).

## ARTICLE IX.
## PLAN IS BINDING

Except as specifically provided in this Plan or in the Confirmation Order:

1.     The distributions made to the various Classes of Creditors as provided for in this Plan shall be in full and complete satisfaction of their Allowed Claims and Allowed Interests.  The terms of this Plan and the Confirmation Order shall be binding on all parties regardless of whether or not (a) the party's Claim was scheduled, (b) a Proof of Claim was filed, (c) the Claim is an Allowed Claim, (d) the party's Claim was in a Class that was impaired, or (e) the Holder thereof voted to accept the Plan.

## ARTICLE X.
## MODIFICATIONS OF THE PLAN

Pursuant to the provisions of § 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtor reserves the right to modify or alter the provisions of the Plan at any time prior to or subsequent to Confirmation.

## ARTICLE XI.
## RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT

Notwithstanding Confirmation, until entry of a final decree, the Bankruptcy Court shall retain jurisdiction to ensure that the purposes and intent of the Plan are carried out.  Without limiting the generality of the foregoing, the Court shall retain jurisdiction for the following purposes:

1.     Fixing and allowing any Claim as a cost and expense of the administration of the Bankruptcy Case;

2.     Re-examining any Claim that has been allowed;

3.     Hearing and determining objections to Claims.  The failure of the Debtor to object to, or to examine any Claim for the purpose of voting, shall not be deemed to be a waiver of the Debtor's right to object to, or re-examine any claim in whole or in part;

DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION– Page 37

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

4.      Hearing and determining any action brought by the Post-Effective Date Debtors on behalf of the Estate seeking to avoid any transfer of an interest of the Debtor in property, or any obligation incurred by Debtor, that is avoidable pursuant to applicable law;

5.      Hearing and determining all causes of action, controversies, disputes, or conflicts between or among the Debtor, and any other party, including those that were pending prior to Confirmation;

6.      Hearing and determining all questions and disputes regarding title to the property of the Estate;

7.      Correcting any defect, curing any omission, or reconciling any inconsistency in the Plan or the Order of Confirmation as may be necessary to carry out the purpose and intent of the Plan;

8.      Issuing any order necessary to implement the Plan or Order of Confirmation, including, without limitation, such declaratory and injunctive orders as are appropriate to protect the Debtor, the Estate and the Post-Effective Date Debtors from actions of Creditors, or other parties-in-interest;

9.      Hearing and determining any dispute relating to the terms or implementation of the Plan or Order of Confirmation, or to the rights or obligations of any parties-in-interest with respect thereto; and

10.     The modification of the Plan after Confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code in accordance with Article XI above.

## ARTICLE XII.
## ENTRY OF CLOSING ORDER BY THE BANKRUPTCY COURT

The Bankruptcy Court shall enter an order concluding and terminating the Reorganization Case upon application of the Post-Effective Date Debtors.

*Signatures on following page*

DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION– Page 38

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

DATED this 8th day of May, 2025.

**MARINE FISHING INTERNATIONAL, LLC**



By: Aleksey Kozlov, Authorized Person

**MARINE FISHING INTERNATIONAL, INC.**

By: Aleksey Kozlov, Authorized Person

**WHITTIER SEAFOOD, LLC**

By: Aleksey Kozlov, Authorized Person

**MODYS, LLC**

By: Aleksey Kozlov, Authorized Person

**SALACIA, LLC**

By: Aleksey Kozlov, Authorized Person

**SILVER WAVE, LLC**

By: Aleksey Kozlov, Authorized Person

DEBTORS' FOURTH AMENDED JOINT PLAN OF
REORGANIZATION– Page 39

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2837 ie08fk011y

# EXHIBIT A



EXHIBIT A

## MFI, Inc. (Assets)

| | |
|---|---|
| 19250 - Due To/From Whittier Seafood | 23,776,523.48 |
| 19260 - Due To/From MFI LLC | 558,579.76 |
| 19270 - Due To/From Silver Wave | 3,621,485.54 |
| 19280 - Due To/From Salacia | 63,806,648.29 |
| 19285 - Due to/From Modys | (229,997.19) |
| **Total Intercompany Assets** | **91,533,239.88** |

## MFI LLC (Assets and Liabilities)

| | |
|---|---|
| 19250 - Due To/From Whittier Seafood | $334,937.69 |
| 19255 - Due To/From MFI Inc | $558,579.76 |
| 19280 - Due To/From Salacia | ($876,059.45) |
| 19285 - Due to/From Modys | $131,547.53 |
| **Total Intercompany Liabilities** | **($149,005.53)** |

## Modys (Assets)

| | |
|---|---|
| 19255 - Due To/From MFI Inc | $229,997.19 |
| 19260 - Due To/From MFI LLC | $131,547.53 |
| **Total Intercompany Assets** | **$361,544.72** |

## Salacia (Liabilities)

| | |
|---|---|
| 19250 - Due To/From Whittier Seafood | 696,036.08 |
| 19255 - Due To/From MFI Inc | 63,806,648.29 |
| 19260 - Due To/From MFI LLC | 876,059.45 |
| **Total Intercompany Liabilities** | **(65,378,743.82)** |

## Whittier (Liabilities)

| | |
|---|---|
| 19255 - Due To/From MFI Inc | 23,776,523.48 |
| 19260 - Due To/From MFI LLC | (334,937.69) |
| 19270 - Due To/From Silver Wave | (52,475.00) |
| 19280 - Due To/From Salacia | (696,036.08) |
| **Total Intercompany Liabilities** | **(22,693,074.71)** |

## Silver Wave (Liabilities)

| | |
|---|---|
| 19250 - Due To/From Whittier Seafood | 52,475.00 |
| 19255 - Due To/From MFI Inc | 3,621,485.54 |
| **Total Intercompany Liabilities** | **(3,673,960.54)** | - |

# EXHIBIT B

## PLAN SUPPORT AGREEMENT

This Plan Support Agreement (this "Agreement") dated as of March __, 2025 is entered into by and among (a) Marine Fishing International, Inc. ("MFI Inc."), Marine Fishing International, LLC ("MFI LLC"), Modys, LLC ("Modys"); Salacia, LLC ("Salacia"); Silver Wave, LLC ("Silver Wave"); and Whittier Seafood, LLC ("Whittier") (collectively, the "Debtors"); and (b) Cathay Bank ("Cathay") and Cathay Holdings, LLC ("Holdings") (collectively, the "Lenders"). Where appropriate, the Debtors and the Lenders may each be referred to as a "Party," or together as the "Parties."

## RECITALS

A.    On August 19, 2024 (the "Petition Date"), the Debtors each filed voluntary petitions of relief pursuant to Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Alaska (the "Bankruptcy Court"), jointly-administered under lead case no. 24-00139 (collectively, the "Chapter 11 Case").

B.    As of the Petition Date, the Debtors are each indebted to Cathay in the amount of $20,497,257.86, pursuant to certain loan documents whereby (i) Cathay made available to MFI Inc. certain credit facilities; and (ii) MFI LLC, Modys, Salacia, Silver Wave, and Whittier absolutely and unconditionally guaranteed payment and performance of the loan obligations, among other guarantors (with regard to each of the Debtors, "Cathay's Claim").

C.    Salacia's bankruptcy estate's assets include without limitation: An incomplete real estate development project intended for use as a multi-food processing plant and cold storage facility in Marysville, Washington, and related equipment and personal property (collectively, the "Salacia Plant"). Cathay's Claim against Salacia is secured by the Salacia Plant.

D.    Whittier's bankruptcy estate's assets include without limitation: a seafood processing facility in Whittier, Alaska and related employee housing (collectively, the "Whittier Plant"), certain equipment and other personal property assets (excluding the Whittier Plant, the "Whittier Equipment"). Cathay's Claim against Whittier is secured by (i) all of the Whittier Equipment, and (ii) a $1,864,923.98 lien on the Whittier Plant.

E.    Modys' bankruptcy estate's assets include without limitation: a commercial building in Bellevue, Washington (the "Modys Building") that it leases to MFI Inc. and MFI LLC, and various personal property, primarily consisting of cash (excluding the Modys Building, the "Modys Assets"). Cathay's Claim against Modys is secured by the Modys Assets.

F.    Effective as of February 7, 2025, Holdings acquired the claim of Pacific Premier Bank against Modys, in the approximate amount of $744,868.45 ("Holdings' Claim"). Holdings' Claim is secured by the Modys Building.

G.    Silver Wave's bankruptcy estate's assets include without limitation: three vessels that it chartered to Whittier, but have been docked since October 2023 (the "Vessels"), and approximately $1.8 million of receivables (the "SW Receivables"), the collectability of which is

Plan Support Agreement - 1

2837 ic31jk0132

unknown. Cathay's Claim against Silver Wave is secured by one of the Vessels, and the SW Receivables.

H.      MFI Inc.'s bankruptcy estate's assets include without limitation:  various personal property, primarily consisting of cash and accounts receivable (the "MFI Inc. Assets").  Cathay's Claim against MFI Inc. is secured by the MFI Inc. Assets.

I.      MFI LLC's estate's assets include without limitation:  various personal property, primarily consisting of cash, accounts receivable, and office equipment (the "MFI LLC Assets"), and an office lease. Cathay's Claim against MFI LLC is secured by the MFI LLC Assets.

J.      On November 19, 2024, the Debtors collectively filed a Joint Plan of Reorganization (the "Joint Plan") and a corresponding disclosure statement, and Cathay intends to object to confirmation of the Joint Plan and vote to reject the Joint Plan.

K.      Also pending is the separate bankruptcy case of Aleksey Kozlov ("Kozlov"), Bankruptcy Court case no. 24-00148 (the "Kozlov Case").

L.      Whittier is currently in negotiations to sell the Whittier Plant and the Whittier Equipment to prospective buyer Alaska Wild Seafoods (the "Alaska Wild Seafoods Sale") with the assistance of Hilco Corporate Finance ("Hilco").

M.      The Parties wish to resolve their disputes in the Chapter 11 Case, including without limitation the Joint Plan and its treatment for Cathay's Claim and Holdings' Claim, and avoid further expense of litigation on mutually agreeable terms, as set forth in this Agreement.

AGREEMENT

NOW, THEREFORE, in consideration of the mutual promises, obligations, covenants, and benefits herein contained, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound by the terms of this Agreement, the Parties agree as follows:

1.      **Recitals**.  The Recitals set forth above are true and correct and incorporated as part of this Agreement.

2.      **Conditions Precedent**.  This Agreement shall become binding and effective on the date that all of the following conditions precedent have been fully satisfied:

a.      ***Mutual Execution***.  By April 2, 2025, the Parties have mutually executed this Agreement and any agreements related hereto;

b.      ***Salacia Plant Listed for Sale***.  Within five (5) business days following mutual execution of this Agreement, Salacia has listed the Salacia Plant for sale by Hilco.

c.      ***Amended Plan***.  Within five (5) business days following mutual execution of this Agreement, the Debtors have filed an amended Joint Plan in accordance with the terms set

Plan Support Agreement - 2

2837 ic31jk0132

forth in this Agreement (the "<u>Amended Plan</u>") and disclosure statement (the "<u>Amended Disclosure Statement</u>"), in form and substance acceptable to the Lenders;

        d.    ***Plan Administrator***. Prior to the Debtors filing the Amended Plan and the Amended Disclosure Statement, the Parties have identified a plan administrator acceptable to the Lenders for the Amended Plan (the "<u>Plan Administrator</u>").

        e.    ***9019 Motion***. Prior to or concurrently with the Debtors filing the Amended Plan and Amended Disclosure Statement, the Debtors have filed a joint motion, in form and substance acceptable to the Lenders, seeking Bankruptcy Court approval of this Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "<u>9019 Motion</u>");

        f.    ***Bankruptcy Court Approval***. The Bankruptcy Court has entered an order in the Chapter 11 Case granting the 9019 Motion and approving this Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "<u>9019 Order</u>").

        g.    ***Kozlov Plan***. In the Kozlov Case, there has been a plan and disclosure statement filed that is supported by Kozlov, Kozlov's non-filing spouse, Kozlov's unsecured creditors committee, and the Lenders (the "<u>Kozlov Plan</u>").

    3.    **Amended Plan Deadlines**. By May 15, 2025, the Debtors shall obtain entry of an order by the Bankruptcy Court in the Chapter 11 Case confirming the Amended Plan (the "<u>Confirmation Order</u>"), and the Lenders shall not object to any motion(s) to shorten time to allow the Debtors to satisfy this Confirmation Order deadline. By May 31, 2025, the confirmed Amended Plan's effective date shall occur (the "<u>Plan Effective Date</u>"). Within three business days of the occurrence of the Plan Effective Date, the Debtor shall provide notice of the Plan Effective Date to the Lenders.

    4.    **Cathay's Allowed Claim**. The Amended Plan shall provide the following treatment for Cathay's Claim:

        a.    ***Allowed Claim Amount***. Upon the Plan Effective Date, Cathay's Claim shall be allowed in the amount of $20,497,257.86, plus accrued and unpaid interest at the default contract rate, plus attorneys' fees and costs, through the Effective Date (collectively, "<u>Cathay's Allowed Claim</u>").

        b.    ***Plan Interest Rate***. Following the Plan Effective Date, the full amount of Cathay's Allowed Claim shall accrue interest at the fixed rate of 13.25% per annum until paid in full.

        c.    ***Collateral***. Following the Plan Effective Date, Cathay's Allowed Claim shall be secured by (i) all of Cathay's existing collateral and lien rights, and (ii) a second-position lien on the Modys Building, as discussed further in Section 9.a below.

    5.    **Holdings' Allowed Claim**. The Amended Plan shall provide the following treatment for Holdings' Claim:

Plan Support Agreement - 3

a.    ***Allowed Claim Amount***.  Upon the Plan Effective Date, Holdings' Claim shall be allowed in the amount of $744,868.45, plus accrued and unpaid interest at the contractual non-default rate through April 1, 2025, plus accrued and unpaid interest at the contractual default rate after April 1, 2025, plus attorneys' fees and costs, through the Effective Date (collectively, "Holdings' Allowed Claim").

b.    ***Plan Interest Rate***.  Following the Plan Effective Date, the full amount of Holdings' Allowed Claim shall accrue interest at the contractual default rate until paid in full.

c.    ***Collateral***.  Following the Plan Effective Date, Holdings' Allowed Claim shall be secured by all of Holdings' existing collateral and lien rights.

6.    **Plan Administrator**.  The Amended Plan shall provide that, upon the Plan Effective Date, the Plan Administrator shall be appointed pursuant to the Plan Administrator Agreement to liquidate the Debtors' respective assets pursuant to the terms of the Amended Plan until Cathay's Allowed Claim and Holdings' Allowed Claim have been paid in full.

7.    **Whittier Liquidation**.  The Amended Plan shall provide the following terms for liquidating Whittier's assets:

a.    ***Whittier Plant and Whittier Equipment Sales***.  If the Alaska Wild Seafoods Sale has not closed by the Plan Effective Date, then the Plan Administrator shall automatically and without further notice to any Parties assume sole responsibility for promptly liquidating any portion of the Whittier Plant and Whittier Equipment that remains unsold, including exclusive discretion to accept offers and sell the Whittier Plant and Whittier Equipment assets as a whole or piecemeal, with the assistance of Hilco.

b.    ***Whittier Plant Sale Proceeds Distribution***.  Whittier Plant sale proceeds shall be distributed in the following order of priority:

i.    *First*, to Hilco's applicable commission and fees;

ii.    *Second*, to Ferguson Enterprises in the amount of $5,542.44;

iii.    *Third*, to Cathay's Allowed Claim in the amount of $1,864,923.98; and

iv.    *Fourth*, any remaining amount of sale proceeds allocated to the Whittier Plant shall be distributed to Whittier's unsecured creditors on the earlier of (a) the distribution of proceeds from the sale of the Salacia Plant or (b) 270 days after the Plan Effective Date. Cathay shall be included in such distribution on a pro rata basis based on the then-outstanding balance of Cathay's Allowed Claim.

c.    ***Whittier Equipment Sale Proceeds Distribution***.  Whittier Equipment sale proceeds shall be distributed first to Cathay's Allowed Claim.

Plan Support Agreement - 4

d.     ***Other Assets Sale(s) Proceeds Distribution***.  Other Whittier Assets sale proceeds shall be distributed to Whittier's unsecured creditors on the earlier of (a) the distribution of proceeds from the sale of the Salacia Plant or (b) 270 days after the Plan Effective Date.  Cathay shall be included in such distribution on a pro rata basis based on the then-outstanding balance of Cathay's Allowed Claim.

e.     ***Transparency***.  Throughout the Whittier Plant, Whittier Equipment, and Other Whittier Assets marketing and sale processes, Cathay and the Whittier unsecured creditors committee (the "<u>Whittier Committee</u>") shall each be:  (i) provided with copies of all marketing materials from Hilco or the Plan Administrator; (ii) provided with copies of all indications of interest, letters of intent, purchase agreements, offers, proposals, and any and all other written expressions of interest from potential buyers from Hilco or the Plan Administrator, within two business days of receipt, but in each case subject to a nondisclosure agreement or similar confidentiality agreement as Hilco or the Plan Administrator may reasonably request; (iii) permitted to join weekly group calls with Hilco, the Plan Administrator, and the Debtors regarding the status of the marketing and sales process, until all of Whittier's assets are sold; and (iv) otherwise authorized to communicate directly with Hilco or the Plan Administrator, and to request information from Hilco or the Plan Administrator, throughout the marketing and sale process.

8.     <u>Salacia Liquidation</u>.  The Amended Plan shall provide the following terms for liquidating Salacia's assets:

a.     ***Salacia Plant Sale***.  Within five (5) business days following mutual execution of this Agreement, the Salacia Plant shall be listed for sale by Hilco.

b.     ***Plan Administrator by Deadline***.  If the Salacia Plant sale has not closed by October 15, 2025, then the Plan Administrator shall automatically and without further notice to any Parties assume sole responsibility for promptly liquidating any portion of the Salacia Plant that remains unsold, including exclusive discretion to accept offers and sell Salacia assets as a whole or piecemeal, with the assistance of Hilco.

c.     ***Plan Administrator by Court Order***.  Notwithstanding Section 8.b above, Cathay and the Whittier Committee each may file a motion in the Chapter 11 Case at any time to request that the Bankruptcy Court order the Plan Administrator to assume responsibility for the Salacia Plant marketing and sale process, for cause.  Any such motion may only be granted after notice and a hearing, and must provide at least 10 days for the Debtors to respond, unless the Bankruptcy Court orders that exigent circumstances warrant a shorter response period.

d.     ***Plan Administrator Strike Prices***.  If the Salacia Plant sale has not closed within 150 days following the Effective Date, then the Plan Administrator must accept and close (i) any cash offer that is $30 million or greater; and (ii) for Salacia's undeveloped land, any cash offer that is $10.4 million or greater.

e.     ***Sale Proceeds Distribution***.  Salacia Plant sale proceeds shall be distributed in the following order of priority:

Plan Support Agreement - 5

i.   *First*, to Hilco's applicable commission and fees;

ii.   *Second*, to any liens senior to Cathay's liens on the Salacia Plant, subject to Cathay's investigation and consent that such liens are senior, or a Bankruptcy Court order establishing lien priority;

iii.   *Third*, to Cathay Advance Liens;

iv.   *Fourth*, to Cathay's Allowed Claim; and

v.   *Fifth*, to the Whittier Committee's subordinate lien.

f.   ***Transparency***. Throughout the Salacia Plant marketing and sale process, Cathay, the Whittier Committee, and the Plan Administrator shall each be: (i) provided with a copy of the marketing materials associated with the Salacia Plant from Hilco, within three business days of the commencement of the Salacia Plant marketing process; (ii) provided with copies of all indications of interest, letters of intent, purchase agreements, offers, proposals, and any and all other written expressions of interest from potential buyers from Hilco, within two business days of Hilco's receipt, but in each case subject to a nondisclosure agreement or similar confidentiality agreement as Hilco may reasonably request; (iii) permitted to join weekly group calls with Hilco and the Debtors regarding the status of the marketing and sales process, until the Salacia Plant is sold; and (iv) otherwise authorized to communicate directly with Hilco, and to request information from Hilco, throughout the marketing and sale process.

9.   **Modys Liquidation**. The Amended Plan shall provide the following terms for liquidating Modys' assets:

a.   ***Cathay Junior Lien on Modys Building***. Cathay shall prepare, and Modys shall execute and deliver to Cathay within three business days following the Effective Date, a deed of trust on the Modys Building to secure Cathay's Allowed Claim with a second-position lien on the Modys Building, in form and substance acceptable to Cathay.

b.   ***Modys Building Sale***. Within five business days following entry of the 9019 Order, Modys shall list the Modys Building for sale with the assistance of (i) Aaron Kraft of Kidder Matthews, or (ii) another broker approved by Cathay (the "Modys Building Broker"). Within 180 days following the Effective Date, Modys shall close a sale of the Modys Building.

c.   ***Modys Monthly Payments***. Modys shall continue to make regular monthly payments to Holdings' Allowed Claim until closing a sale of the Modys Building, notwithstanding the April 1, 2025 maturity date (the "Modys Monthly Payments"). Modys Monthly Payments that come due prior to April 1, 2025 shall be at the contractual non-default rate; and Modys Monthly Payments that come due after April 1, 2025 shall be at the contractual default rate. Modys' failure to make a Modys Monthly Payment shall not be an event of default under the Plan Agreement or the Amended Plan.

2837 ic31jk0132

      d.    ***Protective Advances for Modys Monthly Payments***. Cathay may carveout from its Reserved Sale Proceeds funds to advance to the Plan Administrator for the purpose of making the Modys Monthly Payments to Holdings, with such advances governed by the terms set forth below for Protective Advances.

      e.    ***Plan Administrator by Deadline***. If the Modys Building sale has not closed within 180 days following the Effective Date, and any portion of Holdings' Allowed Claim or Cathay's Allowed Claim remains unpaid, then the Plan Administrator shall automatically and without further notice to any Parties assume sole responsibility for promptly liquidating the Modys Building with the assistance of a broker approved by Cathay.

      f.    ***Sale Proceeds Distribution***. Modys Building net sale proceeds, after commissions and costs of sale, shall be distributed in the following order of priority:

          i.    *First*, to Holdings' Allowed Claim;

          ii.    *Second*, to transfer tax reserve; and

          iii.    *Third*, to Cathay's Allowed Claim, if not already paid in full.

      g.    ***Transparency***. Throughout the Modys Building marketing and sale process, Cathay, Holdings, and the Plan Administrator shall each be: (i) provided with copies of all marketing materials from Modys or its broker; (ii) provided with copies of all indications of interest, letters of intent, purchase agreements, offers, proposals, and any and all other written expressions of interest from potential buyers from the Modys' broker, within two business days of receipt, but in each case subject to a nondisclosure agreement or similar confidentiality agreement as the Modys' broker may reasonably request; (iii) permitted to join weekly group calls with Modys' broker and the Debtors regarding the status of the marketing and sales process, until the Modys Building is sold; and (iv) otherwise authorized to communicate directly with Modys' broker, and to request information from Modys' broker, throughout the marketing and sale process.

    10.    <u>**Silver Wave Liquidation**</u>. The Amended Plan shall provide the following terms for liquidating Silver Wave's assets:

      a.    ***Plan Administrator by Effective Date***. Upon the Effective Date, the Plan Administrator shall automatically and without further notice to any Parties assume sole responsibility for promptly liquidating Silver Wave's assets, including without limitation the Vessels and the SW Receivables.

      b.    ***Vessels Sale(s)***. The Plan Administrator shall use its best efforts to sell any remaining Vessels with the assistance of a broker approved by Cathay.

      c.    ***SW Receivables Collection***. The Plan Administrator shall use its best efforts to (i) collect the SW Receivables, or (ii) compromise the SW Receivables subject to Cathay's approval of any compromise.

Plan Support Agreement - 7

d.    ***Silver Wave Proceeds Distribution***. Vessel sales net proceeds after costs of sale and applicable commissions, and SW Receivables collection or compromise net proceeds, shall be distributed to Cathay's Allowed Claim.

e.    ***Silver Wave Transparency***. Throughout the Vessels and SW Receivables liquidation process, Cathay shall be: (i) provided with copies of all marketing materials from the Plan Administrator or its broker; (ii) provided with copies of all indications of interest, letters of intent, purchase agreements, offers, proposals, and any and all other written expressions of interest from potential buyers of the Vessels from the Plan Administrator or its broker, within two business days of receipt, but in each case subject to a nondisclosure agreement or similar confidentiality agreement as the Plan Administrator may reasonably request; (iii) permitted to join weekly group calls with the Plan Administrator, its broker, and the Debtors regarding the status of the marketing and sales process and the collections process, until the Vessels are all sold and SW Receivables all collected or compromised; and (iv) otherwise authorized to communicate directly with the Plan Administrator or its broker, and to request information from the Plan Administrator or its broker, throughout the Vessels marketing and sale process and the SW Receivables collection and compromise process.

11.    **Remaining Assets Liquidation**. The Amended Plan shall provide the following terms for liquidating any of the Debtors' assets that remain unliquidated 365 days after the Plan Effective Date ("Remaining Assets"), if any portion of Cathay's Allowed Claim remains unpaid:

a.    ***Remaining Assets Liquidation***. The Plan Administrator shall use its best efforts to (i) liquidate any Remaining Assets; (ii) collect any remaining receivables of any of the Debtors, and (iii) compromise any remaining receivables of any of the Debtors subject to Cathay's approval of any compromise.

b.    ***Transparency***. Throughout the Remaining Assets liquidation process, Cathay shall be: (i) provided with copies of all marketing materials from the Plan Administrator or its broker(s); (ii) provided with copies of all indications of interest, letters of intent, purchase agreements, offers, proposals, and any and all other written expressions of interest from potential buyers of any Remaining Assets from the Plan Administrator or its broker(s), within two business days of receipt, but in each case subject to a nondisclosure agreement or similar confidentiality agreement as the Plan Administrator may reasonably request; (iii) permitted to join weekly group calls with the Plan Administrator, its broker(s), and the Debtors regarding the status of the marketing and sales process and the collections process, until the Remaining Assets are all sold, collected, or compromised, as applicable; and (iv) otherwise authorized to communicate directly with the Plan Administrator or its broker(s), and to request information from the Plan Administrator or its broker(s), throughout the Remaining Assets marketing, sale, collection, and compromise processes.

12.    **Protective Advances**. The Amended Plan shall provide the following terms for Cathay to make discretionary protective advances to the Debtors through the Plan Administrator for the purpose of protecting, preserving, and liquidating the Whittier Plant, Whittier Equipment, Salacia Plant, and Modys Building ("Protective Advances"):

2837 ic31jk0132

a. ***Reserved Sale Proceeds***. From the net sale proceeds of any Whittier sale otherwise payable to Cathay, Cathay may carveout such funds ("Reserved Sale Proceeds") and advance Reserved Sale Proceeds in Cathay's sole discretion to the Plan Administrator as are deemed necessary by the Plan Administrator for Protective Advances. Any Reserved Sale Proceeds carved out and held by Cathay shall not reduce then Cathay Allowed Claim; provided that the balance of Reserved Sale Proceeds shall not exceed $500,000.

b. ***Protective Advances Administration***. The Plan Administrator shall have sole authority to administer the Debtors' cash and payment of expenses. The Plan Administrator may request from Cathay (i) authority for the Debtors to use cash collateral on hand, or (ii) Protective Advances.

c. ***Protective Advances Budget***. If the Plan Administrator requests authority for the Debtors to use cash collateral on hand or Protective Advances, then the Plan Administrator shall propose a weekly budget forecast (each a "Budget") to be approved by Cathay in Cathay's sole discretion. The Debtors' actual expenses may not exceed any line item in an approved Budget by more than 10% without the written consent of Cathay, except for: (i) life threatening or other health or safety issues, or (ii) minor repairs less than $5,000. At the request of Cathay, the Plan Administrator shall provide Cathay with an actual-to-Budget variance report on a weekly basis.

d. ***Interest and Advance Liens***. Any and all Protective Advances by Cathay to the Plan Administrator (other than Reserved Sale Proceeds) shall (i) accrue interest at the rate of 15% per annum; (ii) be charged against and paid out of the Whittier and Salacia estates; (iii) be deemed protective advances secured by all of Cathay's collateral under Cathay's security instruments, Court orders, and the Amended Plan; and (iv) be entitled to a first and paramount lien against all of Whittier's and Salacia's assets (collectively, "Advance Liens").

e. ***Lien Perfection, Validity, and Priority***. The Amended Plan and confirmation order shall be sufficient for, and conclusive evidence of, the priority, perfection, and validity of the Advance Liens, and Cathay shall not be required to file additional deeds of trust, or file or serve UCC financing statements, notices of lien or similar instruments, or take any other action in order to preserve the priority, perfection, and validity of the Advance Liens.

13. **Pre-Confirmation Protective Advances**. In the event that such Protective Advances, or use of cash collateral on hand, are necessary prior to the Plan Effective Date, then the Debtors shall each stipulate to the employment of a third-party budget administrator (a "Pre-Confirmation Administrator"). The Pre-Confirmation Administrator shall (i) have the same powers and authorities of the Plan Administrator prior to the Plan Effective Date regarding exclusive authority to use cash collateral or request Protective Advances pursuant to a Cathay-approved Budget, and administer all cash on hand and payment of expenses pursuant to a Cathay-approved Budget; and (ii) become the Plan Administrator upon the Plan Effective Date.

14. **Lenders' Support for the Amended Plan**. Subject to the Amended Plan and Amended Disclosure Statement complying with the terms of this Agreement, and the Debtors otherwise complying with the terms and conditions of this Agreement, the Lenders shall support confirmation of the Amended Plan in the following ways:

Plan Support Agreement - 9

     a.    *Voting*. The Lenders shall each timely vote, or cause to be voted, all of their respective claims against the Debtors to accept the Amended Plan, by delivering their duly executed and completed ballots accepting the Amended Plan on a timely basis following the commencement of the Amended Plan solicitation process; provided that such votes may be immediately revoked and deemed void ab initio by the Lenders upon termination of this Agreement prior to the confirmation of the Amended Plan pursuant to the terms hereof.

     b.    *No Objection*. The Lenders shall not object to, delay, postpone, challenge, reject, oppose, impede, or take any other action that would reasonably be expected to prevent, interfere with, delay or impede, directly or indirectly, in any material respect, the approval, acceptance, confirmation, or implementation of the Amended Plan on the terms set forth in this Agreement.

     c.    *Supporting Actions*. The Lenders shall support and take all commercially reasonable actions necessary or reasonably requested by the Debtors to facilitate the approval of the Amended Disclosure Statement, solicitation of the Amended Plan, and confirmation and consummation of the Amended Plan; provided that the Lenders shall not be required to incur any material costs, expense, or liability in connection therewith.

     d.    *Fiduciary Duties*. The agreements of the Lenders in this Section 14 shall not limit the Lenders' exercise of fiduciary duties arising from service on any creditors committee in any bankruptcy case, and the exercise of such fiduciary duties shall not be deemed to be a breach of this Agreement.

15.    **Debtors' Support for the Amended Plan**. The Debtors shall support confirmation of the Amended Plan in the following ways:

     a.    *Solicitation and Confirmation*. The Debtors agree to (i) act in good faith and use commercially reasonable efforts to support and successfully complete the Amended Plan solicitation process in accordance with the terms and conditions of this Agreement, and (ii) do all things reasonably necessary and appropriate in furtherance of confirming the Amended Plan and consummating the Amended Plan in accordance with, and within the time frames contemplated by, this Agreement (including within the deadlines set forth in Section 3), in each case to the extent consistent with, upon the advice of counsel, the fiduciary duties of the boards of directors, managers, members, or partners, as applicable, of each Debtor.

     b.    *Courtesies to Lenders*. The Debtors shall provide draft copies of all material motions or applications and other documents relating to the Amended Plan, Amended Disclosure Statement, any proposed amended version of the Amended Plan or Amended Disclosure Statement that the Debtors intend to file with the Bankruptcy Court to the Lenders' counsel, if reasonably practicable, at least two (2) business days prior to the date when the Debtors intend to file any such pleading or other document (and, if not reasonably practicable, as soon as reasonably practicable prior to filing) and shall consult in good faith with such Lenders' counsel regarding the form and substance of any such proposed filing. Subject to Section 14, nothing in this Agreement shall restrict, limit, prohibit, or preclude, in any manner not inconsistent with its

Plan Support Agreement - 10

obligations under this Agreement, the Lenders from appearing in the Bankruptcy Court with respect to any motion, application, or other documents filed by the Debtors and objecting to, or commenting upon, the relief requested therein.

16.   **Good Faith**.  Each Party hereby covenants and agrees to cooperate with each other in good faith in connection with, and shall exercise commercially reasonable efforts with respect to, the pursuit, approval, implementation, and consummation of the Amended Plan, as well as the negotiation, drafting, execution, and delivery of the Amended Plan, Amended Disclosure Statement, and other documents, agreements, and pleadings referenced in this Agreement. Furthermore, subject to the terms hereof, each of the Parties shall take such action as may be reasonably necessary or reasonably requested by the other Parties to carry out the purposes and intent of this Agreement, and shall refrain from taking any action that would frustrate the purposes and intent of this Agreement.

17.   **Representations, Warranties, and Covenants**.  Each Party represents, warrants, and covenants as to itself only, severally (and not jointly), to each other Party, that the following statements are true, correct, and complete as of the date of this Agreement:

a.   *Good Standing and Authority*.  Such Party is validly existing and in good standing under the laws of the state of its incorporation or organization, and has all requisite corporate, partnership, limited liability company, or similar authority to enter into this Agreement and carry out the transactions contemplated hereby and perform its obligations contemplated hereunder.  The execution and delivery of this Agreement and the performance of such Party's obligations hereunder have been duly authorized by all necessary corporate, limited liability company, partnership, or other similar action on its part.

b.   *Binding Agreement*.  This Agreement is the legally valid and binding obligation of such Party, enforceable against it in accordance with its terms, except as enforcement may be limited by bankruptcy, insolvency, reorganization, moratorium, or other similar laws relating to or limiting creditors' rights generally or by equitable principles relating to enforceability.

18.   **Termination**.  This Agreement shall terminate automatically on the Plan Effective Date without any further required action or notice.  This Agreement and the obligations hereunder may be terminated by mutual agreement of the Debtors and the Lenders upon the mutual receipt of written notice of termination delivered in accordance with Section 32.  Otherwise, this Agreement may only be terminated by election of the Debtors or the Lenders upon the occurrence of the following events and two (2) business days written notice to all other Parties:

a.   *Lenders Terminating Events*.  The Lenders may elect to terminate this Agreement pursuant to this Section 18 if any of the following events occurs:

i.   The breach in any material respect by the Debtors of any of the undertakings, representations, warranties, or covenants of the Debtors set forth herein which remains uncured for a period of five

Plan Support Agreement - 11

(5) business days after the receipt of written notice of such breach from the Lenders;

ii.      May 15, 2025, if the Debtors have not obtained entry of the Confirmation Order;

iii.     May 31, 2025, if the Plan Effective Date has not occurred;

iv.     The Debtors withdraw the Amended Plan or Amended Disclosure Statement or file any motion or pleading with the Bankruptcy Court that is not consistent with this Agreement or the Amended Plan and such motion or pleadings has not been withdrawn by the earlier of (A) two (2) business days after the Debtors receive written notice from the Lenders that such motion or pleading is inconsistent with this Agreement or the Amended Plan, or (B) entry of an order of the Bankruptcy Court approving such motion or pleading;

v.      An examiner with expanded powers or a trustee shall have been appointed for any of the Debtors;

vi.     Any of the Debtors' respective bankruptcy cases has been converted to Chapter 7 or dismissed;

vii.    An order is entered by the Bankruptcy Court invalidating or disallowing, as applicable, the enforceability, priority, or validity of the liens securing any of the obligations owed by any Debtors to any Lenders;

viii.   The Bankruptcy Court grants relief that is inconsistent with this Agreement or the Amended Plan in any materially adverse respect;

ix.     The Debtors file, propound, or otherwise support any plan that is inconsistent with this Agreement in any material respect; and

x.      Any of the above-referenced events in subsections (ii), (iii), (iv), (v), (vi) occurs in a similar manner with regard to Kozlov's separate bankruptcy case and the Kozlov Plan.

b.     ***Debtors Terminating Events***. The Debtors may elect to terminate this Agreement pursuant to this Section 18 if any of the following events occurs:.

i.      The breach in any material respect by the Lenders of any of the undertakings, representations, warranties, or covenants of the Lenders set forth herein which remains uncured for a period of five (5) business days after the receipt of written notice of such breach from the Debtors.

Plan Support Agreement - 12

19.    **Survival**.  Notwithstanding the termination of this Agreement pursuant to Section 18, Sections 19-34 shall survive such termination and shall continue in full force and effect in accordance with the terms hereof.  Any liability of a Party for failure to comply with the terms of this Agreement shall survive termination.

20.    **Amendments and Modifications**.  This Agreement may not be waived, modified, amended, or supplemented except in a writing signed by the Debtors and the Lenders.

21.    **No Waiver**.  Neither any Party's failure, at any time or times, to require strict performance by any other Party of any provision of this Agreement or the Amended Plan, nor any Party's failure to exercise, nor any delay in exercising, any right, power, or privilege under this Agreement or the Amended Plan:  (a) shall waive, affect, or diminish any right of the Party thereafter to demand strict compliance and performance therewith, or (b) shall operate as a waiver thereof.

22.    **Governing Law**.  This Agreement shall be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the laws of the State of Washington, without giving effect to the conflict of laws principles thereof.

23.    **Jurisdiction and Venue**.  This Agreement shall be governed by and construed and enforced in accordance with the internal laws of the state of Washington, without reference to the rules thereof relating to conflicts of law.  The Parties hereby irrevocably submit themselves to the jurisdiction of the Bankruptcy Court with respect to all issues and/or disputes arising under this Agreement and/or the Amended Plan.  Any legal proceeding arising out of, or in any way related to this Agreement or the Amended Plan shall be brought and litigated exclusively in the Bankruptcy Court.  The Parties hereto hereby waive and agree not to assert, by way of motion, as a defense or otherwise, that any such proceeding is brought in an inconvenient forum, that the Bankruptcy Court lacks jurisdiction, or that the venue thereof is improper.

24.    **Waiver of Jury Trial**.  Each Party hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any Proceeding directly or indirectly arising out of or relating to this Agreement or the transactions contemplated hereby, whether based on contract, tort, or any other theory.

25.    **Specific Performance and Remedies**.    Each Party hereto recognizes and acknowledges that a breach by a Party of any covenants or agreements contained in this Agreement would cause the other Parties to sustain damages for which such Parties would not have an adequate remedy at law for money damages and each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief (including attorneys' fees and costs) as a remedy of any such breach, without the necessity of proving the inadequacy of money damages as a remedy.

26.    **Successors and Assigns**.  This Agreement is intended to bind and inure to the benefit of the Parties and their respective successors, permitted assigns, heirs, executors, administrators, and representatives

Plan Support Agreement - 13

27. **Severability**.  If any provision of this Agreement, or the application of any such provision to any person, entity, or circumstance, shall be held invalid or unenforceable, in whole or in part, such invalidity or unenforceability shall attach only to such provision or part thereof and the remaining part of such provision hereof and this Agreement shall continue in full force and effect.  Upon any such determination of invalidity, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in a reasonably acceptable manner in order that the transactions contemplated hereby are consummated as originally contemplated to the greatest extent possible.

28. **No Third-Party Beneficiaries**.  Each Party acknowledges and agrees that this Agreement shall not create any obligations on the part of any Party to third parties.  No person or entity that is not a party to this Agreement shall have any "third party beneficiary" status or other rights hereunder, and this Agreement shall not impact or modify any of the Parties' rights or remedies against any third parties.  For the avoidance of doubt, this Agreement shall not affect in any way any Lenders' claims and rights against Kozlov, Kozlov's non-filing spouse, or anyone affiliated or related to the Debtors or Kozlov, which claims and rights are expressly reserved by the Lenders subject only to any orders entered or plan confirmed in Kozlov's separate bankruptcy case or any adversary proceedings related thereto.

29. **Headings**.  The headings of the sections, paragraphs, and subsections of this Agreement are inserted for convenience only and shall not affect the interpretation hereof or, for any purpose, be deemed a part of this Agreement.

30. **Entire Agreement**.  This Agreement, and the Amended Plan contemplated herein, constitutes the entire agreement of the Parties, and supersedes all other prior negotiations, with respect to the subject matter hereof and thereof, except that the Parties acknowledge that any confidentiality or release agreements executed between any of the Parties prior to the execution of this Agreement shall continue in full force and effect.

31. **Counterparts**.  This Agreement may be executed in several counterparts, each of which shall be deemed to be an original, and all of which together shall be deemed to be one and the same agreement. Execution copies of this Agreement delivered by facsimile or PDF shall be deemed to be an original for the purposes of this paragraph.

32. **Notices**.  Unless otherwise provided in this Agreement, all notices or demands by any Party relating to this Agreement shall be in writing, and shall be personally delivered or sent by registered or certified mail, postage prepaid, return receipt requested, or by receipted overnight delivery service to the Debtors, or to the Lenders, as the case may be, at their respective addresses set forth below:

If to the Debtors:

Aleksey Kozlov
3 Lake Bellevue Drive, Suite 200
Bellevue, WA 98005
Email: alekseyk@marinefishingint.com

Plan Support Agreement - 14

| | |
|---|---|
| With a copies to: | James Day<br>Lesley Bohleber<br>Bush Kornfeld LLP<br>601 Union St., Suite 5000<br>Seattle, WA  98101-2373<br>Email: jday@bksd.com<br>          lbohleber@bskd.com |
| If to the Lenders: | David Scheiber<br>Cathay Bank<br>9650 Flair Drive<br>El Monte, CA 91731<br>Email: David.Scheiber@cathaybank.com |
| With a copy to: | Gregory Fox<br>James Zack<br>Ballard Spahr LLP<br>1420 Fifth Ave., Suite 4200<br>Seattle, WA 98111<br>Email: foxg@ballardspahr.com<br>          zackj@ballardspahr.com |

The Parties hereto may change the address at which they are to receive notices hereunder by notice in writing in the foregoing manner given to the other.  All notices or demands sent in accordance with this Section 32 shall be deemed received on the earlier of the date of actual receipt, or three (3) business days after the deposit thereof in the mail, or one (1) business day after deposit thereof with an overnight delivery service.

      33.    **Attorneys' Fees and Costs**.  If any Party institutes legal proceedings over the enforcement of this Agreement or any provision of it, the prevailing Party(s) shall be entitled to recover from the losing Party(s) its costs, including reasonable attorneys' fees.

      34.    **Interpretation**.  When a reference is made in this Agreement to a Section, Exhibit, Appendix, or Schedule, such reference shall be to a Section, Exhibit, Appendix, or Schedule, respectively, of or attached to this Agreement unless otherwise indicated.  Unless the context of this Agreement otherwise requires, (i) words using the singular or plural number also include the plural or singular number, respectively, (ii) the terms "hereof," "herein," "hereby," and derivative or similar words refer to this entire Agreement, (iii) the words "include," "includes," and "including" when used herein shall be deemed in each case to be followed by the words "without limitation," and (iv) the word "or" shall not be exclusive and shall be read to mean "and/or."  The Parties agree that they have been represented by legal counsel during the negotiation and execution of this Agreement and, therefore, waive the application of any law, regulation, holding, or rule of construction providing that ambiguities in an agreement or other document shall be construed against the party drafting such agreement or document.

Plan Support Agreement - 15

2837 ic31jk0132

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

[SIGNATURES ON FOLLOWING PAGE]

Plan Support Agreement - 16

2837 ic31jk0132

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed and delivered by their respective duly authorized officers, solely in their respective capacity as officers of the undersigned and not in any other capacity, as of the date first set forth above.

**DEBTORS:**

**Marine Fishing International, Inc.**

By: _____
Name:
Title:

**Marine Fishing International, LLC**

By: _____
Name:
Title:

**Modys, LLC**

By: _____
Name:
Title:

**Salacia, LLC**

By: _____
Name:
Title:

**Silver Wave, LLC**

By: _____
Name:
Title:

**Whittier Seafood, LLC**

By: _____
Name:
Title:

**LENDERS:**

**Cathay Bank**

By: _____
Name: JONathan David
Title: SVP

**Cathay Holdings, LLC**

By: _____
Name: DAVID SCHREIBER
Title: VP

Plan Support Agreement - 17

2837 ic31jk0132

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed and delivered by their respective duly authorized officers, solely in their respective capacity as officers of the undersigned and not in any other capacity, as of the date first set forth above.

**DEBTORS:**

**Marine Fishing International, Inc.**

By: _____
Name: *Alexsey Koztor*
Title: *Authorized Person*

**Marine Fishing International, LLC**

By: _____
Name: *Alexsey Koztor*
Title: *Authorized Person*

**Modys, LLC**

By: _____
Name: *Alexsey Koztor*
Title: *Authorized Person*

**Salacia, LLC**

By: _____
Name: *Alexsey Koztor*
Title: *Authorized Person*

**Silver Wave, LLC**

By: _____
Name: *Alexsey Koztor*
Title: *Authorized Person*

**Whittier Seafood, LLC**

By: _____
Name: *Alexsey Koztor*
Title: *Authorized Person*

**LENDERS:**

**Cathay Bank**

By: _____
Name:
Title:

**Cathay Holdings, LLC**

By: _____
Name:
Title:

Plan Support Agreement - 17

2837 ic31jk0132

# EXHIBIT C

**Begich Towers Leases**

| Unit | Debtor/Lessor | Lessee | Term | Cure Amount |
|------|---------------|--------|------|-------------|
| 206 | Whittier | T.F. | 6/1/24 - 9/30/24 (month to month after expiration) | $0 |
| 402 | Whittier | Turnagain Marine Construction | 5/22/24 - 8/31/24 (month to month after expiration) | $0 |
| 609 | Whittier | Turnagain Marine Construction | 8/12/2024-10/31/2024 (month to month after expiration) | $0 |
| 807 | Whittier | Turnagain Marine Construction | 5/13/24 - 8/31/24 (month to month after expiration) | $0 |
| 1001 | Whittier | J.E and T.M. | 6/1/24 - 4/30/25 (month to month after expiration) | $0 |

**Misc. Leases**

| Debtor | Counter Party | Lease Details | Cure Amount |
|--------|---------------|---------------|-------------|
| Whitter | Alaska Railroad Corporation | Ground Lease related to the Whitter Property | $13,453 |