JOHN S. KAPLAN (*Admitted Pro Hac Vice*)
john.kaplan@stoel.com
JAMES E. TORGERSON, Bar No. 8509120
jim.torgerson@stoel.com
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: 206.624.0900
*Attorneys for Aleksey N. Kozlov*

The Honorable Gary Spraker

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re<br><br>WHITTIER SEAFOOD, LLC et al.,[1]<br><br>Debtor. | Case No. 24-00139<br><br>Chapter 11<br><br>**ALEKSEY N. KOZLOV'S RESPONSE TO CATHAY'S MOTION FOR PLAN ADMINISTRATOR TO ASSUME RESPONSIBILITY FOR SALACIA MARKETING AND SALE PROCESS** |

Aleksey N. Kozlov ("***Mr. Kozlov***"), by and through his undersigned counsel, submits this response to *Cathay's Motion for Plan Administrator to Assume Responsibility for Salacia Marketing and Sale Process*[2] (the "***Motion***") [Dkt. No. 426]. This Response is supported by the Declaration of Aleksey N. Kozlov filed herewith ("***Kozlov Decl.***").[3]

### I.    INTROUCTION

The Motion raises three different issues: (1) the unauthorized sale of equipment and payment of expenses to preserve estate property, (2) Mr. Kozlov's alleged non-cooperation with

---

[1] The Debtors are Marine Fishing International, Inc., Case No. 24-00140; Marine Fishing International, LLC, Case No. 24-00141; Modys, LLC, Case No. 24-00142; Salacia, LLC, Case No. 24-00143; Silver Wave, LLC, Case No. 24-00144; and Whittier Seafood, LLC.

[2] Capitalized terms used but not defined herein have the meaning set forth in the Motion.

[3] This Response is being filed after the August 1, 2025 deadline upon the agreement with Cathay Bank to extend the response deadline to August 4, 2025 to allow for discussions among the parties.

ALEKSEY N. KOZLOV'S RESPONSE TO CATHAY'S MOTION FOR PLAN ADMINISTRATOR TO ASSUME RESPONSIBILITY FOR SALACIA MARKETING AND SALE PROCESS

1

a site tour, and (3) Mr. Kozlov's alleged prohibition on Hilco's contacting a potential buyer. Mr. Kozlov will address each of these allegations below.

Cathay's Motion forces Mr. Kozlov to raise the more important issues that have been boiling below the surface for several months. The Debtors have the wrong party, Hilco, trying to sell their primary asset, the Salacia plant and equipment, seemingly with very little strategy, local real estate involvement, and, unfortunately, likelihood of success. The Motion now seeks to accelerate the time under which a Plan Administrator based in Austin, Texas is to supervise an investment banking firm located in Los Angeles, California with respect to the sale of industrial property located in Marysville, Washington, during which time significant interest and expenses continue to accrue to the detriment of Mr. Kozlov. Mr. Kozlov submits that this would be a disastrous course for the creditors as well as himself.

## II.    ARGUMENT

1. **"Unauthorized Sale"**

Mr. Kozlov acknowledges that he caused the sale of the sweeper and miscellaneous small equipment. The lack of money forced the owners to sell two very old and unnecessary spiral freezers, a sweeper truck which had not been used since 2022, and 2 non-working vehicles. The sweeper truck was used only for cleaning the roads when construction soil was delivered to the lots. Mr. Kozlov felt he had no other choice to pay the necessary expenses to preserve the property of Whitter and Salacia. The proceeds were all deposited into the Debtors' bank accounts, as shown on the monthly financial reports filed with the Court, and were used to pay for heat and snow removal from the roof at Whittier, security, gas, electricity water, constructing fencing, and otherwise maintaining both the Whittier and Salacia properties. Kozlov Decl., ¶ 3.

Mr. Kozlov apologizes for not seeking court authority for these sales; he did what he thought was necessary to preserve his property worth more than $40 million, and from which all of the creditors in these cases are supposed to be paid. At the time, Cathay Bank was unwilling to advance any funds to protect their collateral, and Hilco's efforts to find a DIP loan were not

ALEKSEY N. KOZLOV'S RESPONSE TO CATHAY'S MOTION FOR PLAN ADMINISTRATOR TO ASSUME RESPONSIBILITY FOR SALACIA MARKETING AND SALE PROCESS
2

129695424.3 0083694-00002

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main 206.624.0900    Fax 206.386.7500

successful. Nevertheless, Mr. Kozlov managed to preserve the property of Whittier Seafood in good condition and transfer it to the buyer, creating value for the creditors. *Id.*, ¶ 4.

The Salacia plant in Marysville requires daily monitoring and maintenance. In Fall and Winter, one of the main problems is related to the water level in the areas due to heavy rainfall. The Debtors must manually pump out water, because the systems are not yet operational. Twice a month, the city authorities check the saturation of the soil with water. After the checks, the Debtor usually receives recommendations on what needs to be done to prevent the earth from moving. The building is subject to regular inspections from the City. *Id.*, ¶ 5.

In late Spring and Summer, the main problem is related to fires that occur constantly in the area. The Debtors need to monitor all fire hoses, clear the area of tall dry grass, adjacent trees, etc. Fire control is carried out by city services on a regular basis, after which recommendations are usually given that must be implemented as soon as possible. *Id.*, ¶ 6.

The Salacia team carries out daily work to maintain the plant in satisfactory condition and daytime security. At night, security is provided by a specialized company. All this requires funding every week, in cases of non-payment, the Debtors could have irreversible consequences that could lead to loss of the plant. *Id.*, ¶ 7.

With respect to Whittier, the weather in Alaska creates problems in Fall, Winter, and Spring. Very low temperatures can lead to damage to buildings, roofs, equipment, various pipes, and cement floors. A large amount of snow can cause the roof to collapse under the weight of snow, which would damage all internal equipment. The City requires snow removal for firefighter access. The buildings must be heated, theft must be prevented, and the equipment must be monitored and kept in working order. In order to keep the property in satisfactory condition, there was an urgent need to pay people for work and to buy the necessary supplies, including gas, fuel, and electricity. *Id.*, ¶ 8.

2. **Hilco Issues**

**(A) Background, DIP Loan, and Whittier Sale Process**

The Debtors engaged Hilco in October, 2024, at the recommendation of Debtors' counsel, to provide various investment banking services. *See Application to Employ Hilco as Investment Banker* [Dkt. No. 158] and *Teri Stratton Decl., Ex. A - Engagement Letter* [Dkt. No. 159]. An *Order Authorizing the Debtors to Employ Hilco as Investment Bank* was entered on December 20, 2024 [Dkt. No. 239]. Hilco expressed confidence that they could obtain a DIP loan for the Debtors to bridge the necessary expenses of preserving the property up to a sale date. Kozlov Decl., ¶ 9. For months, they told Mr. Kozlov that they were confident that they would find a DIP loan. In the interim, the Debtors' spent down their available cash. The Debtors were not told until February, 2025 that Hilco likely could not find a DIP lender. *Id.*

Hilco was also engaged to find a buyer for Whittier Seafoods. After a months' long process, Hilco told the Debtors that the best offer, from "Company A[4]," was for $900,000. This was a ridiculously low offer given even the liquidation value of the Whittier assets. *Id.*, ¶ 10. Mr. Kozlov himself located the buyer, CMCC, who closed a sale for $4.6 million earlier this week. This was a Chinese buyer with whom Mr. Kozlov and certain of the Debtors had previously done business. *Id.*, ¶ 11.

When the Chinese buyer first made a $4.4 million offer, Mr. Kozlov was instructed by counsel to turn the buyer over to Hilco to negotiate the final sale terms. Weeks later, Hilco informed the Debtors that the buyer had buyer's remorse and was backing out of the deal. Mr. Kozlov then re-engaged in conversations with the buyer, leading to the sale that closed during the week of July 28, 2025. *Id.*, ¶ 12.

The Debtors and Mr. Kozlov, as indirect equity owner and guarantor, have lost over a million dollars in additional interest and attorneys' fees between April and funding on July 29, 2025. After losing the deal with the Chinese buyer, Hilco no longer tried to sell Whittier Seafood, and did not report weekly on finding potential buyers for Whittier Seafood. Since

---

[4] Names of specific bidders are not being used to protect confidentiality.

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main 206.624.0900   Fax 206.386.7500

April 2025, Mr. Kozlov was left alone, without Hilco's support, and continued to fight alone for the successful sale of Whittier Seafoods' assets. *Id.*, ¶ 13. Mr. Kozlov spent many nights on the phone with China in order to close this deal. *Id.*

### (B) Salicia Sale Process

Starting in March, 2025, Hilco began its efforts to sell the Salacia plant and equipment.[5] The process generally involved preparing marketing materials and sending out emails to various potential bidders. The Debtors, Cathay Bank, the Whittier Committee, and Mr. Kozlov receive weekly updates from Hilco showing who was contacted and who has expressed an interest, signed an NDA, accessed the data room, and/or requested a tour of the facility. *Id.*, ¶ 14.

The Court entered an Order Approving Bidding Procedures for Salacia, LLC and Form of Notice on June 27, 2025 [Doc# 407] (the "***Bid Procedures Order***"). The Bid Procedures Order approved a bid schedule (the "Bid Schedule") set forth in Exhibit A to the Motion to Approve Bidding Procedures and Form of Notice [Doc# No. 381] (the "***Bid Procedures Motion***"). The Bid Schedule is as follows:

| Event | Date/Deadline |
|---|---|
| File and Serve Notice of Bidding Procedures | Two business days following entry of the order approving Notice of Bidding Procedures and Bidding Procedures |
| Indication of Interest and/or Stalking Horse Bid Deadline (the "Initial Deadline") | Thursday June 19, 2025 at 5:00 p.m. Alaska Time |
| File and Serve Notice of Selection of Stalking Horse Bid (if applicable) and/or Auction Notice ("Stalking Horse Designation Deadline") | Thursday July 3, 2025 at 5:00 p.m. Alaska Time |
| Deadline for Submission of Materials to become a Qualified Bidder ("Qualified Bid Deadline") | Thursday August 7, 2025 at 5:00 p.m. Alaska Time |
| Auction (if necessary) | Thursday August 14, 2025 at 12:00 p.m. Alaska Time |
| File and Serve Sale Notice and Motion (if necessary) | No later than Monday August 21, 2025 at 5:00 p.m. Alaska Time |

---

[5] Hilco was previously engaged in the more difficult task of finding a refinancing or equity partner.

ALEKSEY N. KOZLOV'S RESPONSE TO CATHAY'S MOTION FOR PLAN ADMINISTRATOR TO ASSUME RESPONSIBILITY FOR SALACIA MARKETING AND SALE PROCESS

5

129695424.3 0083694-00002

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA  98101
Main 206.624.0900   Fax 206.386.7500

| Event | Date/Deadline |
|---|---|
| Sale Hearing (if necessary) (subject to the Court's availability) | Not less than 7 (seven) days after the date of the Notice of Hearing on Sale Motion subject to the Court's availability |
| Sale Close | As soon as practical after entry of the Sale Order. |

Hilco has let 2 important Bid Schedules deadlines pass with **_zero offers_**: the Initial Deadline of June 19 and the Stalking Horse Designation Deadline of July 3, 2025. The next significant deadline, on Thursday, August 7, 2025, is the very important Qualified Bid Deadline. Mr. Kozlov would prefer that Cathay Bank had not forced him to publicly air the problems with the sale process until at least the August 7 Qualified Bid Deadline, but Mr. Kozlov must respond to the Motion. *Id.*, ¶ 15.

If Mr. Kozlov remains in charge of the process, if there are no Qualified Bids in a reasonable range and no grounds for optimism that they will be brought higher through the Auction process, then Mr. Kozlov plans to terminate Hilco's engagement following August 7. *Id.*. Now Hilco is saying they need more time and want the Qualified Bid Deadline extended to August 25, 2025. *Id.*, ¶ 16.

The Salacia assets consist of the following buckets:

1. New, never-used equipment, appraised by James G. Murphy, Inc. at $11,097,800 as of December 2, 2024. *See* Declaration of Colin Murphy filed December 10, 2024 [Doc. 228].

2. The main 108,672 square-foot building and underlying real property, appraised by Kidder Matthews, in conjunction with the excess land owned by Salacia, at $37,000,000 as of September 30, 2024. *See* Declaration of David M. Chudzik filed December 10, 2024 [Doc. 227], at 11 of 138.

3. Four other lots on the premises, with an estimated $8,270,000 combined value per the Kidder Matthews Appraisal. *Id.*, at 83 of 138. These lots may be desirable to a potential buyer of the main building, but they can also be sold separately as developable lots for value.

**STOEL RIVES LLP**
600 University Street, Suite 3600, Seattle, WA 98101
*Main 206.624.0900   Fax 206.386.7500*

ALEKSEY N. KOZLOV'S RESPONSE TO CATHAY'S MOTION FOR PLAN ADMINISTRATOR TO ASSUME RESPONSIBILITY FOR SALACIA MARKETING AND SALE PROCESS
6

129695424.3 0083694-00002

Mr. Kozlov has a draft brokerage agreement with the leading broker for commercial properties in Snohomish County, which would list the property as a package for not less than $40,000,000, including all lots and equipment; or individually at not less than $30,000,000 ($300 per square foot) for tax parcel number 31053300400700, plus not less than $4,000,000 for tax parcel number 30050400101002500 and $3,500,000 for tax parcel numbers 31053300400900, 31053300400500, 31053300400400. Mr. Kozlov believes that the best strategy to maximize value is to sell the equipment, the main building, and other 4 lots separately, to take advantage of the needs of 3 or 4 unique buyers, rather than saddling a buyer with equipment or land that they do not need or want and for which they are unwilling to pay full market value. *Id.*, ¶ 17.

### (C) Alleged Prohibition of Tour

The Bank's Motion misstates the facts. The "Salacia Tour" referred to in the Motion is for Company "B," who previously toured Whittier twice but, as far as Hilco relayed to the Debtor, never made any bid. Company B, at Hilco's request, viewed the Whittier Seafood Plant without Hilco's participation. Kozlov repeatedly received such requests from Hilco for the Whittier plant workers to do a tour without Hilco. *Id.*, ¶ 18. Company B has a reputation in the industry of looking for "deals" or, less charitably, being a "bottom feeder." Mr. Kozlov expects that if they bid at all on Salacia, they will bid for 20% of the value, similar to the "highest" bids for Whittier. Salacia's staff and Debtors' counsel Ms. Bohleber attended the tour and were available to answer questions. There was no reason for the broker to come. As far as relayed to the Debtors, Hilco has not received any offer from Company B. *Id.*, ¶ 19.

### (D) Alleged Prohibition of Contacting Potential Buyer

The Bank's recitation regarding Hilco's non-communications with a prospective buyer are also misleading. This party, "Company C" is a large player in the Alaska Seafood industry. Debtor Marine Fishing International has been selling them crabmeat since 1999. Debtor Salacia hired several former employees of Company C to work on building out the Salacia plant. One former employee of both Company C and Salacia was asked by another employee of Company C if Company C could tour the Salacia facility. This employee of Company C reached out to

ALEKSEY N. KOZLOV'S RESPONSE TO CATHAY'S MOTION FOR PLAN ADMINISTRATOR TO ASSUME
RESPONSIBILITY FOR SALACIA MARKETING AND SALE PROCESS
7

129695424.3 0083694-00002

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main 206.624.0900   Fax 206.386.7500

Salacia; Mr. Kozlov attended a tour on May 1, 2025. The feedback from Company C was that they might have an interest in the facility, but management was occupied with the fishing season through the Summer and they want to think about it no earlier than September. *Id.*, ¶ 20.

Furthermore, Mr. Kozlov never said that Hilco could not contact them. He said that he had talked with them and they had limited interest prior to September. Hilco's own tracking spreadsheet shows that Hilco reached out to Company C and received a positive response from them on May 21, 2025. What, if anything, Hilco did to follow up on this interest is up to Hilco. *Id.*, ¶ 21.

### (E) Suggested Path Forward

**Time is of the essence** to change course in the sale process. Interest is accruing at over $250,000 per month. Professional fees and carrying costs to preserve the Salacia property are also accruing. Mr. Kozlov faces timelines in his personal case for sales of his properties that were set with the expectation that Hilco would have a buyer for the Salacia property at an acceptable price by early August.

Hilco has been unsuccessful in finding a strategic buyer that would take on the costs (estimated at $30 million) and time involved in finishing the construction to make the plant operational. This is not a "turnkey" plant. Mr. Kozlov believes that the best course of action is to pivot to (1) liquidating the equipment through a broker or auctioneer experienced in selling such equipment and/or through a repurchase agreement at a discount with the manufacturers/vendors who sold the equipment to Salacia, and (2) engaging a leading Snohomish County broker specially in industrial real estate to sell the real estate in 1 to 3 parcels.

Mr. Kozlov has been wanting to terminate Hilco for more than one month, but was convinced by counsel to let them stay on until all parties can see what happens at the August 7 Qualified Bid Deadline, which Hilco suddenly wants to push out to August 25. Mr. Kozlov suggests that, if the Court is inclined to do anything but simply deny the Motion, the Court continue the hearing and hold a status conference on the sale process after the August 7 deadline. Mr. Kozlov has a right to maintain the power to terminate Hilco and obtain a separate

ALEKSEY N. KOZLOV'S RESPONSE TO CATHAY'S MOTION FOR PLAN ADMINISTRATOR TO ASSUME RESPONSIBILITY FOR SALACIA MARKETING AND SALE PROCESS

8

129695424.3 0083694-00002

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main 206.624.0900   Fax 206.386.7500

local/regional industrial real estate broker and an equipment broker/auctioneer to move the sale process forward.

## I. CONCLUSION

WHEREFORE, for the reasons set forth above, Mr. Kozlov requests that the Court deny the Motion.

DATED: August 4, 2025

STOEL RIVES LLP

*/s/ John S. Kaplan*
JOHN S. KAPLAN (*Admitted Pro Hac Vice*)
john.kaplan@stoel.com
*Attorneys for Aleksey N. Kozlov*

**STOEL RIVES LLP**
600 University Street, Suite 3600, Seattle, WA 98101
*Main 206.624.0900   Fax 206.386.7500*

ALEKSEY N. KOZLOV'S RESPONSE TO CATHAY'S MOTION FOR PLAN ADMINISTRATOR TO ASSUME RESPONSIBILITY FOR SALACIA MARKETING AND SALE PROCESS
9

129695424.3 0083694-00002

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 4, 2025, a true and correct copy of the attached document was served by electronic means through the ECF system as indicated on the Notice of Electronic Filing.

DATED: August 4, 2025

*/s/ John S. Kaplan*
John S. Kaplan

**STOEL RIVES LLP**
600 University Street, Suite 3600, Seattle, WA 98101
*Main 206.624.0900   Fax 206.386.7500*