JOHN S. KAPLAN (*Admitted Pro Hac Vice*)
john.kaplan@stoel.com
JAMES E. TORGERSON, Bar No. 8509120
jim.torgerson@stoel.com
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA  98101
Telephone:  206.624.0900
*Attorneys for Aleksey N. Kozlov*

The Honorable Gary Spraker

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re<br><br>WHITTIER SEAFOOD, LLC et al.,[1]<br><br>Debtor. | Case No. 24-00139<br><br>Chapter 11<br><br>**ALEKSEY N. KOZLOV'S DECLARATION IN SUPPORT OF RESPONSE TO CATHAY'S MOTION FOR PLAN ADMINISTRATOR TO ASSUME RESPONSIBILITY FOR SALACIA MARKETING AND SALE PROCESS** |

I, Aleksey N. Kozlov, declares and states as follows:

1. I am over the age of 18 and competent to testify to the matters herein.  I have this declaration based on my own personal knowledge of the matters stated herein, unless indicated otherwise.

2. I make this declaration in support of *Aleksey N. Kozlov's Response to Cathay's Motion for Plan Administrator to Assume Responsibility for Salacia Marketing and Sale Process*.

3. I acknowledge that I caused the sale of the sweeper and miscellaneous small equipment.  The lack of money forced me to sell two very old and unnecessary spiral freezers, a

---

[1] The Debtors are Marine Fishing International, Inc., Case No. 24-00140; Marine Fishing International, LLC, Case No. 24-00141; Modys, LLC, Case No. 24-00142; Salacia, LLC, Case No. 24-00143; Silver Wave, LLC, Case No. 24-00144; and Whittier Seafood, LLC.

ALEKSEY N. KOZLOV'S DECLARATION IN SUPPORT OF RESPONSE TO CATHAY'S MOTION FOR PLAN ADMINISTRATOR TO ASSUME RESPONSIBILITY FOR SALACIA MARKETING AND SALE PROCESS

1

129747923.1 0083694-00002

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main 206.624.0900   Fax 206.386.7500

sweeper truck which had not been used since 2022, and 2 non-working vehicles. The sweeper truck was used only for cleaning the roads when construction soil was delivered to the lots. I felt he had no other choice to pay the necessary expenses to preserve the property of Whitter and Salacia.  The proceeds were all deposited into the Debtors' bank accounts, as shown on the monthly financial reports filed with the Court, and were used to pay for heat and snow removal from the roof at Whittier, security, gas, electricity water, constructing fencing, and otherwise maintaining both the Whittier and Salacia properties.

4. I apologize for not seeking court authority for these sales; I did what he thought was necessary to preserve his property worth more than $40 million, and from which all of the creditors in these cases are supposed to be paid.  At the time, Cathay Bank was unwilling to advance any funds to protect their collateral, and Hilco's efforts to find a DIP loan were not successful. Nevertheless, I managed to preserve the property of Whittier Seafood in good condition and transfer it to the buyer, creating value for the creditors.

5. The Salacia plant in Marysville requires daily monitoring and maintenance. In Fall and Winter, one of the main problems is related to the water level in the areas due to heavy rainfall. The Debtors must manually pump out water, because the systems are not yet operational. Twice a month, the city authorities check the saturation of the soil with water. After the checks, the Debtor usually receives recommendations on what needs to be done to prevent the earth from moving. The building is subject to regular inspections from the City.

6. In late Spring and Summer, the main problem is related to fires that occur constantly in the area. The Debtors need to monitor all fire hoses, clear the area of tall dry grass, adjacent trees, etc.  Fire control is carried out by city services on a regular basis, after which recommendations are usually given that must be implemented as soon as possible.

7. The Salacia team carries out daily work to maintain the plant in satisfactory condition and daytime security. At night, security is provided by a specialized company. All this requires funding every week, in cases of non-payment, the Debtors could have irreversible consequences that could lead to loss of the plant.

ALEKSEY N. KOZLOV'S DECLARATION IN SUPPORT OF RESPONSE TO CATHAY'S MOTION FOR PLAN ADMINISTRATOR TO ASSUME RESPONSIBILITY FOR SALACIA MARKETING AND SALE PROCESS

2

129747923.1 0083694-00002

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main 206.624.0900    Fax 206.386.7500

8. With respect to Whittier, the weather in Alaska creates problems in Fall, Winter, and Spring. Very low temperatures can lead to damage to buildings, roofs, equipment, various pipes, and cement floors. A large amount of snow can cause the roof to collapse under the weight of snow, which would damage all internal equipment. The City requires snow removal for firefighter access. The buildings must be heated, theft must be prevented, and the equipment must be monitored and kept in working order. In order to keep the property in satisfactory condition, there was an urgent need to pay people for work and to buy the necessary supplies, including gas, fuel, and electricity.

9. The Debtors engaged Hilco in October, 2024, at the recommendation of Debtors' counsel, to provide various investment banking services. Hilco expressed confidence that they could obtain a DIP loan for the Debtors to bridge the necessary expenses of preserving the property up to a sale date. For months, they told me they were confident that they would find a DIP loan. In the interim, the Debtors' spent down their available cash. The Debtors were not told until February, 2025 that Hilco likely could not find a DIP lender.

10. Hilco was also engaged to find a buyer for Whittier Seafoods. After a months' long process, Hilco told the Debtors that the best offer, from "Company A[2]," was for $900,000. This offer was a ridiculously low offer given even the liquidation value of the Whittier assets.

11. I located the buyer, CMCC, who closed a sale for $4.6 million during the week of July 28, 2025. This was a Chinese buyer with whom I and certain of the Debtors had previously done business.

12. When the Chinese buyer first made a $4.4 million offer, I was instructed by counsel to turn the buyer over to Hilco to negotiate the final sale terms. Weeks later, Hilco informed the Debtors that the buyer had buyer's remorse and was backing out of the deal. I then re-engaged in conversations with the buyer, leading to the sale that closed last week.

---

[2] Names of specific bidders are not being used to protect confidentiality.

ALEKSEY N. KOZLOV'S DECLARATION IN SUPPORT OF RESPONSE TO CATHAY'S MOTION FOR PLAN ADMINISTRATOR TO ASSUME RESPONSIBILITY FOR SALACIA MARKETING AND SALE PROCESS

3

129747923.1 0083694-00002

*STOEL RIVES LLP*
*600 University Street, Suite 3600, Seattle, WA 98101*
*Main 206.624.0900   Fax 206.386.7500*

13. I spent many nights on the phone with China in order to close this deal. The Debtors and I, as indirect equity owner and guarantor, have lost over a million dollars in additional interest and attorneys' fees between April and funding on July 29, 2025. After losing the deal with the Chinese buyer, Hilco no longer tried to sell Whittier Seafood, and did not report weekly on finding potential buyers for Whittier Seafood. Since April 2025, I was left alone, without Hilco's support, and continued to work alone through the successful sale of Whittier Seafoods' assets.

14. Starting in March, 2025, Hilco began its efforts to sell the Salacia plant and equipment. The process generally involved preparing marketing materials and sending out emails to various potential bidders. The Debtors, Cathay Bank, the Whittier Committee, and I receive weekly updates from Hilco showing who was contacted and who has expressed an interest, signed an NDA, accessed the data room, and/or requested a tour of the facility.

15. Hilco has let 2 important Bid Schedule deadlines pass with zero offers: the Initial Deadline of June 19 and the Stalking Horse Designation Deadline of July 3, 2025. The next significant deadline, on Thursday, August 7, 2025, is the very important Qualified Bid Deadline. I would prefer that Cathay Bank had not forced me to publicly air the problems with the sale process until at least the August 7 Qualified Bid Deadline. If I remain in charge of the process, if there are no Qualified Bids in a reasonable range and no grounds for optimism that they will be brought higher through the Auction process, then I plan to terminate Hilco's engagement following August 7.

16. I heard for the first time last week that Hilco now says they need more time and want the Qualified Bid Deadline extended to August 25, 2025.

17. I have a draft brokerage agreement with the leading broker for commercial properties in Snohomish County, which would list the property as a package for not less than $40,000,000, including all lots and equipment; or individually at not less than $30,000,000 ($300 per square foot) for tax parcel number 31053300400700, plus not less than $4,000,000 for tax parcel number 30050400101102500 and $3,500,000 for tax parcel numbers 31053300400900,

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main 206.624.0900   Fax 206.386.7500

ALEKSEY N. KOZLOV'S DECLARATION IN SUPPORT OF RESPONSE TO CATHAY'S MOTION FOR PLAN ADMINISTRATOR TO ASSUME RESPONSIBILITY FOR SALACIA MARKETING AND SALE PROCESS

4

129747923.1 0083694-00002

31053300400500, 31053300400400.  I believe the best strategy to maximize value is to sell the equipment, the main building, and other lots separately, to take advantage of the needs of 3 or 4 unique buyers, rather than saddling a buyer with equipment or land that they do not need or want and for which they are unwilling to pay full market value.

18. The Bank's Motion misstates the facts.  The "Salacia Tour" referred to in the Motion is for Company "B," who previously toured Whittier twice but, as far as I was informed by Hilco, never made any bid.  Company B, at Hilco's request, viewed the Whittier Seafood Plant without Hilco's participation. I repeatedly received such requests from Hilco for the Whittier plant workers to do a tour without Hilco.

19. Company B has a reputation in the industry of looking for "deals" or, less charitably, being a "bottom feeder." I expect that if they bid at all on Salacia, they will bid for 20% of the value, similar to the "highest" bids for Whittier.  Salacia's staff and Debtors' counsel Lesley Bohleber attended the tour and were available to answer questions.  There was no reason for the broker to come. As far as relayed to the Debtors, Hilco has not received any offer from Company B.

20. The Bank's recitation regarding Hilco's non-communications with a prospective buyer are also misleading. This party, "Company C" is a large player in the Alaska Seafood industry.  Debtor Marine Fishing International has been selling them crabmeat since 1999. Debtor Salacia hired several former employees of Company C to work on building out the Salacia plant.  One former employee of both Company C and Salacia was asked by another employee of Company C if Company C could tour the Salacia facility.  This employee of Company C reached out to Salacia; I attended a tour on May 1, 2025.  The feedback from Company C was that they might have an interest, but management was occupied with the fishing season through the Summer and they would not think about a transaction until September.

21. Furthermore, I never said that Hilco could not contact Company C.  I said that I had talked with them and they had limited interest prior to September.  Hilco's own tracking

ALEKSEY N. KOZLOV'S DECLARATION IN SUPPORT OF RESPONSE TO CATHAY'S MOTION FOR PLAN ADMINISTRATOR TO ASSUME RESPONSIBILITY FOR SALACIA MARKETING AND SALE PROCESS

5

129747923.1 0083694-00002

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main 206.624.0900   Fax 206.386.7500

spreadsheet shows that Hilco reached out to Company C and received a positive response from them on May 21, 2025.  What, if anything, Hilco did to follow up on this interest is up to Hilco.

///

///

///

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA  98101
Main 206.624.0900    Fax 206.386.7500

ALEKSEY N. KOZLOV'S DECLARATION IN SUPPORT OF RESPONSE TO CATHAY'S MOTION FOR PLAN ADMINISTRATOR TO ASSUME RESPONSIBILITY FOR SALACIA MARKETING AND SALE PROCESS

6

129747923.1 0083694-00002

I declare under penalty of perjury that the foregoing is true and correct.

SIGNED this 4 day of August, 2025, at Bellevue, Washington.

_____
Aleksey N. Kozlov

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main 206.624.0900   Fax 206.386.7500

ALEKSEY N. KOZLOV'S DECLARATION IN SUPPORT OF RESPONSE TO CATHAY'S MOTION FOR PLAN ADMINISTRATOR TO ASSUME RESPONSIBILITY FOR SALACIA MARKETING AND SALE PROCESS

7

129747923.1 0083694-00002

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 4, 2025, a true and correct copy of the attached document was served by electronic means through the ECF system as indicated on the Notice of Electronic Filing.

DATED: August 4, 2025

*/s/ John S. Kaplan*
John S. Kaplan