JOHN S. KAPLAN (*Admitted Pro Hac Vice*)     The Honorable Gary Spraker
john.kaplan@stoel.com
JAMES E. TORGERSON, Bar No. 8509120
jim.torgerson@stoel.com
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: 206.624.0900
*Attorneys for Aleksey N. Kozlov*

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main 206.624.0900  Fax 206.386.7500

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re<br><br>WHITTIER SEAFOOD, LLC et al.,[1]<br><br>          Debtor. | Case No. 24-00139<br><br>Chapter 11<br><br>**ALEKSEY N. KOZLOV'S SUPPLEMENTAL DECLARATION IN SUPPORT OF RESPONSE TO CATHAY'S MOTION FOR PLAN ADMINISTRATOR TO ASSUME RESPONSIBILITY FOR SALACIA MARKETING AND SALE PROCESS** |

I, Aleksey N. Kozlov, declares and states as follows:

1.      I am over the age of 18 and competent to testify to the matters herein. I have this declaration based on my own personal knowledge of the matters stated herein, unless indicated otherwise.

2.      I make this supplemental declaration in support of *Aleksey N. Kozlov's Response to Cathay's Motion for Plan Administrator to Assume Responsibility for Salacia Marketing and Sale Process* and to inform the Court of recent events.

3.      On August 4, 2025, I terminated the Debtors' engagement with Hilco. Attached hereto as <u>Exhibit A</u> is a true and correct copy of the email I sent to Hilco.

---

[1] The Debtors are Marine Fishing International, Inc., Case No. 24-00140; Marine Fishing International, LLC, Case No. 24-00141; Modys, LLC, Case No. 24-00142; Salacia, LLC, Case No. 24-00143; Silver Wave, LLC, Case No. 24-00144; and Whittier Seafood, LLC.

ALEKSEY N. KOZLOV'S SUPPLEMENTAL DECLARATION IN SUPPORT OF RESPONSE TO CATHAY'S MOTION FOR PLAN ADMINISTRATOR TO ASSUME RESPONSIBILITY FOR SALACIA MARKETING AND SALE PROCESS

1

150019717.1 0083694-00002

4. On August 4, 2025, I signed an Exclusive Listing Agreement – Sale with Kidder Mathews on behalf of the Debtors for the Salacia property. Attached hereto as <u>Exhibit B</u> is a true and correct copy of the Listing Agreement.

5. On August 4, 2025, I terminated the engagement of Bush Kornfeld LLP as counsel for the Debtors. Attached hereto as <u>Exhibit C</u> is a true and correct copy of the email I sent to Bush Kornfeld LLP. I respectfully request that the hearing be continued for at least 10 business days to locate a new attorney for the Debtors.

I declare under penalty of perjury that the foregoing is true and correct.

SIGNED this 5th day of August, 2025, at Bellevue, Washington.

_____
Aleksey N. Kozlov

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main 206.624.0900    Fax 206.386.7500

ALEKSEY N. KOZLOV'S SUPPLEMENTAL DECLARATION IN SUPPORT OF RESPONSE TO CATHAY'S MOTION FOR PLAN ADMINISTRATOR TO ASSUME RESPONSIBILITY FOR SALACIA MARKETING AND SALE PROCESS

2

150019717.1 0083694-00002

**From:** Aleksey Kozlov <alekseyk@marinefishingint.com>
**Sent:** Monday, August 4, 2025 4:26 PM
**To:** Stratton, Teri <tstratton@hilcocf.com>
**Subject:** Termination of Engagement Agreement

**Teri**

On behalf of Whittier Seafood, LLC ("Whittier") as the lead debtor, and certain of its affiliates Marine Fishing International, Inc. ("MFI Inc."); Salacia, LLC ("Salacia"); and Silver Wave, LLC ("Silver Wave") (each, a "Debtor" and collectively, the "Debtors"), pursuant to Paragraph 3 of that certain engagement agreement dated as of October 17, 2024 with the Debtors (the "Agreement"), I hereby terminate the Agreement effectively immediately.

Thank you for your services to date, Aleksey Kozlov

1

**Exhibit A - Page 1 of 1**

# EXCLUSIVE LISTING AGREEMENT - SALE

This is an agreement dated <u>August 4, 2025</u> between KIDDER MATHEWS (hereinafter referred to as "Broker"), and <u>Salacia LLC</u> (hereinafter referred to as ("Owner") whereby the Owner grants to Broker the exclusive right to act as agent of Owner for the limited purpose of offering the real property situated in the City of <u>Marysville</u>, County of <u>Snohomish</u>, State of <u>Washington</u> commonly known as and legally described as <u>parcel numbers 31053300403000, 31053300400400, 31053300400500, 31053300400900, 30050400102500 & 31053300400700 (building)</u> located at 14101 45th Ave NE, and equipment for sale to interested parties. This Agreement shall commence <u>July 9, 2025,</u> and end at midnight <u>October 15, 2025,</u> and shall thereafter automatically renew for consecutive thirty (30) day terms unless cancelled by either party by providing ten (10) day written notice to the other party, and shall be subject to the following terms and conditions:

1. **Sales Price.** The sale price of the property shall be not less than $40,000,000, including all lots and equipment; or not less than $30,000,000 ($300 per square foot) for tax parcel number 31053300400700, plus not less than $4,000,000 for tax parcel number 30050400101102500 and $3,500,000 for tax parcel numbers 31053300400900, 31053300400500, 31053300400400 or a price agreed upon by owner, which shall be paid in full at closing.

2. **Offers.** Broker shall use its best efforts to actively market the Property and to solicit potential buyers to purchase the Property. Broker agrees to submit all offers for Owner's consideration unless Owner directs otherwise. Owner agrees to cooperate with Broker in Broker's efforts to bring about a sale of the Property, provided such efforts are in accordance with the terms of this Agreement. Any deposit or earnest money from a prospective purchaser shall be held in escrow by a neutral third party and in accordance with the terms of the purchase and sale agreement executed by Owner and buyer.

3. **Commission.** In consideration for Broker's agreements to list the Property and to diligently seek to sell it, Owner agrees that, if Broker earns a commission in accordance with the terms of Paragraph 3A or 3B, the amount of the commission, the total commission (including the outside broker representing the Buyer) shall be Two Percent (2%) of the sale price of the property including the development lots, if sold in one transaction. In the event the north development lot (tax parcel number 30050400101102500) and/or the south development lot (tax parcel numbers 31053300400900, 31053300400500 and 31053300400400) are sold separately from the facility (tax parcel number 31053300400700), the amount of the commission paid at closing for each of these lots shall be 4% of the purchase price, paid in full at closing, which includes a commission paid to the Buyer's broker (if applicable). It is understood that the commission for tax parcel number 31053300400700 (facility) in including equipment shall be 2% (including the outside broker representing the Buyer) of the sales price, paid out of escrow at closing.

This commission shall be earned by and paid to Broker by Owner upon the happening of any of the following, on the following conditions:

    A. If during the term of this Agreement or any extension thereof:

    (2) a purchaser is procured who is ready and willing to purchase the Property at the price and on the terms stated above, or on any other price and terms agreed to by Owner.

    B. If, within three (3) months after the expiration of the original or any extension term of this Agreement, Owner enters into any agreement to sell the Property to any party or through any broker with whom Broker has negotiated (either directly or through another broker or agent) or to whom the Property has been submitted by Broker or Owner prior to the expiration of this Agreement (including any extension

**Exhibit B - Page 1 of 4**

or renewal term), Broker hereby agrees to submit to Owner upon or shortly after the expiration of the original or any extension term of this Agreement a list of all such parties. A "party" is hereby to include all partners in a partnership and, in the case of a corporation, all officers, directors, shareholders (provided that there are ten or fewer), and related corporations.

C. As used in this Agreement, the term "sale" shall include: (a) an exchange of the Property; and (b) a contribution or conveyance of the Property or an interest therein to any entity, or the transfer of an interest in an entity which has an ownership interest in the Property in lieu of a sale of the Property, in which cases the Commission shall be ½ of the amount set forth in the first paragraph in Section 3 for the first sixty (60) days after mutual execution of this Exclusive Listing Agreement. Owner agrees that in the event an option to purchase the Property is granted to a prospective purchaser procured by Broker, Owner shall pay Broker the full commission called for above whenever the option is ultimately exercised.

E. If, during the term of this Agreement or any extension hereof, Owner removes the Property from the market or the Property is made unmarketable by Owner's voluntary action, Owner shall (1) reimburse Broker for all of Broker's out-of-pocket expenses incurred in Broker's efforts to sell the Property in a cumulative amount not to exceed Thirty Thousand Dollars ($30,000).

4. Signs. Broker shall have the exclusive right to place one or more signs on the Property and to advertise the Property in any other reasonable manner.

5. Attorneys' Fees. If either party employs an attorney to enforce any of the terms of this Agreement, and is successful either in whole or in part, whether by trial or otherwise, the non-prevailing party agrees to pay the reasonable attorneys' fees and costs incurred by the prevailing party.

6. Warranties of Owner. Owner warrants:

A. That Owner is the Owner of record of the Property and that Owner has the legal authority to execute this Agreement and any agreement to sell the Property;

B. Subject to the liens and encumbrances which must be paid from a sale of the Property pursuant to the Fourth Amended Joint Plan of Reorganization confirmed in jointly administered case no. No. 24-00139-GS in the U.S. Bankruptcy Court for the District of Alaska that the Property is free of any encumbrances which would interfere with Owner's right to convey the Property; and

C. That no person or entity having an ownership interest in the Property is a foreign person as defined in the Foreign Investment and Real Property Tax Act.

7. Indemnification. Owner hereby agrees to defend and to indemnify and hold Broker harmless from any and all claims, causes of action, damages, and expenses (including attorneys' fees incurred with or without litigation and on appeal) arising from or in any way related to any breach of the warranties contained in Paragraph 6 above.

8. Alternative Commission.

A. Owner hereby agrees that if a lease of the Property is entered into with any person or entity during the original or any extension term of this Agreement or to any person or entity described in Paragraph 3B above during the time period set forth in Paragraph 3B above, then Owner shall pay Broker a leasing commission at the time the Lease is fully executed in the amount of <u>Three</u> percent (3%) of the rents called for under the Lease.

**Exhibit B - Page 2 of 4**

B. If, during the term of this Agreement or any extension hereof, Owner grants an option to purchase the Property, Owner hereby agrees to pay Broker a sales commission in the amount called for above in Paragraph 3 whenever the option is ultimately exercised.

9. Agency. <u>**Owner acknowledges receipt of the pamphlet entitled REAL ESTATE BROKERAGE IN WASHINGTON PAMPHLET. Listing Firm and any of its Managing Brokers who supervise Listing Broker, including its Designated Broker (the Listing Firm's "Supervising Broker"), represent the Seller. Buyer Brokerage Firm and any of its Managing Brokers who supervise Buyer Broker, including its Designated Broker (the Buyer Brokerage Firm's Supervising Broker), represent the Buyer. If Listing Firm and Buyer Brokerage Firm are the same firm, then Seller and Buyer consent to any Supervising Broker who supervises both Listing Broker and Buyer Broker acting as a limited dual agent.**</u>

10. Documents. Owner hereby acknowledges being advised by Broker that any and all documents to be used in connection with any transaction should be reviewed and approved by Owner's attorney prior to execution by Owner.

11. Extension of Term. If (1) Owner accepts an offer to purchase, (2) the Property is removed from the market pending the closing of the sale, and (3) the Sale is not consummated, then the term of this Agreement shall be extended for a period of ninety (90) days.

12. Multiple Listing Service. Owner hereby authorizes Broker to submit this Listing to the Commercial Brokers Association ("CBA") for publication in CBA's multiple listing service.

13. Entire Agreement. This Agreement represents the entire agreement of the parties hereto. Neither Broker nor Owner is relying on any oral representation made by the other. This Agreement shall be binding upon the heirs, successors, and assignees of the parties hereto.

14. Additional Conditions:

1. If any of the additional land area is sold separately (parcel #'s <u>31053300403000, 31053300400400, 31053300400500, 31053300400900, 30050400102500</u>), the brokerage fee shall be a market commission equal to four (4%) percent of the purchase price ((including the outside broker representing the Buyer) payable out of escrow upon closing of sale.

2. Exclusions: Simultaneous with the execution of this Exclusive Listing Agreement, Seller shall identify and list all entities that Seller and/or Hilco has actively engaged in discussions regarding the Property. Within 60 days after mutual execution of this Exclusive Listing Agreement, should any of the listed entities execute a mutually agreed upon Purchase and Sale Agreement to purchase the property, Kidder Mathews' commission shall be reduced by 50%, which will be equal to 1% of the sale price, paid out of escrow at closing. This exclusionary period shall expire 60 days after mutual execution of this Exclusive Listing Agreement.

| BROKER | OWNER |
|---|---|
| KIDDER MATHEWS | SALACIA LLC |
| SIGNATURE: _____ | SIGNATURE: _____ |
| TITLE: EVP | TITLE: Authorized Representative |
| DATE: 8-4-25 | DATE: 08/04/2025 |

Agent(s) Assigned to this Listing: **Matthew P. Henn & Matthew Hagen**

5:07pm Pacific Time.

**From:** Aleksey Kozlov <alekseyk@marinefishingint.com>
**Sent:** Monday, August 4, 2025 4:19 PM
**To:** Jim Day <jday@bskd.com>
**Subject:** New Attorney

Jim

As you know, the communication between us has broken down and Salacia, Whittier Seafood, Silver Wave, Modus, MFI Inc and MFI LLC need an advocate for the ongoing bankruptcy issues. It is my understanding that you no longer wish to represent Salacia or any other entities. So the entities need to hire a new attorney

Thank you, Aleksey

1

Exhibit C - Page 1 of 1

CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on August 5, 2025, a true and correct copy of the attached document was served by electronic means through the ECF system as indicated on the Notice of Electronic Filing.

      DATED: August 5, 2025

      */s/ John S. Kaplan*
      John S. Kaplan

**STOEL RIVES LLP**
600 University Street, Suite 3600, Seattle, WA 98101
*Main 206.624.0900    Fax 206.386.7500*

CERTIFICATE OF SERVICE

150019717.1 0083694-00002