FILED
2025 JUL 07 03:51 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 24-2-08809-1 SEA

Hon. Karen Donohue
July 11, 2025
*ORAL ARGUMENT REQUESTED*

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION, a national banking association, in its capacity as Agent, <br><br> Petitioner, <br><br> v. <br><br> NORTHWEST FISH COMPANY, LLC, a Washington corporation; PETER PAN SEAFOOD COMPANY, LLC, an Alaska limited liability company; ALASKA FISH HOLDINGS, LLC, a Delaware limited liability company; and RAYMOND MACHINE SHOP, LLC, a Washington limited liability company, <br><br> Respondents. | Case No. 24-2-08809-1 SEA <br><br> JOHN KETCHAM'S, RRG GLOBAL PARTNERS PISCES LP'S, AND NIF SEAFOOD LENDER, LLC'S OBJECTION TO MOTION OF HILCO CORPORATE FINANCE, LLC, AS INVESTMENT BANKER TO THE RECEIVER, FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES <br><br><br> ORAL ARGUMENT REQUESTED |

John Ketcham ("Ketcham"), RRG Global Partners Pisces LP ("RRG"), and NIF Seafood Lender, LLC ("NIF") hereby submit this Objection to the Motion of Hilco Corporate Finance, LLC, as Investment Banker to the Receiver, for Allowance and Payment of Compensation and Reimbursement of Expenses ("Compensation Motion"), filed on June 27, 2025.

A.    **Introduction and Relief Requested**

Hilco seeks more than $1.2 million, which, if approved, will result in cumulative accrued administrative expenses totaling roughly $6 million (and counting). To this day, though, not a shred of evidence has been presented that could support a determination that Hilco's efforts

OBJECTION TO HILCO CORPORATE FINANCE'S MOTION - 1

Snell & Wilmer
600 University Street, Suite 310
Seattle, Washington 98101-3122
206.741.1420

1 produced any value for any creditor in this proceeding. There is, literally, no evidence in the record

2 that any asset was sold for more than it could have been sold for the day the Receiver was

3 appointed, or that a single meaningful bid was elicited as a result of Hilco's efforts. It was always

4 a certainty that Peter Pan's assets would sell for enough to satisfy Petitioner's debt. Trumpeting

5 having done so as the measure of Hilco's success is remarkably tone deaf to the devastation felt

6 by the hundreds of creditors who, collectively, stand to lose tens of millions of dollars because the

7 Receiver and its professionals rushed to orchestrate a deeply flawed sale process designed to clear

8 the lowest hurdle possible, and proceeded to tilt the playing field in their favor at every opportunity

9 to ensure they are paid millions of dollars in contravention of black-letter lien priority principles.

10 Hilco then rubbed salt in the wound of those creditors by providing less than half the amount of

11 notice to which creditors are statutorily entitled. Hilco's motion should be denied.

12     **B.**    <u>**Statement of Facts**</u>

13     The facts supporting this Objection are set forth in Ketcham, RRG, and NIF's Motion for

14 Disallowance of Compensation [Dkt. 372] and their Reply in Support of Motion for Disallowance

15 [Dkt. 434], both of which are attached for ease of reference as Appendices A and B, respectively.

16     **C.**    <u>**Argument**</u>

17         **1.**    **Hilco's Motion Violates RCW 7.60.190(6) and Must be Re-noted**

18     RCW 7.60.190(6) required Hilco to provide at least 30 days' notice of its motion. The

19 statute provides:

20     (6) Persons on the master mailing list are **<u>entitled to not less than thirty</u>**
21     **<u>days' written notice</u>** of the hearing of any motion or other proceeding
    involving any proposed:

22         (a) Allowance or disallowance of any claim or claims;

23         (b) Abandonment, disposition, or distribution of estate property,
    other than an emergency disposition of property subject to eroding
    value or a disposition of property in the ordinary course of business;

24     …

25     (d) **<u>Compensation of the receiver or any professional employed</u>**
    **<u>by the receiver</u>**…

26 RCW 7.60.190(6) (emphasis added).

OBJECTION TO HILCO CORPORATE FINANCE'S MOTION - 2

1  RCW 7.60.190(6) is plainly applicable, since Hilco's motion involves allowance of its

2  claim for administrative expenses, distribution of estate property to pay those administrative

3  expenses, *and* compensation of a professional employed by the Receiver. Yet without even

4  acknowledging RCW 7.60.190(6), Hilco noted its motion on nine Court days' (and 14 calendar

5  days') notice. The Court's inquiry can, and should, end here. Hilco's motion should be denied, and

6  the Court should require that it be re-noted consistent with the notice requirements imposed by

7  RCW 7.60.190(6).[1]

8      **2.**    **Ketcham, RRG, and NIF Incorporate Their Prior Objections and Arguments**

9  Despite the passage of five months since denial of its initial request for compensation,

10  Hilco fails to offer any sort of new or compelling response to Ketcham's, RRG's, and NIF's central

11  arguments that (i) Hilco cannot demonstrate that *its* efforts produced any meaningful bids for Peter

12  Pan's assets, given that the only two bidders of substance would have bid for Peter Pan's assets

13  absent Hilco's involvement, (ii) the auction itself was fatally flawed, as evidenced by the lack of

14  meaningful bidding, the purchase price having been calibrated to a figure that bears no

15  resemblance to the assets' actual value, and the fact Rodger May's bid *decreased* at Hilco's

16  suggestion, and (iii) no one has ever introduced any evidence that the receivership estate realized

17  a single dollar more than it would have without Hilco's involvement. Hilco for all intents and

18  purposes continues to operate as if its employment was a coupon that can be redeemed irrespective

19  of whether it makes any showing of reasonableness. That is not the law in Washington. This Court

20  is obligated to evaluate the reasonableness of every fee request, particularly in an equitable

21  proceeding. *Berryman v. Metcalf*, 177 Wn. App. 644, 658, 312 P.3d 745 (2013) (courts must

22  "actively and independently confront the question" of whether fees are reasonable, and must make

23  specific findings that "explain the court's analysis"); *In re Halverson Tr.*, 2023 WL 1103202,

24

25  ---

[1] Hilco's disregard of RCW 7.60.190(6)'s mandate is far from harmless, and its effects are exacerbated by its having timed the filing of its motion in a way that requires responses to be filed the Monday following a holiday weekend.

26  Moreover, primary counsel for Ketcham, RRG, and NIF was out of the office June 30 through July 6, further hampering their ability to respond fulsomely. Rataezyk Decl. ¶ 2.

OBJECTION TO HILCO CORPORATE FINANCE'S MOTION - 3

Snell & Wilmer
600 University Street, Suite 310
Seattle, Washington 98101-3122
206.741.1420

2023 Wash. App. LEXIS 156 (Wash. Ct. App. Jan. 30, 2023) (findings in an equitable proceeding not bound by lodestar method, and must permit appellate court to "determine why the trial court awarded the amount in question").

Given the time constraints imposed by Hilco's failure to comply with RCW 7.60.190, Ketcham, RRG, and NIF hereby incorporate and reallege all of the arguments and evidence contained in their Motion for Disallowance of Compensation [Dkt. 372] and their Reply in Support of Motion for Disallowance [Dkt. 434].

### 3. Hilco's Reconstructed Time Records Should be Disregarded

To the extent the Court is inclined to rule on Hilco's motion despite Hilco's failure to afford the mandated amount of notice, the Court should reject Hilco's admittedly reconstructed time entries. Courts routinely deem reconstructed time records like Hilco's to be inherently unreliable. *In re Carter*, 2014 WL 4802919 *10 (Bankr. N.D.Ill. 2014) ("The use of reconstructed time entries is misleading and unprofessional."); *In re Julase Incorporated*, 2012 WL 13220145 *7 (Bankr. M.D.Fla. 2012) ("It is, and has been, the Court's experience that reconstructed time records are unreliable."); *Sanchez & Daniels v. Koresko & Assocs.*, 2006 WL 3240105 *15 (N.D. Ill. 2006) ("Koresko's reconstructed time records are completely unreliable as a basis for assessing the number of hours he expended representing S & D."); *In re Dawson*, 180 B.R. 478, 480 (Bankr. E.D.Tex. 1994) ("It is difficult for the Court to place much weight on time records created several months after the services were rendered.").

While Hilco asserts that it should not be required to submit time records at all (despite the Court having already determined that such records are required (see, Dkt. 452 ("Order Denying Compensation")), the provisions of RCW 7.60.180 apply to all professionals employed by the Receiver, including Hilco, and Hilco cites no provision of the Order approving Hilco's employment [Dkt. 186] or any Washington authority that excuses a professional seeking compensation from a receivership estate from the obligation to demonstrate the reasonableness of the requested compensation. There is no way to evaluate the reasonableness of Hilco's request to

Snell & Wilmer
600 University Street, Suite 310
Seattle, Washington 98101-3122
206.741.1420

be paid approximately $1.2 million without understanding how much time Hilco actually devoted to this matter. For example, had Hilco devoted only a few hundred hours, its requested compensation would be egregiously excessive on its face. That Hilco both assumed it was entitled to proceed under inapplicable provisions of the Bankruptcy Code and/or inapposite bankruptcy case law does not excuse Hilco's failure to comply with Washington law. Nor does Hilco's belated production of long (i.e., in many instances, more than a year) after-the-fact reconstructed time records reflecting purportedly having spent some 1900 hours coordinating a sales process that culminated in attracting precisely zero bidders who were not already, and obviously, interested in acquiring Peter Pan's assets immediately prior to Hilco's engagement change what matters here— that Hilco delivered no material value, let alone enough value to entitle it to $1.2 million.

### D. <u>Conclusion</u>

For the foregoing reasons, Hilco's motion should be denied.

Dated: July 7, 2025

I certify that this pleading contains 1330 words in accordance with local rules.

SNELL & WILMER L.L.P.

By:  *s/Josh A. Rataezyk*
    Josh A. Rataezyk, WSBA #33046
    Zachary A. Cooper, WSBA #53526
    600 University Street, Suite 310
    Seattle, WA 98101
    Tel: 206.741.1420
    Email: jrataezyk@swlaw.com;
    zcooper@swlaw.com

DUNCAN LAW P.S.

By:  *s/Bradley R. Duncan*
    Bradley R. Duncan, WSBA #36436
    PO Box 1620
    Coupeville, Washington 98239
    Tel: 206.305.4907
    Email: bduncan@bduncanlaw.com

Attorneys for Interested Parties
RRG Global Partners Pisces LP
NIF Seafood Holdings, LLC
NIF Seafood Lending, LLC
John Ketcham

4900-8803-7458

OBJECTION TO HILCO CORPORATE FINANCE'S MOTION - 5

Snell & Wilmer
600 University Street, Suite 310
Seattle, Washington 98101-3122
206.741.1420

Exhibit D - Page 5 of 26

# Appendix A

Ex Parte Commissioner
January 27, 2025
1:30 p.m.

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| WELL FARGO BANK, NATIONAL ASSOCIATION, a national banking association, in its capacity as Agent,<br><br>    Petitioner,<br><br>    v.<br><br>NORTHWEST FISH COMPANY, LLC, a Washington corporation; PETER PAN SEAFOOD COMPANY, LLC, an Alaska limited liability company, ALASKA FISH HOLDINGS, LLC, a Delaware limited liability company, and RAYMOND MACHINE SHOP, LLC, a Washington limited liability company,<br><br>    Respondents. | Case No. 24-2-08809-1 SEA<br><br>MOTION FOR DISALLOWANCE OF COMPENSATION RE: NOTICE OF INTENT TO COMPENSATE RECEIVER (SEPT/OCT), HILCO CORPORATE FINANCE AND RECEIVER'S COUNSEL (SEPT/OCT) |

John Ketcham ("**Ketcham**"), RRG Global Partners Pisces LP ("**RRG**"), and NIF Seafood Lender, LLC ("**NIF**") (collectively, "**Objecting Lienholders**") hereby object to and seek disallowance of the compensation sought in the *Notice of Intent to Compensate Receiver (Sept/Oct), Hilco Corporate Finance and Receiver's Counsel (Sept/Oct)* ("**NOIC**") filed on November 8, 2024, at Dkt. 316.[1]

---

[1] Objecting Lienholders have already delivered written objections to the NOIC in accordance with paragraph 12(b) of the Order Appointing Receiver, which was entered on April 25, 2024, at Dkt. 22 (the "**Appointment Order**"). Receiver has filed its own motion to allow compensation. While Receiver's motion has placed the compensation issue before the Court, Objecting Lienholders file this Motion in an abundance of caution to ensure Receiver and its professionals do not take the position that the written objection was "withdrawn" pursuant to paragraph 12(b) of the

MOTION FOR DISALLOWANCE OF COMPENSATION RE: NOTICE
OF INTENT TO COMPENSATE  - 1

Snell & Wilmer
600 University Street, Suite 310
Seattle, Washington 98101-3122
206.741.1420

4901-5512-2697

### A.  INTRODUCTION

This case was commenced on April 22, 2024. Dkt. 1 (Petition), and on April 24, 2024 Petitioner moved for Receiver's appointment. Dkt. 6 (Motion for appointment). The next day, this Court entered its appointment order. Dkt. 22 (Order Appointing Receiver). In the months leading up to Receiver's appointment, Respondents' principals had worked intensively to negotiate a sale of Respondents' assets to Silver Bay Seafoods ("**SBS**"). Declaration of Robert Gillam ("**Gillam Decl.**"), ¶ 2. SBS had conducted extensive due diligence and was intimately familiar with Respondents' assets at the time of Receiver's appointment. *Id*., ¶ 3. Indeed, SBS acquired one of Respondents' facilities within weeks of Receiver's appointment and had negotiated the terms of a purchase of—and was in the process of acquiring—the inventory Receiver ultimately sold to SBS in the summer of 2024. *Id*., ¶ 4. Stated differently, SBS had already been identified as a prospective purchaser as of Receiver's appointment, and was on the verge of consummating a purchase of substantially all of Respondents' assets on terms that would have achieved a better result for creditors than the one Receiver ultimately achieved in this proceeding. *Id*., ¶ 5.

Five months later, in mid-September, Receiver conducted an auction of the bulk of Peter Pan's assets ("**Auction**"). Only two bidders submitted "package" bids for Peter Pan's assets: SBS, an already identified prospective purchaser, and Rodger May, a Peter Pan insider and owner. While other bidders submitted unsuccessful bids for individual assets, there is no evidence in the record that any of the bidders participated in the Auction as a result of Receiver's or Hilco's efforts. Ultimately, Receiver managed the Auction into a two-horse race between an already identified bidder and an insider—hardly a picture of success, and one that replicated the bidding configuration that existed on day one of Receiver's appointment.

At no point has Receiver attempted to establish that the price paid for Respondents' assets during this proceeding reflects recovery of anything close to their actual value. There is literally

---

Appointment Order. The Objecting Lienholders will respond to the Receiver's motion in accordance with local rules.

MOTION FOR DISALLOWANCE OF COMPENSATION RE: NOTICE
OF INTENT TO COMPENSATE  - 2

Snell & Wilmer
600 University Street, Suite 310
Seattle, Washington 98101-3122
206.741.1420

no evidence in the record regarding sufficiency of price. In fact, to trumpet its purported "success," Receiver ignores the objective valuation evidence reflecting substantially higher values than those produced by the Auction. For example, in August 2021, BDO USA, LLC ("**BDO**") valued Peter Pan's real property assets at $61.8 million, with $21,705,000 of that amount attributable to the Port Moller Plant. Dkt. 231 (*Declaration of Robert Gillam*) ("**First Gillam Decl.**"), Ex. A. In May 2023, CBRE prepared an appraisal that valued Peter Pan's Port Moller Plant at $22,100,000 on an "as is" basis; at $17,700,000 on an "as is (go dark)" basis; and at $8,850,000 on a "liquidation value (6 months or less)" basis. First Gillam Decl., Ex. B. In late June *2024*, Hilco disseminated a one-page "teaser" titled "Peter Pan Seafoods: Asset Sale Announcement" ("**Hilco Teaser**"). Dkt. 228 (*Declaration of Josh A. Rataezyk*) ("**Rataezyk Decl.**"), Ex. E. The Hilco Teaser assigned a value of more than $63 million to Peter Pan's three processing facilities, $27.7 million of which was directly attributed to the Port Moller facility. *Id*. The basis for the values reflected in the Hilco Teaser were the appraisals prepared by CBRE in May 2023. First Gillam Decl., Ex. B. At the inception of the Auction, Hilco distributed a "Waterfall," which attributed a value of just under $14 million to the Port Moller Plant. Rataezyk Decl., ¶7. Finally, in April 2024, Peter Pan sold its processing facility located in Valdez, Alaska ("**Valdez Facility**"). First Gillam Decl., ¶ 2. The purchase price was more than two times the book value of the Valdez Facility. *Id*. The book value of Peter Pan's Port Moller facility is more than $28 million. *Id*., ¶3.

Against this backdrop, simply dumping assets at the Auction for an amount sufficient to pay Petitioner in full is not "success." The process and outcome here raise more questions than they answer, and unless, and until, Receiver presents competent evidence that (i) Hilco's involvement in fact provided value to the estate, and (ii) the price paid for Peter Pan's assets at least approximates their actual value, the Court cannot base its determination on the Receiver's and its professionals self-serving proclamations of success.

The measure of "success" should be the amount recovered by Receiver *in comparison to*

MOTION FOR DISALLOWANCE OF COMPENSATION RE: NOTICE
OF INTENT TO COMPENSATE  - 3

4901-5512-2697

**Exhibit D - Page 9 of 26**

Snell & Wilmer
600 University Street, Suite 310
Seattle, Washington 98101-3122
206.741.1420

*the actual value of the assets*. This is not a situation involving the pursuit of a money judgment. Recovery here was always a certainty. The only question was whether the process would be managed to a result that approached the actual values of Respondents' assets. It was not. Before this Court awards several million dollars in compensation, it must satisfy itself that Receiver and its professionals have established, via evidence, that they did more than manage a fire sale designed to serve the interests of Petitioner, and that the staggering expense of their involvement can be said to have produced value for creditors that corresponds, even loosely, to the actual value of the assets sold. To this point, they have not.

**B**.    **FACTUAL STATEMENT**

 **1.   The NOIC**

  On November 8, 2024, Receiver's counsel filed the NOIC seeking compensation for the months of September and October in the amount of $**2,349,279.60**, including $347,038.10 to Stapleton Group Inc. ("**Receiver**"), $1,446,548.64 to Hilco Corporate Finance ("**Hilco**"), and $555,692.92 to Schwabe Williamson & Wyatt P.C. ("**Schwabe**"). *See* Dkt. 316.

  These amounts are excessive and unreasonable, particularly when viewed in aggregate with prior compensation in the case. To date, Receiver and its professionals have sought compensation or reimbursement of the following amounts:

| | |
|---|---|
| Receiver: | $ 1,579,128.85 |
| Schwabe: | $ 1,424,517.20 |
| Hilco: | $ 1,446,548.64 |
| **Total:** | **$ 4,450,194.69** |

*See* Dkts. 39, 86, 175, 196, 316. These figures do not include fees incurred in November and December 2024, which are likewise expected to be high.

MOTION FOR DISALLOWANCE OF COMPENSATION RE: NOTICE
OF INTENT TO COMPENSATE  - 4

Snell & Wilmer
600 University Street, Suite 310
Seattle, Washington 98101-3122
206.741.1420

4901-5512-2697

### 2. The results of this receivership have been disastrous for most secured creditors and all unsecured creditors.

As this receivership winds down, a full picture of what actually happened has begun to emerge. Receiver—a fiduciary for all creditors—has disposed of valuable and fully-encumbered assets for below-market prices, recovering only slightly more than enough proceeds to pay the Petitioner (and its own administrative expenses).[2] Receiver sold assets to Rodger May ("**May**"), an owner and insider, for a steep discount following an auction that commenced on September 16, 2024 (the "**Auction**"). The sale was approved by this Court in its *Order Approving Sale of Assets Free and Clear of Liens, Claims, Encumbrances and Interests, and Granting Other Relief* (the "**Sale Order**"), Dkt. 264. Meanwhile, nearly all other creditors in this proceeding, both secured and unsecured, will recover nothing on their claims, resulting in tens of millions of dollars in losses. While creditors are left empty-handed, Receiver and its professional seek massive fees.

### 3. The Objecting Lienholders have fully perfected security interests in the sale proceeds.

There is no dispute that the Objecting Lienholders have valid and perfected liens. According to Receiver, the "Ketcham Loan was secured by a valid and perfected lien on the Port Moller Plant[.]" *See* Dkt. 336 at p. 10. Receiver likewise acknowledges that NIF and RRG hold claims "secured with a lien on all of PPSF's assets, including its personal property and real property, pursuant to deeds of trust recorded on May 23, 2023 and UCC-1 financing statements filed on March 28, 2023." *Id*. at p. 7-8.

## C. ARGUMENT

The burden of proving the reasonableness of requested fees is upon the fee applicant. *Scott Fetzer Co. v. Weeks*, 122 Wash.2d 141, 151 (1993) (citing *Blum v. Stenson*, 465 U.S. 886, 898–900, 104 S.Ct. 1541, 1548–49, 79 L.Ed.2d 891 (1984)). While an applicant's supporting documentation forms the starting point under the lodestar method, it is not dispositive on the issue

---

[2] Wells Fargo was the petitioning creditor in this proceeding. Wells Fargo's lien rights did not extend to the real property owned by Peter Pan. Rather, Wells Fargo was the beneficiary of contractual payment subordination by the grantees of liens against Peter Pan's real property—May, RRG, NIF, and Ketcham.

MOTION FOR DISALLOWANCE OF COMPENSATION RE: NOTICE
OF INTENT TO COMPENSATE  - 5

Snell & Wilmer
600 University Street, Suite 310
Seattle, Washington 98101-3122
206.741.1420

of the reasonableness of the hours expended. *Id.* (citing *Nordstrom, Inc. v. Tampourlos*, 107 Wash.2d 735, 744, 733 P.2d 208 (1987). "[T]he trial court, instead of merely relying on the billing records of the [fee applicant], should make an independent decision as to what represents a reasonable amount for attorney fees". *Id.* (citing *Tampourlos*, at 744, 733 P.2d 208).

    **1. Objecting Lienholders never consented, and do not consent now, to the use of sale the proceeds of their collateral to pay administrative expense.**

    Petitioner was paid in full following Receiver's sale to May, which closed on or around October 17, 2024.[3] Objecting Lienholders' security interest attached to the sale proceeds of their collateral in the same priority as they enjoyed immediately prior to Receiver's appointment. *See* RCW 7.60.260(2)(ii). Indeed, Paragraph 10 of the Amended Order Approving Sale of Assets Free and Clear of Liens, Claims, Encumbrances and Interests, and Granting Other Relief entered on October 7, 2024 ("**Sale Order**") explicitly confirms that liens "shall attach to the net proceeds of the Sale to the same extent, validity, and priority as such Liens attached to the Property as the Liens had with respect to the Property as existed on April 22, 2024." Sale Order, Dkt. 263, ¶10.[4]

    Because Objecting Lienholders are non-petitioning, non-consenting secured creditors, they are entitled to payment of the disposition of their collateral ahead of administrative expenses. Section 7.60.230(1)(a) provides that sale proceeds are first paid to:

> Creditors with liens on property of the estate, which liens are duly perfected under applicable law, shall receive the proceeds from the disposition of their collateral. However, the receiver may recover from property securing an allowed secured claim the reasonable, necessary expenses of preserving, protecting, or disposing of the property to the extent of any benefit to the creditors…

---

[3] *See* Receiver's Response to Ketchum's Emergency Motion to Stay, filed in Court of Appeals on October 17, 2024; *see also* Receiver's Motion Challenging Sufficiency of Supersedeas Cash to Stay Approved Sale Dkt. 275, p. 2 n.1 ("Wells Fargo's claims will be fully paid from proceeds of the sale at closing on October 15, after which it will no longer have an interest in the Estate or any reason to continue funding it.")

[4] The only motion Receiver ever filed relating to the Sale also explicitly confirmed that "[a]ll Liens, recorded or not as of the date of the closing of the sale(s), shall be released as against the Assets, **and shall attach to the proceeds of the sale(s) to the same extent, validity, and priority as they attached to the Assets as of the date of the Receivership**." Receiver's Motion re Asset Sale, Bid, and Auction Procedures, and Related Relief, Dkt. 141, p. 7 (emphasis added).

MOTION FOR DISALLOWANCE OF COMPENSATION RE: NOTICE
OF INTENT TO COMPENSATE  - 6

Snell & Wilmer
600 University Street, Suite 310
Seattle, Washington 98101-3122
206.741.1420

4901-5512-2697

1  RCW 7.60.230(1)(a).

2  Next, the receivership statute confers second-position priority for administrative expenses.

3  RCW 7.60.230(1)(b) provides that, *after payment to lienholders*, a Receiver and its professionals

4  can recover:

> Actual, necessary costs and expenses incurred during the administration of the estate, other than those expenses allowable under (a) of this subsection, including allowed fees and reimbursement of reasonable charges and expenses of the receiver and professional persons employed by the receiver under RCW 7.60.180. Notwithstanding (a) of this subsection, expenses incurred during the administration of the estate have priority over the secured claim of any creditor obtaining or consenting to the appointment of the receiver.

10  RCW 7.60.230(1)(b). While this provision allows administrative claimants to assert priority over

11  *petitioning* and/or *consenting* secured creditors, that priority only extends to the specific creditor

12  who filed the petition or provided consent. Ketcham, RRG, and NIF did not seek the appointment

13  of the Receiver and have never stipulated to or otherwise consented in fact to Receiver's

14  appointment. And as set forth above in Footnote 2, Petitioner never held a lien against any of Peter

15  Pan's real property assets. Consequently, as it relates to Objecting Lienholders,

16  RCW 7.60.230(1)(b) does not operate at all with respect to the proceeds of the sale of Peter Pan's

17  real property, and therefore cannot form the basis of any purported priority right to payment

18  Because Petitioner has been paid in full, lienholders who have not consented to or benefited

19  from the receivership have priority vis-à-vis administrative expenses. There is no basis to prime

20  liens under the Receivership Act, and the Court should reject Receiver's attempt to elevate its own

21  interests ahead of the interests of Objecting Lienholders who advanced tens of millions of dollars

22  to Peter Pan.

23  **2. Schwabe's fees and expenses are excessive and unreasonable.**

24  Under RCW 7.60.230(1)(b), Receiver's professionals may be entitled to reasonable

25  compensation for actual and necessary services. But these services must provide some

26

MOTION FOR DISALLOWANCE OF COMPENSATION RE: NOTICE
OF INTENT TO COMPENSATE  - 7

Snell & Wilmer
600 University Street, Suite 310
Seattle, Washington 98101-3122
206.741.1420
4901-5512-2697
**Exhibit D - Page 13 of 26**

demonstrable benefit to the estate and must otherwise be consistent with the main purpose of a receivership—maximizing value for creditors. "The estate is not a cash cow to be milked to death by professionals seeking compensation for services rendered to the estate which have not produced a benefit commensurate with the fees sought." *In re Allied Computer Repair Inc.* 202 B.R. 877, 886 (Bankr. E.D. Tenn. 1996) (citation omitted).

As the Washington Court of Appeals recently recognized in *Newman Du Wors, LLP v. Mercado*, 2024 WL 4880667 (2024):

> Courts must take an *active* role in assessing the reasonableness of fee awards, rather than treating cost decisions as a litigation afterthought." *Mahler v. Szucs*, 135 Wn.2d 398, 434, 957 P.2d 632 (1998). "Consistent with such an admonition is the need for an adequate record on fee award decisions." *Id*. at 435. To establish such a record, the trial court must enter findings of fact and conclusions of law in support of its award of fees. *Id*. "The findings must show how the court resolved disputed issues of fact and the conclusions must explain the court's analysis." *Berryman v. Metcalf*, 177 Wn. App. 644, 658, 312 P.3d 745 (2013).

*Newman Du Wors, LLP v. Mercado*, 2024 WL 4880667, *5 (2024)

Pursuant to *Receiver's Omnibus Motion Allowing Claims and Claim Amounts and Establishing Relative Priority of Secured and Other Claims* (Dkt. 336), it appears that no creditors, other than Petitioner and the State of Alaska, will recover a single dollar, while professionals stand to be paid millions of dollars.

Schwabe's fees and expenses are excessive. It remains unclear whether Schwabe's services will produce any meaningful benefit to creditors other than the Petitioner. Given Schwabe's billing practices, as detailed below, Objecting Creditors have concerns that Receiver and its professionals will deplete the entirety of estate funds, thus leaving creditors empty-handed.

a.  *Schwabe's request for compensation is excessive on its face.*

According to the NOIC, Schwabe billed **913 hours** to this matter in September and October alone. This equates to an average of approximately 15 hours a day assuming Schwabe timekeepers worked every holiday and weekend day, and more than 21 hours per day if holidays and weekends

MOTION FOR DISALLOWANCE OF COMPENSATION RE: NOTICE
OF INTENT TO COMPENSATE  - 8

Snell & Wilmer
600 University Street, Suite 310
Seattle, Washington 98101-3122
206.741.1420

1   are excluded.

2   Neither the complexity of this case nor the amount and type of work involved justify that

3   level of billing. While this matter is a reasonably sizeable receivership by regional standards, the

4   matter is nowhere near large and complex enough to warrant administrative expenses that will

5   almost certainly exceed $5 million, or legal fees approaching $1.5 million for a six-month period.

6   These amounts must be significantly reduced.

7       b.   *Schwabe seeks compensation for duplicative services.*

8   In September and October alone, at least ***25 Schwabe timekeepers*** billed time to this case,

9   nearly half of them partners. Multiple timekeepers appear to have worked on this matter full time.

10  For example, in just two months, Larry Ream alone billed 362.80 hours and Daniel Kubitz billed

11  283.80 hours. With two attorneys working on this matter full time, it is hard to imagine why 23

12  other timekeepers would be needed, several billing more than 50 hours per month. The sheer

13  number of billing professionals that devoted time to this matter, most of whom are charging more

14  than $500 per hour, is inappropriate, to say the least.

15  There are several instances where 3-4 partners (and 5-6 timekeepers in total) billed for

16  similar tasks on the same day (e.g., work performed on the asset purchase agreement). These

17  practices result in several days where timekeepers cumulatively billed ***more than 25 hours per***

18  ***day***.

19      c.   *Many time entries are blockbilled and impossible to decipher.*

20  The practice of block-billing is generally frowned upon because it makes it difficult to

21  determine how much time was spent on a particular task. *See Welch v. Metro. Life Ins. Co.*, 480

22  F.3d 942, 948 (9th Cir. 2007) (discounting block-billed hours in light of a State Bar of California

23  Committee report that block-billing may overstate time spent by 10 to 30% and tends to conceal

24  actual time spent on particular tasks); *MKB Constructors v. Am. Zurich Ins. Co.*, 83 F. Supp. 3d

25  1078, 1091 (W.D. Wash. 2015); *Frye v. JDH Inv. Grp. LLC*, 12 Wn. App. 2d 1077 (2020) citing

26

MOTION FOR DISALLOWANCE OF COMPENSATION RE: NOTICE
OF INTENT TO COMPENSATE  - 9

4901-5512-2697

Snell & Wilmer
600 University Street, Suite 310
Seattle, Washington 98101-3122
206.741.1420

*Berryman v. Metcalf*, 177 Wn. App. 644, 658–59, 312 P.3d 745 (2013) (failure of a trial court to address block billing raised by a party constitutes reversible error).

There are several entries that are block-billed. For example, between October 15 and October 17, Molly Henry billed 14.1 hours using block-billing. Likewise, between October 11 and October 18, Milton Reimers block-billed 17.8 hours. By lumping together time entries, Schwabe timekeepers make it impossible for parties to evaluate the reasonableness of the time spent on each individual task.

d. *Schwabe seeks compensation and reimbursement for unrecoverable tasks.*

There are dozens of billing entries for unrecoverable tasks, including travel time and unnecessary work. For example, Schwabe is seeking thousands of dollars in compensation for time spent traveling to and from its own office, and thousands of dollars in reimbursement for hotel expenses incurred during the auction. These expenses are inappropriate considering the auction was conducted at Schwabe's *home office*. There is no reason the estate should bear the expense of an associate traveling between Vancouver and Seattle to attend an auction at Schwabe's own office. Likewise, the estate should not pay for Seattle-based attorneys to rent hotels to attend an auction hosted at their own offices. Schwabe is also seeking compensation for time spent on matters such as analyzing the availability of title insurance, which is typically a buyer issue. And because the sale closed without title insurance, the time spent on these issues provided no benefit to the estate.

e. *Timekeepers charged rates exceeding the cap in the Appointment Order.*

Pursuant to the Appointment Order, Schwabe's hourly rates are capped at $695 per hour. Several timekeepers billed at rates above $695. While it is unclear what value these timekeepers provided (as opposed to the numerous other timekeepers who worked on this matter), their fees at a minimum should be reduced to comply with the Appointment Order.

MOTION FOR DISALLOWANCE OF COMPENSATION RE: NOTICE OF INTENT TO COMPENSATE - 10

4901-5512-2697

**Exhibit D - Page 16 of 26**

Snell & Wilmer
600 University Street, Suite 310
Seattle, Washington 98101-3122
206.741.1420

### 3. Receiver's fees and expenses are excessive and unreasonable.

In total, Receiver is seeking compensation and reimbursement of $1,579,128.85 for a six-month period. Notably, at least thirteen (13) of Receiver's timekeepers billed to this matter (together with Schwabe, then, almost **forty (40)** timekeepers billed time during September and October). The value of Receiver's services is questionable given the lack of any objective measure of success, the absence of evidence supporting the sale price of any of Peter Pan's assets, the lack of any explanation of the discrepancy between available valuation information and the price paid for Peter Pan's assets, and the seeming disregard for the interests of any creditor other than the petitioner (and professionals). Receiver's excessive billings are also troubling considering that several Peter Pan employees were retained by Receiver and have been paid for their services throughout this proceeding. Though it is impossible to ascertain the precise amounts paid to or for the benefit of these retained employees given the complete lack of detailed financial information provided during the course of this matter, Receiver's reports[5] suggest that it has paid at least $1,961,929.00 for the retained employees' services. While Receiver's compensation is unreasonable on its own, the amount is extremely concerning when combined with these substantial payroll expenses.

### 4. Hilco's fee structure should be reevaluated in light of the outcome of this case.

Courts may revisit the compensation of an investment banker, even where the fee structure was previously approved, when the fees are out of balance with the work performed and the benefit provided to the estate. In the bankruptcy context, for example, a court may allow compensation different from the "terms and conditions of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated" at the time the fee structure was approved. 11 U.S.C. § 328(a). As put by one bankruptcy court:

> Finally, the application must explain how the investment banker/advisor will eliminate, or at least reduce, the duplication of

---

[5] The Receiver is not current on its reporting obligations. The most current report on the docket covers the period through September 30, 2024.

MOTION FOR DISALLOWANCE OF COMPENSATION RE: NOTICE
OF INTENT TO COMPENSATE - 11

Snell & Wilmer
600 University Street, Suite 310
Seattle, Washington 98101-3122
206.741.1420

> effort… where there are armies of professionals apparently doing the same thing as the investment banker/advisor. Specifically, the intention is to avoid accountants and investment bankers/advisors massaging the same numbers twice when one trip to the masseuse would generally suffice.

*In re Drexel Burnham Lambert Group, Inc.*, 133 B.R. 13, 27 (Bankr. S.D.N.Y. 1991).

The services provided by Hilco were underwhelming and, when any objective measure of success is applied, provided no benefit to the estate. In view of the auction results and lack of meaningful participation by any bidders who hadn't already been identified as of Hilco's engagement, it is unclear whether Hilco's services were required at all, or what efforts it took to identify new bidders or maximize recovery. Contrary to Receiver's self-serving proclamations of success, Hilco's efforts culminated in an auction where the only two bidders of substance were an insider and a prospective buyer who had been engaged in negotiations for the purchase of Peter Pan's assets prior to the receivership. Each of these bidders would have made purchase offers on day one of the receivership. Rodger May is a Peter Pan insider who was obviously intimately familiar with Peter Pan's assets as of Receiver's appointment, and SBS was deep in negotiations with Peter Pan leadership regarding the purchase of Peter Pan's assets during the months prior to Receiver's appointment. Gillam Decl., ¶ 5. Hilco brought nobody to the table who was not already seated when this proceeding was filed.

Moreover, the auction process itself suffered from material flaws, including without limitation inexplicably calibrating the "required" cash component of bids to a figure wholly detached from (and by all objective measures, far less than) the actual value of Peter Pan's assets, and by inviting Rodger May to actually *reduce* his cash bid to mirror that arbitrary cash figure. The estate should not bear the expense of an investment banker whose services were not needed and has not presented evidence of any objective measure of success.

Finally, Hilco's submission of a one-page invoice in support of its request for compensation totaling more than $1.4 million does not come close to satisfying the standard

MOTION FOR DISALLOWANCE OF COMPENSATION RE: NOTICE OF INTENT TO COMPENSATE - 12

4901-5512-2697

**Exhibit D - Page 18 of 26**

Snell & Wilmer
600 University Street, Suite 310
Seattle, Washington 98101-3122
206.741.1420

applicable to every request for compensation under RCW 7.60.180(4):

> The receiver, and any professionals employed by the receiver, is permitted to file an **itemized billing statement with the court indicating both the time spent, billing rates of all who perform work to be compensated, and a detailed list of expenses** and serve copies on any person who has been joined as a party in the action, or any person requesting the same…

RCW 7.60.180(4) (emphasis added).

Nothing about the order approving Hilco's engagement relieves it of the obligation to comply with RCW 7.60.180(4). Until Hilco complies with the provisions of RCW 7.60.180(4), its compensation should be withheld.

**D. CONCLUSION**

For the foregoing reasons, Objecting Lienholders respectfully request that the Court enter an order (1) declaring that the liens of non-petitioning, non-consenting secured creditors have priority ahead of administrative expenses; and (2) disallowing, or at a minimum significantly reducing, the compensation requested in the NOIC.

Dated: December 23, 2024

I certify this document contains 4,137 words in compliance with the Local Civil Rules

SNELL & WILMER L.L.P.

By:    *s/Josh A. Rataezyk*

Bradley R. Duncan, WSBA #36436
Josh A. Rataezyk, WSBA #33046
Zachary A. Cooper, WSBA #53526
600 University Street, Suite 310
Seattle, WA 98101
Tel: 206.741.1420
Email: jrataezyk@swlaw.com;
bduncan@swlaw.com;
zcooper@swlaw.com
Attorneys for Interested Parties
RRG Global Partners Pisces LP
NIF Seafood Holdings, LLC
NIF Seafood Lending, LLC
John Ketcham

MOTION FOR DISALLOWANCE OF COMPENSATION RE: NOTICE OF INTENT TO COMPENSATE - 13

Snell & Wilmer
600 University Street, Suite 310
Seattle, Washington 98101-3122
206.741.1420

4901-5512-2697
**Exhibit D - Page 19 of 26**

# Appendix B

**FILED**
2025 JAN 30 04:04 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 24-2-08809-1 SEA

Ex Parte Commissioner
February 3, 2025
1:30 p.m.

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| WELL FARGO BANK, NATIONAL ASSOCIATION, a national banking association, in its capacity as Agent,<br><br>        Petitioner,<br><br>v.<br><br>NORTHWEST FISH COMPANY, LLC, a Washington corporation; PETER PAN SEAFOOD COMPANY, LLC, an Alaska limited liability company, ALASKA FISH HOLDINGS, LLC, a Delaware limited liability company, and RAYMOND MACHINE SHOP, LLC, a Washington limited liability company,<br><br>        Respondents. | Case No. 24-2-08809-1 SEA<br><br>REPLY IN SUPPORT OF MOTION FOR DISALLOWANCE OF COMPENSATION RE: NOTICE OF INTENT TO COMPENSATE RECEIVER (SEPT/OCT), HILCO CORPORATE FINANCE AND RECEIVER'S COUNSEL (SEPT/OCT) |

Objecting Lienholders submit this reply in support of their Motion for Disallowance of Compensation [Dkt. 372] ("**Motion**").

**A. INTRODUCTION**

A request to appropriate $1.4 million of the proceeds of someone else's collateral should be supported by substantial evidence. Yet Hilco submits no evidence at all. It is impossible to ascertain whether Hilco, on its own, successfully elicited a single bid. The Court and interested parties can only guess at how Hilco "maximize[d] the value of the Receivership Estate for the benefit of interested parties," the purpose of Hilco's engagement. Declaration of David Stapleton

REPLY IN SUPPORT OF MOTION FOR DISALLOWANCE OF COMPENSATION RE: NOTICE OF INTENT TO COMPENSATE  - 1
4930-7864-8338
Exhibit D - Page 21 of 26

Snell & Wilmer
600 University Street, Suite 310
Seattle, Washington 98101-3122
206.741.1420

1    (Dkt. 115) ¶ 5. Notably, there is no declaration from Receiver in support of Hilco's objection.

2        Hilco's involvement ultimately produced a sale to Rodger May, an insider who, just weeks

3    before the auction, Hilco accused of being "on a mission to acquire assets out of this receivership

4    estate for his own benefit," and who, "without regard to his fiduciary duties as an officer and

5    shareholder of the Peter Pan Seafood Company, LLC ("PPFS")… has engaged in a pattern of

6    conduct that has harmed the receivership estate." Hilco Corporate Finance's Response (Dkt. 172),

7    at 1.[1] The Court should protect the estate against the improvident use of funds to pay exorbitant

8    fees.

9        **B.  DISCUSSION**

10   **1.    <u>Washington Authority Bars Compensation.</u>**

11       Administrative claimants are only entitled to the *"[a]ctual, necessary costs and expenses*

12   incurred during the administration of the estate… including allowed fees and reimbursement of

13   *reasonable charges and expenses of… professional persons employed by the receiver[.]"*

14   RCW 7.60.230(1)(b)  (emphasis added); *see also Mony Life Ins. Co. v. Cissne Family LLC*,

15   135 Wn. App. 948, 954 (Wash. App. Div. 3, 2006); *Scott Fetzer Co. v. Weeks*, 122 Wn.2d 141,

16   151 (1993).

17       Hilco offers no evidence regarding necessity or reasonableness.  Nothing demonstrates that

18   Hilco provided any value to the estate, or that the same results could have been achieved without

19   Hilco's involvement. The marketing and auction "process" produced only two meaningful bids –

20   one from an insider Hilco accused of sabotaging the sale process weeks before the auction, and

21   the other from an entity already involved in negotiations to purchase the assets.

22       Neither Hilco nor Receiver provided any valuation data or presented any evidence that the

23   sale price was reasonable. Hilco admittedly calibrated bids to a "minimum cash component," an

24   arbitrary amount unrelated to market value, announcing to the world that bidders need only bid

25   ───────────────

26   [1] Per Hilco, May's actions had "the effect of depressing other bids from the marketplace," May "[v]iolat[ed] his NDA by filing nonpublic information with the Court," and May sought to "divert[] [] property and monetize[e] it for self-enrichment." Dkt. 172, at 2.

REPLY IN SUPPORT OF MOTION FOR DISALLOWANCE OF
COMPENSATION RE: NOTICE OF INTENT TO COMPENSATE  - 2
4930-7864-8338
**Exhibit D - Page 22 of 26**

Snell & Wilmer
600 University Street, Suite 310
Seattle, Washington 98101-3122
206.741.1420

1  precisely enough proceeds to pay the petitioning creditor, plus administrative expenses – but no

2  one else. Hilco cannot provide a legitimate reason for this approach because none exists.  Hilco

3  does not explain why it encouraged May to reduce his cash offer. There is no way to tell how much

4  time Hilco spent rushing to facilitate the below-market sale that plagues this proceeding. It is

5  doubtful Hilco's involvement warrants recovery of any amount, let alone $1.4 million.

6       Hilco cites no Washington authority, instead arguing that its fixed-fee arrangement is iron-

7  clad under Section 328(a) of the Bankruptcy Code. While Objecting Lienholders cited Section 328

8  to illustrate Hilco's fixed fee arrangement would be subject to modification in bankruptcy, the

9  Court need not look beyond Washington law to deny Hilco's fees. Ironically, under these exact

10  circumstances in bankruptcy, Hilco would go unpaid.

11  **2.    Hilco Mischaracterizes RCW 7.60.180(4).**

12       Hilco gets it very wrong when it argues that RCW 7.60.180(4) is permissive. This is not

13  what the statute says.

14       Here is the relevant language:

15  The receiver, and any professionals employed by the receiver, is permitted to file an
    itemized billing statement with the court indicating both the time spent, billing rates of all
16  who perform work to be compensated, and a detailed list of expenses and serve copies on
    any person who has been joined as a party in the action, or any person requesting the
17  same, **advising that unless objections are filed with the court, the receiver may make
    the payments specified in the notice**.
18
19  RCW 7.60.80(4) (emphasis added).  This language makes clear that if an applicant elects to invoke

20  the negative-notice mechanism provided for in the statute – as Hilco did here [Dkt. 316] (the

21  "NOIC") – the applicant must submit detailed billing information.  What is "permitted" – what is,

22  to use Hilco's phrasing, "not mandatory but permissive" – is ***not*** the inclusion or omission of the

23  detailed information, but the election to invoke the negative notice feature.  An applicant is not

24  required to use this feature; it can separately apply for payment by motion.  But if it elects the

25  negative-notice option, it is required to provide some detail about the way the applicant's

26  employees have spent their time.  The inverse makes no sense at all – it would authorize applicants

REPLY IN SUPPORT OF MOTION FOR DISALLOWANCE OF
COMPENSATION RE: NOTICE OF INTENT TO COMPENSATE  - 3
4930-7864-8338

Snell & Wilmer
600 University Street, Suite 310
Seattle, Washington 98101-3122
206.741.1420

to use the statute's expedited, negative-notice tool while providing *less* information than otherwise would be required.

Hilco's answer?  Well, Hilco says, this Court approved our commission when we were engaged, so we bear no obligation to describe, explain, or justify with *actual evidence*, anything we have done.  In effect, Hilco characterizes approval of its retention as something like a coupon.[2] Now, Hilco need only submit that coupon and the estate will wire $1.4 million, no questions asked. This is not how the process works.  This Court is obligated to evaluate the reasonableness of every fee request, particularly in an equitable proceeding. *Berryman v. Metcalf*, 177 Wn. App. 644, 658, 312 P.3d 745, 754 (2013) (courts must "actively and independently confront the question" of whether fees are reasonable, and must make specific findings that "explain the court's analysis"); *In re Halverson Tr.*, 2023 WL 1103202, 2023 Wash. App. LEXIS 156 (Wash. Ct. App. Jan. 30, 2023) (findings in an equitable proceeding not bound by lodestar method, and must permit appellate court to "determine why the trial court awarded the amount in question"). It is required to consider the amount of work performed, and the value of that work considering the results achieved for *all creditors*.  Having done that, the Court must make findings.  Hilco's approach makes it impossible for the Court to do that work.

### 3.    <u>The Results Here do not Justify Hilco's Exorbitant Fee.</u>

Bankruptcy and receivership courts routinely disallow or reduce compensation where the results achieved are unfavorable to creditors. *See e.g.*, *United States SEC v. Harris*, 2016 U.S. Dist. LEXIS 51708, 2016 WL 1555773 at *15 (N.D. Tex. April 18, 2016); *United States v. Code Products Corp.*, 362 F.2d 669, 673-74 (3rd Cir. 1966) (reversing fee award where "the result obtained, a critical factor to be considered in the allowance of fees, was in the minus column on the performance score cards of the Receiver and his counsel"); *In re Alpha Telcom, Inc.*, 2013 U.S. Dist. LEXIS 32391, 2013 WL 840065 at *17 (D. Or. March 6, 2013) (noting "meager results ultimately obtained in this matter."); *In re Digerati Techs, Inc.*, 524 B.R. 666, 676 (Bankr.

---

[2] The Hilco employment motion was never served on Objecting Lienholders.  *See* Dkt. 113 at 5-7; Dkt. 116.

REPLY IN SUPPORT OF MOTION FOR DISALLOWANCE OF
COMPENSATION RE: NOTICE OF INTENT TO COMPENSATE  - 4
4930-7864-8338

Snell **&** Wilmer
600 University Street, Suite 310
Seattle, Washington 98101-3122
206.741.1420

1   S.D. Tex. 2015) (denying entirety of fee request of $482,971.81 when "[c]ompared with the $80

2   to $90 million expected total price tag for the companies, the end result of $41 million was thus a

3   dismal failure."); *In re Alpha Telcom, Inc.*, 2006 WL 3085616 at *5-6 (D. Or. Oct. 27, 2006)

4   ("[t]he Fee Applicants now propose to use essentially the entire assets of the receivership to pay

5   their own fees. That is very troubling."); *SEC v. Nguyen*, 2024 U.S. Dist. LEXIS 30907, 2024 WL

6   3379645 (C.D. Cal., Feb. 21, 2024); *S.E.C. v. Byers*, 2014 WL 7336454 *6 (S.D.N.Y. Dec. 23,

7   2014) (denying in its entirety fee request of more than $4.7 million).   Here, Hilco's efforts

8   produced a poor outcome.

9   **4.      There are no Unencumbered Assets.**

10          Objecting Lienholders have priority over administrative expenses. RCW 7.60.230(1).

11  Hilco contends no substantive response is required due to the Court's January 8, 2025 order

12  [Dkt. 397] ("**Claims Order**").   However, the Claims Order is subject to a pending Motion for

13  Revision before Judge Donohue. *See* Dkt. 424.   The Court should reserve ruling on the Motion

14  until the revision motion is decided.

15          Any seasoned insolvency professional understands the risk involved in providing services

16  to a fully encumbered estate.   Hilco knew that it risked non-payment from the proceeds of

17  Objecting Lienholders' collateral because they are non-consenting, non-petitioning secured

18  creditors.   This concept is uniformly recognized in bankruptcy cases:

19
20          The bankruptcy court's discretion to permit payment of administrative expenses is
            restricted by the existence of unencumbered assets that exceed any super-priority
            claims.

21          ….

22          These risks are well known to experienced bankruptcy practitioners…To deal with
            some of the abovementioned risks, professionals usually negotiate a carve-out to
23          provide for the payment of their allowed fees. In other words, the effect of a carve-
            out is to allow affected professionals to look to the secured creditor's collateral
24          where otherwise they would not be able to do so.

25  *In re Molycorp Inc.*, 562 B.R. 67, 75-76 (Bankr. D. Del. 2017).

26          *Molycorp* recognizes the bedrock insolvency principle of protecting lienholders'

REPLY IN SUPPORT OF MOTION FOR DISALLOWANCE OF
COMPENSATION RE: NOTICE OF INTENT TO COMPENSATE  - 5
4930-7864-8338
**Exhibit D - Page 25 of 26**

Snell & Wilmer
600 University Street, Suite 310
Seattle, Washington 98101-3122
206.741.1420

substantive property rights by ensuring lienholders are paid from the proceeds of their collateral first, while administrative claimants can only look to surplus (i.e., unencumbered) proceeds:

> Payment of professionals' fees in Chapter 11 cases is a favored object of the Bankruptcy Code, but it is no more favored than protecting the rights of creditors with secured claims. As a general rule, administrative expenses must be satisfied from assets of the estate not subject to liens. A secured creditor's interest in its collateral is a substantive property right created by non-bankruptcy law, which may not be substantially impaired when bankruptcy intervenes. A secured creditor should not be deprived of the benefit of its bargain and will be protected in bankruptcy to the extent of the value of its collateral; furthermore, only surplus proceeds are available for distribution to other creditors of the estate and administrative claimants. Therefore, absent equity in the collateral, administrative claimants cannot look to encumbered property to provide a source of payment for their claims.

*Id*. at 75.

Receiver never negotiated a carve-out with lienholders. The remaining proceeds are fully encumbered, and no authority allows administrative claimants to prime Objecting Lienholders' liens.

## C.  CONCLUSION

Objecting Lienholders respectfully request that the Court disallow Hilco's requested compensation.

Dated: January 30, 2025

I certify this document contains 1720 words in compliance with the Local Civil Rules

SNELL & WILMER L.L.P.

By:    *s/Josh A. Rataezyk*
Bradley R. Duncan, WSBA #36436
Josh A. Rataezyk, WSBA #33046
Zachary A. Cooper, WSBA #53526
600 University Street, Suite 310
Seattle, WA 98101
Tel: 206.741.1420
Email: jrataezyk@swlaw.com;
bduncan@swlaw.com;
zcooper@swlaw.com
Attorneys for Interested Parties
RRG Global Partners Pisces LP
NIF Seafood Holdings, LLC
NIF Seafood Lending, LLC
John Ketcham

REPLY IN SUPPORT OF MOTION FOR DISALLOWANCE OF
COMPENSATION RE: NOTICE OF INTENT TO COMPENSATE - 6
4930-7864-8338

Snell & Wilmer
600 University Street, Suite 310
Seattle, Washington 98101-3122
206.741.1420

Exhibit D - Page 26 of 26