James L. Day, *admitted pro hac vice*
Lesley Bohleber, *admitted pro hac vice*
Bush Kornfeld LLP
601 Union Street, Suite 5000
Seattle, WA 98101-2373
Telephone: (206) 292-2110
jday@bskd.com
lbohleber@bskd.com
Former attorneys for the Debtors

HONORABLE GARY SPRAKER

UNITED STATES BANKRUPTCY COURT
DISTRICT OF ALASKA

| | |
|---|---|
| In re<br><br>WHITTIER SEAFOOD, LLC *et al.*,[1]<br><br>Debtor. | Chapter 11<br><br>Lead Case No. 24-00139<br>Jointly Administered<br><br>BUSH KORNFELD LLP'S MOTION FOR ORDER (I) GRANTING DERIVATIVE STANDING TO PURSUE SURCHARGE; AND (II) APPROVING SURCHARGE UNDER 11 U.S.C. § 506(c) AGAINST CATHAY BANK'S COLLATERAL |

Bush Kornfeld LLP ("Bush Kornfeld"), the Debtors' former bankruptcy counsel and the holder of an allowed administrative expense claim, moves the Court for an order (i) granting Bush Kornfeld derivative standing to prosecute, in the name of the Post-Effective Date Debtors, a surcharge claim under 11 U.S.C. § 506(c); and (ii) approving a surcharge against the collateral of Cathay Bank in the amount of $615,476.37, or such other amount as the Court determines is just and appropriate.

[1] The Debtors are Marine Fishing International, Inc., Case No. 24-00140; Marine Fishing International, LLC, Case No. 24-00141; Modys, LLC, Case No. 24-00142; Salacia, LLC, Case No. 24-00143; Silver Wave, LLC, Case No. 24-00144; and Whittier Seafood, LLC.

## I. INTRODUCTION

It is undisputed that Bush Kornfeld provided significant services in connection with these bankruptcy cases during its engagement as counsel for the Debtors, the majority of which remains unpaid. As detailed below, much of those services directly benefited Cathay Bank, which holds a security interest in virtually all the Debtors' assets. That circumstance did not appear to create a material risk of non-payment, as throughout most of the pendency of these cases there was every reason to believe that the Debtors held a seemingly enormous amount of unencumbered value in their assets. Unfortunately, that unencumbered value failed to materialize.

In the normal case, Bush Kornfeld would have filed a motion under Bankruptcy Code § 506(c) on the Debtors' behalf, seeking a surcharge against Cathay Bank's collateral. However, on August 4, 2025, the Debtors through Mr. Kozlov fired Bush Kornfeld as its bankruptcy counsel before that motion could be filed. At some point thereafter, the Debtors engaged Sussman Shank LLP ("Sussman Shank") to represent them.[2]

That motion still needs to be filed. To that end, Bush Kornfeld requested that the Post-Effective Date Debtors agree that Bush Kornfeld could have derivative standing to bring a motion under § 506(c) their behalf. The Post-Effective Date Debtors refused that request and later confirmed that (not surprisingly) they had no intention of pursuing a § 506(c) claim themselves.

Absent surcharge, Cathay Bank enjoys the full benefit of Bush Kornfeld's preservation and disposition efforts that spanned almost a full year. In contrast, Bush Kornfeld remains unpaid due to a shortage of unencumbered funds—a free ride § 506(c) exists to prevent. Bush Kornfeld's services were actual, necessary, and reasonable costs that preserved and enabled disposition of Cathay Bank's

[2] The Debtors did not engage substitute counsel for several weeks, as attorneys from Sussman Shank did not file their *pro hac vice* applications until September 15, 2025. *See* ECF Nos. 484-86.



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

collateral and conferred a direct, quantifiable benefit on Cathay Bank. Mr. Kozlov's actions should not affect Bush Kornfeld's ability to bring a § 506(c) on behalf of the Debtors.

## II. FACTUAL BACKGROUND

On August 19, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The cases were jointly administered under the above-captioned bankruptcy case. On November 21, 2024, the Court approved the Debtors' application to employ Bush Kornfeld as bankruptcy counsel under 11 U.S.C. § 327(a), effective as of the Petition Date. *See* ECF No. 202.

By any measure, these were difficult and challenging cases. As the record reflects, none of the six Debtors was operational as of the Petition Date. The Whittier assets comprised a processing plant that had not operated in at least two years and lost money when it had. There was no recent appraisal of the assets and Bush Kornfeld's only value information was the Debtor's opinion. Although contemporaneous appraisals of both the Salacia plant and uninstalled equipment indicated significant value in excess of secured claims, it has never operated and is only about 70% complete. Along the way, Bush Kornfeld had to manage the conflicting desire of the Debtors to retain their assets through some restructuring against the need to present a confirmable plan. Bush Kornfeld's services necessarily encompassed every aspect of these Chapter 11 cases, but its work conferred by far the greatest benefit to Cathay Bank.

### A. Asset Liquidation

#### 1. *The Whittier and Silver Wave Sales*

Bush Kornfeld was instrumental in liquidating Whittier's assets and the Silver Wave's vessels. Initially, Bush Kornfeld worked with the Debtor at some length to obtain its authority to market the Whittier assets for sale, and then assisted the Debtors in engaging Hilco Corporate Finance ("Hilco")



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

as the investment banker for Whittier, Silver Wave and Salacia, a selection that Cathay Bank fully supported through the plan confirmation process. Bush Kornfeld worked closely with Hilco to establish bidding procedures for the sale of the Whittier Plant and related assets and to obtain Court approval of those procedures. *See* ECF No. 259. Bush Kornfeld prepared a form asset purchase agreement, assisted Hilco in gathering Whittier's books and records related to the assets for an online data room, and met with the Hilco team regularly to discuss the sale strategy.

Following the February 10, 2024, bid deadline, a successful bidder was selected, and Bush Kornfeld immediately began finalizing transaction documents and moving toward the sale closing. Unfortunately, despite being deemed the successful bidder and signing asset purchase agreements for the Whittier and Silver Wave assets, the buyer refused to close the sales and instead spent nearly five months renegotiating transaction terms and finalizing transaction documents. During this time, the Debtors, through Bush Kornfeld, filed and obtained Court approval of two transactions. *See* ECF Nos. 316, 424. Finally, on July 29, 2025, the Silver Wave and Whittier sales closed.

Cathay Bank received an initial distribution of $2.7 million in sale proceeds at the closing of the Whittier transaction and approximately $41,429.67 from the Silver Wave transaction, and later another $350,000 in connection with the clearing of the Vrsalovic deed of trust. Without Bush Kornfeld's efforts, the Whittier and Silver Wave transactions would not have closed, and Cathay Bank would have been left with no other remedy but to foreclose on its collateral.

2. *The Salacia Plant*

Mr. Kozlov made no secret of his desire to retain the Salacia plant by way of some form of a refinance or third-party equity infusion. *See e.g.* ECF Nos. 159 at ¶ 4; 531 at ¶ 5. To that end, he directed Hilco following its appointment to focus its efforts on seeking a refinancing transaction rather than a sale. *Id.* This desire created significant challenges in the Salacia case in connection with seeking



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

support for some form of a consensual plan, as Cathay Bank (and every other creditor that expressed a preference) desired that the Salacia plant be marketed for sale, and sooner rather than later. Bush Kornfeld worked with the Debtors over a period of months to strike an appropriate balance on these conflicting interests, resulting in Hilco's commencing a marketing program for the Salacia plant in early April 2025.

As with the Whittier and Silver Wave transactions, Bush Kornfeld worked closely with Hilco to develop and obtain Court approval of bidding procedures related to the sale of the Salacia Plant and equipment (ECF No. 407) and prepared a form asset purchase agreement. At Cathay Bank's request, Bush Kornfeld facilitated weekly meetings with Hilco, Cathay Bank, and Whittier's Official Committee of Unsecured Creditors[3] to provide updates on marketing and sale status of the Salacia Plant, which almost always included discussions of the Whittier and Silver Wave transactions until those transactions closed.

Bush Kornfeld was terminated as counsel for the Debtors before the August 7, 2025, bid deadline in connection with the sale of the Salacia assets.

**B. Plan Confirmation**

Due to Bush Kornfeld's efforts, the Debtors were able to present to the Court a consensual plan that Cathay Bank fully supported. The consensual plan was the product of months of negotiations with creditors – primarily Cathay Bank – that initially resulted in the preparation and execution of a Plan Support Agreement between the Debtors and Cathay Bank. The Plan Support Agreement manifested Cathay Bank's approval of (among other things) the treatment of its claim, the timeline for the marketing and sale of the Salacia and Modys assets, and its agreement with the terms of the plan that would be

[3] Whittier's unsecured creditors were granted a lien on the Salacia Plant and therefore were parties in interest relative to the Salacia sale process. *See Corrected Stipulated Order Amending Final Cash Collateral Order* [ECF No. 221].



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

prepared from the Plan Support Agreement. The Court approved the Plan Support Agreement by order entered April 2, 2025. *See* ECF No. 326. Thereafter, Bush Kornfeld prepared amended forms of the plan [ECF No. 320] and disclosure statement [ECF No. 319] conforming to the terms of the Plan Support Agreement. By order entered April 2, 2025, the Court approved *Debtors' Second Amended Disclosure Statement for Debtors' Second Amended Joint Plan of Reorganization* [ECF No. 327].

Notwithstanding its execution – and the Court's approval – of the Plan Support Agreement, Cathay Bank objected to the Debtors' plan on the basis that there was no agreed plan treatment in Mr. Kozlov's personal case.[4] There were also some minor objections to the Debtors' plan that were filed by others. This activity necessitated further negotiations by Bush Kornfeld that resulted in the preparation and filing of *Debtors' Fourth Amended Joint Plan of Reorganization* [ECF No. 368], to which all parties – including Cathay Bank – agreed should be approved. The Court approved the Fourth Amended Plan (the "Confirmed Plan") by order entered June 5, 2025 (the "Confirmation Order") [ECF No. 386].[5] Based on the information the parties had at the time, the Confirmed Plan easily provided for the full payment of all creditors in a relatively short period of time.

As is clear, Bush Kornfeld's efforts in negotiating the Plan Support Agreement and the multiple plan versions that resulted in the Confirmed Plan were of significant value to Cathay Bank. The Confirmed Plan contains numerous provisions solely benefiting Cathay Bank, including (i) additional collateral in the form of a second-position deed of trust encumbering the Modys building; (ii) an interest rate on its allowed claim in excess of Cathay Bank's note rate; (iii) an even greater interest rate on any

---

[4] As the Court is aware, Judge Trish Brown acted as settlement judge in connection with the development of consensual plans in these cases as well as in Mr. Kozlov's personal case. At Judge Brown's specific request, Bush Kornfeld also participated in discussions that eventually resulted in a term sheet for a consensual plan, which allowed Cathay Bank to withdraw its objection to and vote in favor of the Debtors' plan.

[5] The Confirmed Plan's stated effective date was May 31, 2025 (the "Effective Date").



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

protective advances it might make; (iv) a relatively short time frame for the sale of the Salacia assets; and (v) provisions creating and governing the activation and responsibilities of the Plan Administrator. While Cathay Bank can contend that these and other provisions became part of the Confirmed Plan due to the bank's leverage position and for no other reason, Bush Kornfeld's efforts successfully walked the difficult line between providing incentives to Cathay Bank and obtaining the Debtors' approvals and authorizations for them, all of which resulted in the preparation and confirmation of a consensual plan. These provisions reflect deliberate steps to facilitate dispositions, protect value, and expedite recoveries from Cathay Bank's collateral and proceeds.

**C. Bush Kornfeld Incurred Significant Fees and Costs that Remain Unpaid**

1. *Pre-Effective Date Fees*

During the administration of these Chapter 11 Cases, Bush Kornfeld incurred substantial fees and costs preserving assets, and negotiating, structuring and documenting a process intended to repay Cathay Bank as efficiently as possible. These fees and expenses were manifestly actual, necessary, and reasonable, as evidenced by this Court's approval of Bush Kornfeld's interim and final applications for compensation and reimbursement as attorneys for the Debtors, and conferred a direct benefit on Cathay Bank by preserving and increasing the value of its collateral and accelerating recoveries from collateral proceeds. The Court approved Bush Kornfeld's compensation and reimbursement of expenses, for the period from the Petition Date through May 31, 2025, in the total amount of $708,337.32 (the "Pre-Effective Date Fees"). ECF Nos. 402, 478. Bush Kornfeld, however, has only received $174,049.20 of its awarded fees.

2. *Post-Effective Date Fees*

Following the Effective Date, Bush Kornfeld continued to serve as Debtors' counsel, primarily in connection with the closing of the Whittier transaction and (at the express request of Judge Brown)



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

assisting in negotiations with Cathay Bank, Mr. Kozlov and the Kozlov Committee to achieve a plan support agreement in Mr. Kozlov's personal chapter 11 proceeding.

For reasons that do not appear to be part of the record, on August 4, 2025, Mr. Kozlov terminated Bush Kornfeld's engagement as attorneys for the Debtors – just five days following the closing of the Whittier transaction. The following day, Bush Kornfeld filed its *Notice of Termination of Attorneys for Debtors* [ECF No. 450], which termination the Court confirmed was effective August 4, 2025, by order entered August 11, 2025. *See* ECF No. 464.

Between the Effective Date and August 4, 2025, Bush Kornfeld incurred additional fees and costs totaling $81,188.32 ("Post-Effective Date Fees"), none of which has been paid. A copy of the invoices for the Post-Effective Date Fees is attached to the accompanying Day Declaration as Exhibit A. The total outstanding balance owed to Bush Kornfeld for the Pre- and Post-Effective Date Fees is $615,476.37.

**D. Debtors Refuse to Pursue Section 506(c) Claim or Grant Bush Kornfeld Standing**

Section 506(c) permits a "trustee" (or by extension, a chapter 11 debtor in possession) to seek a recovery against the property securing an allowed secured claim. To that end, on October 17, 2025, and again on October 20, 2025, Bush Kornfeld sent emails to the Debtors' attorneys, advising of its allowed administrative expense claim and requesting that the Debtors permit Bush Kornfeld to pursue a § 506(c) surcharge claim on their behalf. On October 20, 2025, Mr. Eggen of Sussman Shank responded, "Unfortunately, my client has told me that he will not agree to stipulate to your request below." On October 30, 2025, after waiting to see if the Debtors would be bringing a claim themselves, Bush



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Kornfeld again reached out to Mr. Eggan, asking whether the Debtors intended to pursue a § 506(c) claim. The following day, Mr. Eggan simply responded, "They do not."[6]

## III. JURISDICTION

This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. The Court retained jurisdiction to enforce, implement, and interpret the Plan and Confirmation Order. *Confirmation Order* ¶¶ 2–3, 12. This is a core proceeding under 28 U.S.C. § 157(b)(2).

## IV. ARGUMENT

The general rule is that the expenses associated with administering a bankruptcy estate are not payable from a secured creditor's collateral, but from unencumbered estate assets. Section 506(c), however, creates an exception to the general rule. Specifically, § 506(c) states that the trustee or debtor-in-possession "may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property." 11 U.S.C. § 506(c). Section 506(c) is a legislative recognition that a secured creditor receives a benefit within the meaning of section 506(c) if the relevant expense preserved or increased the value of its collateral, or was in furtherance of its disposition, and a surcharge is necessary to prevent a windfall to the secured creditor. In other words, a secured creditor should not reap the benefit of actions taken to preserve and dispose of its collateral at no cost.

Bush Kornfeld asserts that (1) § 506(c) was a cause of action retained under the Confirmed Plan and vested in the Post-Effective Date Debtors: (2) the Court should confer derivative standing upon

[6] A copy of the referenced email string is attached to the accompanying Day Declaration as Exhibit B.



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Bush Kornfeld to pursue the claim in view of the Debtors' expressed refusal to bring such a claim; (3) a surcharge of Cathay Bank's collateral is warranted under the circumstances, and (4) that the equities favor granting Bush Kornfeld the requested relief.

**A. Retention of Bankruptcy Court Jurisdiction**

This Court retained jurisdiction to grant the relief sought in this Motion. Specifically, (i) the Confirmed Plan explicitly reserves jurisdiction over matters necessary to implement, enforce, and consummate the Plan; (ii) the requested surcharge directly affects the distribution scheme and payment of allowed claims under the Confirmed Plan; and (iii) the relief sought presents a close nexus to the Confirmed Plan sufficient to confer post-confirmation jurisdiction under controlling Ninth Circuit authority.

In the Ninth Circuit, post-confirmation jurisdiction exists where the matter at issue "affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan." *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1194 (9th Cir. 2005). Bankruptcy courts retain jurisdiction to decide disputes that "could impact compliance with or completion of the plan," particularly where the plan expressly reserves such jurisdiction. *Id*. Likewise, in *In re Wilshire Courtyard*, the Ninth Circuit reaffirmed that bankruptcy courts retain post-confirmation jurisdiction when a proceeding has a close nexus to the plan, such as where resolution will affect plan interpretation, implementation, or execution. 729 F.3d 1279, 1289 (9th Cir. 2013).

Here, the Confirmed Plan and Confirmation Order retain jurisdiction to: (1) "implement and enforce the Plan," (2) "resolve matters relating to the distributions under the Plan," and (3) "adjudicate any claims or causes of action vested in the Post-Effective Date Debtors." *Confirmation Order* ¶¶ 2–3, 12. The Plan further retains all causes of action, including surcharge rights arising under 11 U.S.C.



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

§ 506(c), and assigns them to the Post-Effective Date Debtors for administration consistent with the Plan.

Determining whether Cathay Bank must bear the reasonable and necessary costs of preserving and disposing of its collateral directly affects the amount and allocation of Plan distributions, the payment of allowed claims, the parties' respective rights under the Plan, and the avoidance of unintended windfalls inconsistent with the Plan's equitable framework. The requested surcharge is not a tangential or new dispute; it is inherent in the Plan's preserved rights and necessary to fulfill the Code's mandate that secured creditors, not administrative professionals, should bear the actual costs of activities from which they alone benefited. This Motion presents a matter well within the Court's retained jurisdiction.

**B. Retention of § 506(c) Rights Postconfirmation and Bush Kornfeld's Standing**

As detailed below, the Debtors retained authority to seek relief under § 506(c) through the confirmed plan or the order confirming the plan, and (2) the Court may grant Bush Kornfeld standing to pursue such relief.

1. *The Confirmed Plan Retained § 506(c) Claims.*

A debtor has the right and ability to reserve all affirmative claims, causes of action, and defenses to potential third-party claims for the reorganized debtor through its confirmed plan. *See In re Prof'l Inv. Props.*, 955 F.2d 623, 626 (9th Cir. 1992) (noting that parties other than the debtor or trustee may be granted such rights). Specifically, a plan may "provide for . . . the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest." 11 U.S.C. § 1123(b)(3)(B).

The relevant provision of the Confirmed Plan states:



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

> On the Effective Date, the Debtors shall be deemed to have assigned to the Post-Effective Date Debtors, and the Post-Effective Date Debtors shall be deemed to have acquired and become the successor to, (i) all Avoidance Actions, and (ii) **all claims and causes of action of the Debtors for relief against any other party other than Avoidance Actions** (collectively, the "Causes of Action"). Pursuant to Bankruptcy Code section 546(a), the deadline for the Debtors to pursue Causes of Action is two years following the Petition Date. Because the Plan provides for full payment of all Allowed Claims without the need for any recoveries on Causes of Action, the Post-Effective Date Debtors shall take no action on any Causes of Action unless (i) the Plan Deadline has passed, and (ii) there exists an Allowed Claims that has not been paid in full. In that event, after evaluating the risks and expense of pursuing such Causes of Action, the Post-Effective Date Debtors, in the exercise of ordinary business judgment, shall investigate, pursue, prosecute, and/or settle such Causes of Action. All Net Proceeds from such Causes of Action shall be distributed to the Holders of Allowed Claims that have not been satisfied in full on a Pro Rata basis.

*Confirmed Plan*, VII.H at 32-33, ECF No. 368 (emphasis added). Additionally, the Confirmation Order provides that the Post-Effective Date Debtors succeeded to all such retained rights. *Confirmation Order* ¶¶ 2–3, 12. The broad language used in the Confirmed Plan – to which Cathay Bank expressly agreed – and this Court's order confirming it make it clear that the § 506(c) surcharge claim is a retained estate asset, presently vested in the Post-Effective Date Debtors, and actionable post-confirmation.

Consistent with the Plan structure, the relief sought is not a new or independent cause of action, but an enforcement mechanism that allocates the cost of preserving Cathay Bank's collateral to the party who exclusively benefited—precisely as § 506(c) provides.

2. *The Court Can and Should Confer Standing for Bush Kornfeld to Bring the Claim.*

While § 506(c) authorizes only a trustee or debtor-in-possession to bring a surcharge claim in the first instance (*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 13 (2000)), the Supreme Court expressly left undecided whether a bankruptcy court may grant derivative standing to another party to act in the estate representative's stead. *Id.* at 13, n.5. The Ninth Circuit has answered that question affirmatively: "It is well settled that in appropriate situations the bankruptcy court may allow a party other than the trustee or debtor-in-possession to pursue the estate's litigation." *Liberty*



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

*Mut. Ins. Co. v. Off. Unsecured Creditors' Comm. of Spaulding Composites Co. (In re Spaulding Composites Co.)*, 207 B.R. 899, 903 (9th Cir. BAP 1997); *Avalanche Mar., Ltd. v. Parekh (In re Parmetex, Inc.)*, 199 F.3d 1029, 1031 (9th Cir. 1999). Derivative standing is appropriate where: (1) the movant made a demand on the estate representative; (2) the representative unjustifiably refused or is conflicted; and (3) the claim is colorable, and its prosecution is in the best interest of the estate. *Spaulding Composites*, 207 B.R. at 904.

Each element is met here. The Debtors expressly declined to grant Bush Kornfeld standing to pursue a § 506(c) claim on their behalf, and confirmed that they had no intention of pursuing such a claim themselves. The reason for their refusal is apparent and conflict-riddled: any recovery under § 506(c) would reduce the paydown of Cathay Bank's claim from the liquidation of the Debtors' assets and potentially cause the amount Cathay Bank would need to recover from Mr. Kozlov's personal assets to increase. This conflict of interest is palpable and irreconcilable.

The Post-Effective Date Debtors have every incentive to pursue a § 506(c) claim but (for obvious reasons) have both declined to do so and refused to grant Bush Kornfeld standing to bring such a claim. The Post-Effective Date Debtors should not be permitted to elevate the personal interests of their principal over their obligations as stewards of assets assigned to them under the Confirmed Plan to prevent a § 506(c) claim from being brought. Conferring derivative standing upon Bush Kornfeld resolves the Post-Effective Date Debtors' conflicts and is otherwise appropriate and warranted.

**C. Surcharge of Cathay Bank's Collateral is Warranted Under § 506(c).**

On the merits, the Court should find that a surcharge is appropriate under the circumstances. The Ninth Circuit has long recognized that the purpose of § 506(c) is to prevent a secured creditor from receiving a windfall when the estate—or its professionals—incur expenses that directly fund efforts to protect, preserve, or liquidate that creditor's collateral. *In re Cascade Hydraulics & Utility Serv., Inc.*,



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

815 F.2d 546, 548 (9th Cir. 1987); *In re Compton Impressions, Ltd.*, 217 F.3d 1256, 1260 (9th Cir. 2000).

Recovery under § 506(c) is appropriate when (1) the expenditure was necessary to preserve or dispose of the secured creditor's collateral, (2) the expenditure was reasonable, and (3) the secured creditor directly benefited from the expense. *In re Cascade Hydraulics & Utility Serv., Inc.*, 815 F.2d 546, 548 (9th Cir. 1987). All three elements are present here.

1. *Bush Kornfeld's Services were Reasonable and Necessary to Preserve, Maintain and Dispose of Cathay Bank's Collateral.*

Bush Kornfeld's efforts were not only necessary and reasonable but also essential for preventing asset deterioration and facilitating the marketing and sale of all of Cathay Bank's collateral. Bush Kornfeld was the critical negotiating liaison between Cathay Bank and the Debtors' principal in commencing the marketing of assets as efficiently as possible. While the Debtors desired an opportunity to retain their assets through a refinancing transaction, Bush Kornfeld knew that opportunity could not be open-ended and was critical in getting marketing commenced of the Whittier assets in early December 2024 and the Salacia assets in early April 2025. While the sale of the Whittier assets did not close until months later, that delay was a function of the challenged nature of the assets and not by way of any act or omission by Bush Kornfeld. If the sale was destined to take longer to close than anticipated, Bush Kornfeld's efforts to get the marketing process started last December were of great benefit to Cathay Bank, as well as was its efforts to maintain the assets pending a sale.

Along the way, Bush Kornfeld developed the sale framework, obtained Court approval of bidding procedures, and worked with Hilco to solicit and close sales for the Whittier and Silver Wave assets. These efforts were the only viable alternatives to Cathay Bank's costly foreclosure process and directly resulted in the liquidation of its collateral for a higher return at a lower cost. Bush Kornfeld's



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

efforts to resolve the stray Vrsalovic DOT cleared title defects that would have otherwise blocked the closing – and would have impaired Cathay Bank's title had it foreclosed – ensuring the Whittier sale closed and resulting in additional net proceeds for Cathay Bank.

Bush Kornfeld also spent countless hours negotiating with Cathay Bank's counsel towards consensual plan treatment, drafting corresponding plan provisions, creating acceptable timelines and remedies, ensuring the ongoing viability of Cathay Bank's liens and acceptable waterfall distributions of sale proceeds. These actions avoided the need for the significant expense and delay of a confirmation trial, and so minimized administrative costs, prevented delayed recoveries, and prevented post-petition interest from unnecessarily accruing. At the end of the process, Cathay Bank voted in favor of approval of the Confirmed Plan that Bush Kornfeld prepared.

This Court has already approved Bush Kornfeld's interim and final applications for compensation and expense reimbursement through the Effective Date, following notice and hearing. *See* ECF Nos. 402, 478. Cathay Bank did not object to either application and so must be deemed to concede that Bush Kornfeld's fees (outside of a § 506(c) context) were reasonable and appropriate. In this context, Bush Kornfeld's services were reasonable and essential to protecting and realizing value from Cathay Bank's collateral. Absent these efforts, Cathay Bank would have foreclosed, assumed the attendant costs and delays, and risked substantial diminution in recoverable value in an amount vastly more than what this Motion now seeks. When measured against what Cathay Bank saved by way of the negotiated sales and consensual plan processes, Bush Kornfeld's expenditures were substantially more efficient and resulted in greater and sooner recoveries.

2. *Bush Kornfeld's Services Conferred a Direct and Quantifiable Benefit to Cathay Bank.*

Section 506(c) requires a party to establish that the expenditures at issue conferred a direct and quantifiable benefit on the secured creditor. *In re Cascade Hydraulics & Utility Serv., Inc.*, 815 F.2d



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

546, 548 (9th Cir. 1987); *In re Compton Impressions, Ltd.*, 217 F.3d 1256, 1260 (9th Cir. 2000). A benefit is "quantifiable" when it can be measured in dollars or through a clearly identifiable enhancement or preservation of the creditor's collateral value. *In re Glasply Marine Indus., Inc.*, 971 F.2d 391, 394 (9th Cir. 1992).

As detailed above, Bush Kornfeld's services provided direct, measurable benefits for Cathay Bank's collateral in various ways. Bush Kornfeld was key in the commencement of the marketing of the Debtors' assets sooner rather than later. Bush Kornfeld was instrumental in getting Cathay Bank distributions of almost $3.2 million from the sale of the Whittier and Silver Wave assets, clearing a title encumbrance along the way. Bush Kornfeld's efforts also led to a consensual plan, avoiding a protracted and contested confirmation process and thereby saving Cathay Bank considerable amounts in interest accrual and professional fees. Bush Kornfeld's efforts related to just clearing the Vrsalovic DOT saved Cathay Bank the need to either pay off the $350,000 encumbrance or to incur considerable professional fees and interest accrual doing so itself.

Finally, by structuring and documenting the confirmed Plan's sale and distribution mechanisms, Bush Kornfeld accelerated Cathay Bank's receipt of sale proceeds while lowering carrying costs and post-petition interest exposure. These time-value benefits are evident in fewer delays and lower administrative expenses.

Collectively, Cathay Bank received benefits of almost $3.2 million from the Whittier and Silver Wave cases. In addition, Cathay Bank will receive millions more in proceeds from the sale of the Salacia plant and equipment in a process that was almost fully realized when Bush Kornfeld was terminated, and from the eventual sale of the Modys building. As detailed above, the record amply demonstrates a direct, quantifiable benefit and warrants a surcharge of Cathay Bank's collateral.



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**D. Equity Strongly Favors the Requested Relief**

Allowing Cathay Bank to retain the full benefit of the estate's preservation and disposition work, while the professionals who generated those benefits remain unpaid due to lack of unencumbered funds,[7] would contravene the statutory purpose of § 506(c) and established equitable principles. The Confired Plan does not immunize Cathay Bank from paying its fair share of preservation costs; to the contrary, the Plan's structure presumes enforcement of rights preserved under the Bankruptcy Code.

Section 506(c) is not punitive but corrective. It ensures that secured creditors who benefit from estate expenditures bear their proportionate share of the costs. *Hartford Underwriters*, 530 U.S. at 6; *Cascade Hydraulics*, 815 F.2d at 548. Surcharge is not merely appropriate—it is required to prevent unjust enrichment and effectuate the purpose of § 506(c).

## V. CONCLUSION

Bush Kornfeld respectfully submits that a surcharge on Cathay Bank's collateral is both justified and necessary pursuant to the terms and equitable purposes of 11 U.S.C. §§ 105(a) and 506(c). Granting the requested relief ensures that the costs of preservation are equitably allocated to the party that directly benefited, consistent with the confirmed Plan, the Confirmation Order, and the purpose of § 506(c).

For the foregoing reasons, Bush Kornfeld respectfully requests that the Court enter an order:

1. Authorizing Bush Kornfeld to prosecute, in the name of the Post-Effective Date Debtors, a § 506(c) surcharge against Cathay Bank's collateral or proceeds;

---

[7] The Debtors' estates are insolvent. However, the Plan Administrator is holding approximately $1,186.000 for the payment of the administrative priority claims related to Hilco's commissions and US Trustee quarterly fees, which are on even priority with the administrative priority claim of Bush Kornfeld. *See* ECF Nos. 424 ¶11; 566 ¶ 17.



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

2. Awarding a surcharge in the amount of $615,476.37 (or as determined after hearing) against Cathay Bank's collateral or proceeds for Bush Kornfeld's actual, necessary, and reasonable costs that directly benefited Cathay Bank;

3. Directing the Post-Effective Date Debtors, Plan Administrator, and any disbursing agent to establish and maintain a segregated reserve or holdback from any distribution payable to Cathay Bank in an amount to be determined by the Court, pending adjudication of the surcharge claim; and

4. Granting such other and further relief as is just and proper.

A proposed order is attached hereto as Exhibit A.

DATED this 5th day of November, 2025.

BUSH KORNFELD LLP

By *____/s/ James L. Day____________*
James L. Day, WSBA #20474
Lesley Bohleber, WSBA #49150
Attorneys for Bush Kornfeld LLP



BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104