UNITED STATES BANKRUPTCY COURT
DISTRICT OF ALASKA

| | |
|---|---|
| In re | Case No. 24-00139-GS |
| WHITTIER SEAFOOD, LLC et al.,[1] | Chapter 11 |
| Debtor. | Hearing Date<br>DATE: December 12, 2025<br>TIME: 1:30 p.m. |

**MEMORANDUM DECISION ON MOTION FOR ORDER (I) GRANTING DERIVATIVE STANDING TO PURSUE SURCHARGE; AND (II) APPROVING SURCHARGE UNDER 11 U.S.C. § 506(c) AGAINST CATHAY BANK'S COLLATERAL**

The Debtors in this case confirmed a chapter 11 plan of reorganization which proposed to pay all creditors based upon the sale of real property to be liquidated to fund that plan. Reality proved harsh, and insufficient funds were generated from the sale of the Debtors' assets to pay off the largest secured creditor. The Debtors terminated their bankruptcy counsel post-confirmation, and counsel has been left with over half a million dollars in unpaid fees and expenses for work performed during the case. Counsel now seeks derivative authority to pursue a surcharge of the secured creditor's collateral under 11 U.S.C. § 506(c) for the amount it is owed. For the reasons stated below, the court must deny that request.

**Background**

On November 21, 2024, the court entered its order authorizing the jointly administered Debtors to employ Bush Kornfeld LLP as their general bankruptcy counsel, nunc pro tunc to the petition date. ECF No. 202.

On June 5, 2025, the Debtors confirmed their fourth amended chapter 11 plan of reorganization (Plan). ECF No. 386. Among other things, the Plan addressed compensation for professionals employed by the estate, defined as "Administrative Expense Claims." ECF No. 386 at 2, § II.A.1. Under the confirmed Plan, Administrative Expense Claims incurred post-petition

---

[1] The Debtors are Marine Fishing International, Inc., Case No. 24-00140; Marine Fishing International, LLC, Case No. 24-00141; Modys, LLC, Case No. 24-00142; Salacia, LLC, Case No. 24-00143; Silver Wave, LLC, Case No. 24-00144; and Whittier Seafood, LLC.

are to be paid "on the latest of (i) the Effective Date; (ii) the date each such Claim becomes an Allowed Claim, or (iii) three (3) Business Days after funds that are not subject to a lien or security interest become available." *Id.* at 12, § IV.A.a. Additionally, the Plan provided that on the Plan's effective date, the post-confirmation Debtors "shall be deemed to have acquired and become the successor to…all claims and causes of action of the Debtors for relief against any other party other than Avoidance Actions." *Id.* at § VII.H.

Bush Kornfeld served as general counsel to the Debtors until their post-confirmation termination on August 4, 2025. ECF No. 464.

The Debtors were not operating or producing regular income when they filed their bankruptcy petition. From the outset, it was apparent that any plan would depend on either some refinancing or more likely the liquidation of the Debtors' assets. The Debtors argued that their assets had value well above the combined total of all debts. This critical assumption was not seriously challenged. Indeed, it formed the cornerstone of the bankruptcy proceeding and ultimately, the confirmed plan of liquidation. Unfortunately, the post-confirmation sales of the Debtors' assets did not generate sufficient proceeds to pay the Debtors' largest secured creditor, Cathay Bank, in full. Accordingly, those sales have not generated funds to pay administrative expenses such as Bush Kornfeld's outstanding professional fees and expenses under the Plan. As such, no payments have been made to administrative claimants under the Plan.

On November 5, 2025, Bush Kornfeld filed the Motion for Order (I) Granting Derivative Standing to Pursue Surcharge; and (II) Approving Surcharge Under 11 U.S.C. § 506(c) Against Cathay Bank's Collateral (Motion). ECF No. 586. Pursuant to the Motion, Bush Kornfeld seeks derivative standing to surcharge Cathay Bank's collateral on behalf of the Debtors to obtain payment for its outstanding fees and expenses, arguing that Cathay Bank benefitted from its services while Bush Kornfeld remains unpaid. Cathay Bank opposed the Motion.[2] ECF No. 605. After a hearing on December 12, 2025, the court took this matter under advisement.

---

[2] The Motion was also opposed by the Debtors' principal, Aleksey Kozlov (ECF No. 601) and the United States Trustee (ECF No. 599). While Mr. Kozlov's opposition largely echoed that of

**Analysis**

Section 506(c) provides, in pertinent part, that the trustee or debtor-in-possession "may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim…." 11 U.S.C. § 506(c). "[A] § 506(c) surcharge is not an administrative claim, but an assessment against a secured party's collateral." *Debbie Reynolds Hotel & Casino, Inc. v. Calstar Corp., Inc. (In re Debbie Reynolds Hotel & Casino, Inc.)*, 255 F.3d 1061, 1067 (9th Cir. 2001). Accordingly, § 506(c) "authorizes the payment of the proceeds from a surcharge directly to the party who provided the quantifiable benefit to the secured collateral." *Id.* at 1069. The movant in a surcharge motion carries the burden of proving "that its expenses were reasonable, necessary and provided a quantifiable benefit to the secured creditor." *Id.* at 1068. Further, "the amount of a surcharge is limited to the amount of the benefit and must be proven with specificity." *Id.* The Ninth Circuit Court of Appeals has described this burden as "onerous." *Id.*

Standing to pursue a claim for surcharge under § 506(c) is strictly enforced. The United States Supreme Court in *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.* unequivocally ruled that § 506(c) "does not provide an administrative claimant an independent right to use the section to seek payment of its claim." 530 U.S. 1, 14 (2000). The Court acknowledged that a debtor-in-possession could also use § 506(c), "as they are expressly given the rights and powers of a trustee by 11 U.S.C. § 1107." *Id.* at 6, n.3. However, the Court

Cathay Bank, the United States Trustee objected on the basis that Bush Kornfeld is not entitled to any compensation pursuant to 11 U.S.C. § 330, based on its lack of disinterestedness under 11 U.S.C. § 327. Here, the parties all accepted the Debtors' valuations and assumptions set forth in the Plan, and did so throughout the case – including Cathay Bank. It was only well after confirmation that the parties discovered that those assumptions and valuations were inaccurate. Thus, throughout the pendency of the chapter 11 proceedings, all parties in interest acted on the assumption that the jointly administered cases were fully solvent and all creditors would be paid in full. The parties made their choices knowing the risks. The court is not inclined to revoke its employment and compensation orders effectively after Bush Kornfeld got the Debtors across the proverbial bankruptcy finish line. It serves no purpose to deny all compensation to Bush Kornfeld on the basis of hindsight.

3

specifically did not reach the question of "whether a bankruptcy court can allow other interested parties to act in the trustee's stead in pursuing recovery under § 506(c)," noting that its decision only rejected the administrative claimant's attempt to assert "an independent right to use § 506(c)." *Id.* at 13, n.5.

Although it did not address derivative standing issues, in *Debbie Reynolds* the Ninth Circuit Court of Appeals discussed the standing of a superpriority creditor to challenge the debtor-in-possession's agreement with its secured creditor to surcharge that creditor's collateral under § 506(c) for payment of the debtor's counsel's fees. Part of that agreement foreclosed the debtor, administrative claimants and other parties in interest from seeking any further § 506(c) claims against the secured creditor. *Debbie Reynolds*, 255 F.3d at 1064. The superpriority creditor, Calstar Corporation, objected on the basis that the agreement "impermissibly abrogated" Calstar's right to surcharge the secured creditor's collateral for postpetition financing it had extended to the debtor. *Id.* at 1063. The Ninth Circuit concluded that after the Supreme Court's decision in *Hartford Underwriters*, Calstar had no standing to seek surcharge under § 506(c), and therefore lacked standing to object to the debtor's agreement. *Id.* at 1065-66. However, like the Supreme Court, the Ninth Circuit in *Debbie Reynolds* did not rule out the possibility that a party could obtain derivative standing to pursue a claim under § 506(c): "[I]n order for a party that provided a benefit to a secured creditor to receive payment for that benefit, the party must convince the trustee to seek a § 506(c) surcharge *or get leave from the Bankruptcy Court to do so*." *Id.* at 1068 (citing *Hartford Underwriters*, 530 U.S. at 13 n. 5) [emphasis added].

Subsequent Ninth Circuit decisions, however, have rejected parties' requests for derivative standing to pursue § 506(c) claims. The Ninth Circuit Bankruptcy Appellate Panel (BAP) declined to grant derivative standing under § 105(a) to a chapter 11 debtor's employees to pursue a § 506(c) surcharge against the debtor's secured creditors for wages and employee benefits. *Latus v. Shumate Spokane, LLC (In re Shumate Spokane, LLC)*, 2015 WL 5013358, at

*4 (B.A.P. 9th Cir. Aug. 25, 2015). The BAP concluded that "[t]he bankruptcy court's powers are limited by the clear language of the Bankruptcy Code, and the general provisions of § 105(a) may not be used to expand standing to seek a § 506(c) surcharge." *Id.* (citing *Law v. Siegel*, 517 U.S. 415, 421 (2014)).

Similarly, in declining to grant derivative standing to a creditor to pursue surcharge under § 506(c), the United States Bankruptcy Court for the Northern District of California observed that "the purpose of § 506(c) is to compensate the estate when it expends funds to protect and preserve the collateral of a secured party." *In re Smith Bros. Motors, Inc.*, 286 B.R. 905, 909 (Bankr. N.D. Cal. 2002). Although short of ruling that it could *never* grant derivative standing to a party to pursue the trustee's rights under § 506(c), the *Smith Bros.* court concluded that even if it could, such ruling was not appropriate in the case before it. *Id.* at 908. Chiefly, the *Smith Bros.* court deferred to the chapter 11 trustee's determination that he did not have a valid surcharge claim, and thus neither did any claimant standing in his shoes. *Id.* at 909.

Finally, in *In re Suntastic USA, Inc.*, the United States Bankruptcy Court for the District of Arizona addressed multiple motions filed by administrative claimants, including the debtor's counsel, seeking court authorization to pursue § 506(c) claims or compel the trustee to pursue those claims on their behalf. 269 B.R. 846, 847 (Bankr. D. Ariz. 2001). Examining both *Hartford Underwriters* and *Debbie Reynolds*, the *Suntastic* court concluded, "at bottom, *Debbie Reynolds* establishes that, in the Ninth Circuit, even where the trustee has no economic incentive to pursue recovery under [§] 506(c), nobody else may pursue surcharge—period." *Id.* at 849. Further, the *Suntastic* court determined that a trustee could not be compelled to pursue claims under § 506(c) where the only benefit from such pursuit would inure to individual claimants rather than the debtor's estate as a whole: "This Court concludes that it is not part of a trustee's mandatory exercise of his fiduciary obligations to take actions the end result of which only benefit an individual creditor or claimant. As a result, his refusal to prosecute the claims is not open to challenge under governing law." *Id.* at 850.

Bush Kornfeld has not cited any case law in which a court granted derivative standing to pursue claims under § 506(c),[3] and the court is aware of none. Instead, even where courts have acknowledged that derivative standing may be appropriate in accordance with footnote five of *Hartford Underwriters*, the few courts in the country to directly address the issue have declined to grant derivative standing to parties seeking to surcharge collateral pursuant to § 506(c). *See, e.g.*, *In re Conqueror Marine Logistics, LLC*, 518 B.R. 368, 372 (Bankr. W.D. La. 2014) ("Courts have generally rejected derivative standing to assert a section 506(c) surcharge claim where the recovery benefits only the administrative claimants and does not benefit the estate as a whole."); *In re Smith Intern. Enterprises, Inc.*, 325 B.R. 450 (Bankr. M.D. Fla. 2005) (citing *Suntastic*); *Matter of Happy Jack's Petroleum, Inc.*, 2019 WL 2281610, at *3 (Bankr. D. Neb. May 28, 2019) ("Hansen's took a risk that the reorganization would be successful. It was not. As such, Hansen's cannot now come back and secure its obligation through the back door with a surcharge request.").

The court agrees with the *Smith Bros.* court in concluding that "the purpose of § 506(c) is to compensate the estate…." Like the other courts to consider this issue, the court finds that even if it had authority to grant derivative standing to pursue a § 506(c) claim (which it does not decide), the circumstances of this case would not warrant it where only Bush Kornfeld, and not the Debtors' estates, would benefit from that pursuit. *Suntastic USA,* 269 B.R. at 850. Its request to recover its attorney fees for representing the Debtors is inappropriate. As the *Smith Bros.* court explained,  the

---

[3] Neither of the cases cited by Bush Kornfeld addressed derivative standing in the context of § 506(c). *See Liberty Mut. Ins. Co. v. Off. Unsecured Creditors' Comm. of Spaulding Composites Co. (In re Spaulding Composites Co.)*, 207 B.R. 899, 903 (B.A.P. 9th Cir. 1997) (granting derivative standing to the unsecured creditors' committee to prosecute automatic stay violations); *Avalanche Mar., Ltd. v. Parekh (In re Parmetex, Inc.)*, 199 F.3d 1029, 1031 (9th Cir. 1999) (affirming the bankruptcy court's approval of a stipulation whereby the trustee authorized creditors to pursue avoidance actions). As observed by the court in *Smith Bros.*: "Even if a court may, notwithstanding *Hartford Underwriters*, authorize a party other than the trustee to act on the trustee's behalf in asserting an avoidance action under § 547, 548, or 549, it does not automatically follow that the court may authorize a party other than the trustee to bring an action under § 506(c). This is so because the proceeds of a recovery under § 547, 548, or 549 will generally go to and benefit the estate, whereas a recovery under § 506(c) by a party other than the trustee would pass directly to the claimant with no gain to the estate." *Smith Bros.*, 286 B.R. at 908 [internal quotation omitted].

purpose of § 506(c) "is not to compensate a secured party who miscalculated the value or priority of its lien position, even if the party made financial concessions to the estate as a result of the miscalculation."

Bush Kornfeld is not a secured party, but finds itself likewise in the same unfortunate position as did the secured creditor in *Smith Bros.* - the generally accepted valuations of the Debtors' assets failed to materialize. Bush Kornfeld sought to represent multiple debtors in a non-operating chapter 11, where all parties in interest believed the combined assets of those debtors significantly exceeded those debtors' combined debts, including accrued administrative expenses. A host of significant decisions were premised on this assumption and belief. From the court's perspective, the law firm did a commendable job formulating and confirming a plan of liquidation in a relatively short period of time. If the parties' valuations resulted in anything close in the sales that were expected, all parties would have been paid. But in this regard the court cannot say that Bush Kornfeld's representation of the Debtors in bankruptcy were reasonable, necessary costs and expenses to preserve or dispose of Cathay Bank's collateral. The administration of the bankruptcy was for the benefit of the unsecured creditors and the equity interests as the Debtors first explored the possibility of refinancing their debts then sought to sell the assets on their terms. Again, from the court's perspective, counsel for the professionals spent a considerable amount of time and effort to move the case towards the sale of the Debtors' assets which were expected to pay everyone in full and even anticipated a return for equity. To their credit, they were able to overcome and address obstacles to confirm the plan of liquidation and proceed to the sale of the assets. Bush Kornfeld is certainly entitled to be paid for its representation of the Debtors. However, it cannot surcharge Cathay Bank's collateral to do so under § 506(c) in these circumstances.

### Conclusion

For the reasons stated herein, the Motion for Order (I) Granting Derivative Standing to Pursue Surcharge; and (II) Approving Surcharge Under 11 U.S.C. § 506(c) Against Cathay Bank's Collateral (ECF No. 586) will be denied in a separate order to be entered by the court.

7

DATED this 8th day of May, 2026.

/s/ Gary Spraker
GARY SPRAKER
United States Bankruptcy Judge

Serve:  Debtors
J. Day, Esq.
L. Bohleber, Esq.
G. Fox, Esq.
D. Neu, Esq.
M. Parise, Esq.
L. Thornton, Esq.
J. Torgerson, Esq.
J. Kaplan, Esq.
R. Murphy, Esq.
M. Mills, Esq.
T. Brannon, Esq.
A. Ivanov, Esq.
G. Pitts, Esq.
J.M. Palomares, Esq.
F. Rasch, Esq.
J. Welch, Esq.
J. Zack, Esq.
J. Tracy, Esq.
B. Peterson, Esq.
A. Smith, Esq.
B. Medeiros, Esq.
M. Kotwick, Esq.
R. Gayda, Esq.
S. Andre, Esq.
C. Myerson, Esq.
U.S. Trustee
ECF Participants via NEF